# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

Voxer, Inc. and Voxer IP LLC

       Plaintiffs,

v.

Facebook, Inc. and Instagram LLC

       Defendants.

Civil Action No. 1:20-cv-00655-ADA

Jury Trial Demanded

## DEFENDANTS FACEBOOK, INC. AND INSTAGRAM LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FED. R. CIV. P. 12(C)

1651069

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   LEGAL STANDARD .................................................................................................... 2

III.  ARGUMENT ................................................................................................................. 3

      A.   The '270 patent is invalid under Section 101. ...................................................... 4

           1.   Claims 34 and 55 of the '270 patent are patent-ineligible. ........................ 5

                a.   Claims 34 and 55 are directed to the abstract idea of routing
                     messages to recipients identified by the sender without first
                     requiring a direct connection between the sender and
                     recipient ........................................................................................... 5

                b.   Claims 34 and 55 provide no inventive concept and recite
                     only generic computer functions and networks. ............................ 9

           2.   The asserted dependent claims of the '270 patent are also invalid. .......... 11

      B.   The '030 patent is invalid under Section 101. ...................................................... 13

           1.   Claims 1 and 33 of the '030 patent are patent-ineligible. ......................... 14

                a.   Claims 1 and 33 are directed to the abstract idea of
                     creating, transmitting, receiving, and storing streaming
                     media, and rendering it either in real-time or after-the-fact ......... 14

                b.   Claims 1 and 33 provide no inventive concept. ............................ 17

           2.   The asserted dependent claims of the '030 patent are also invalid. .......... 18

IV.   CONCLUSION ............................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A Pty Ltd. v. eBay, Inc.*,
    149 F. Supp. 3d 739 (W.D. Tex. 2016)........................................................................2, 7, 10

*In re Abel*,
    838 Fed. App'x 558 (Fed. Cir. 2021)....................................................................................7

*Affinity Labs of Texas, LLC v. Amazon.com, Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016)................................................................................. *passim*

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
    838 F.3d 1253,1262 (Fed. Cir. 2016)........................................................8, 12, 17, 18

*Alice Corp. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)................................................................................................. *passim*

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229 (Fed. Cir. 2016)............................................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................................2

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
    778 F. App'x 882 (Fed. Cir. 2019) .....................................................................................10

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019)..........................................................................................15

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019)......................................................................................2, 11

*Checksum Ventures, LLC v. Dell Inc.*,
    412 F. Supp. 3d 906 (N.D. Ill. 2019) .................................................................................12

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
    776 F.3d 1343,1347 (Fed. Cir. 2014)...................................................................................6

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020)......................................................................................6, 9

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
  958 F.3d 1178 (Fed. Cir. 2020)......................................................................................4

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016).............................................................................12, 18

*Ericsson Inc. v. TCL Comm'n Tech. Holdings Ltd.*,
  955 F.3d 1317 (Fed. Cir. 2020)..........................................................................8, 9, 11

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018).................................................................................13

*GoDaddy.com LLC v. RPost Commc'ns Ltd.*,
  2016 WL 3165536 (D. Ariz. June 7, 2016), *aff'd*, 685 F. App'x 992 (Fed. Cir.
  2017) ......................................................................................................................10

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
  850 F.3d 1315 (Fed Cir. 2017)....................................................................................3

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016)......................................................................... *passim*

*Lighthouse Consulting Grp., LLC v. BB&T Corp.*,
  476 F. Supp. 3d 532 (W.D. Tex. 2020)......................................................................2

*Mobile Telecomm's Techs., LLC v. Blackberry Corp.*,
  2016 WL 2757371 (N.D. Tex. May 12, 2016) .........................................................15

*Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*,
  379 F. Supp. 3d 857 (N.D. Cal. 2019), *aff'd sub nom. Dropbox, Inc. v.
  Synchronoss Techs., Inc.*, 815 F. App'x 529 (Fed. Cir. 2020).................................10

*PersonalWeb Techs. LLC v. Google LLC*,
  2020 WL 520618 (N.D. Cal. Jan. 31, 2020) ............................................................15

*Raybourne & Dean Consulting, Ltd. v. Metrica, Inc.*,
  2015 WL 128866214 (W.D. Tex. Apr. 10, 2015).......................................................2

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)........................................................................2, 3, 13

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
  873 F.3d 905,912 (Fed. Cir. 2017)........................................................................9, 10

*Simio, LLC v. FlexSim Software Prod., Inc.*,
  983 F.3d 1353 (Fed. Cir. 2020)........................................................................2, 3, 4

iii

1651069

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
873 F.3d 1364 (Fed. Cir. 2017)........................................................................15, 17

*Telinit Techs., LLC v. Alteva, Inc.*,
2015 WL 5578604 (E.D. Tex. Sept. 21, 2015) ......................................................7

*In re TLI Commc'ns LLC Pat. Litig.*,
823 F.3d 607 (Fed. Cir. 2016)...................................................................... *passim*

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017)..................................................................... *passim*

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014).............................................................3, 11, 12

*Voip-Pal.Com, Inc. v. Apple Inc.*,
375 F. Supp. 3d 1110 (N.D. Cal. 2019), *aff'd sub nom. Voip-Pal.com, Inc. v.
Twitter, Inc.*, 798 F. App'x 644 (Fed. Cir. 2020).....................................................7

## Statutes

35 U.S.C. § 101 ............................................................................. 1, *passim*

## Other Authorities

Federal Rule of Civil Procedure 12(b)(6) ...........................................................2, 3, 16

Federal Rule of Civil Procedure 12(c) .................................................................1, 2, 3

Defendants Facebook, Inc. and Instagram LLC (collectively, "Facebook") hereby move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to Counts I and IV of Plaintiffs Voxer, Inc. and Voxer IP, LLC's (collectively, "Voxer") Complaint. The patents asserted in those counts are directed to unpatentable subject matter and therefore are invalid.

## I.    INTRODUCTION[1]

Although they are dressed up in technical jargon, two of the five patents asserted against Facebook claim nothing more than computer implementations of abstract ideas that are ineligible for patent protection under 35 U.S.C. § 101 ("Section 101"). The '270 patent[2] asserted in Count IV is directed to the abstract idea of routing messages to recipients identified by the sender without first requiring a direct connection between the sender and recipient. This abstract idea encompasses long-practiced human behavior for routing communications through corporate mailrooms, telephone switchboards, and myriad other message delivery systems. The '030 patent[3] asserted in Count I is directed to the abstract idea of transmitting, receiving, and storing streaming media, and rendering it either in real time or after the fact. This patent too seeks to claim an abstract idea encompassing long-practiced, pre-computer communication methods, including broadcast television and telephonic communications.

Nor do any of the asserted claims of the '270 patent or '030 patent, individually or in ordered combination, provide an "inventive concept" that would make them patent-eligible. Instead, they merely call for generalized steps to be executed through generic computer components and functions, essentially describing abstract processes and adding "do it on a

---

[1] All quotations and citations have been removed and emphases added unless otherwise noted.

[2] The "'270 patent" refers to United States Patent No. 10,142,270 (Dkt. No.1, Ex. D).

[3] The "'030 patent" refers to United States Patent No. 8,180,030 (Dkt. No. 1, Ex. A).

1651069

computer." These patent claims are therefore invalid under Section 101, and the Court should grant judgment on the pleadings as to Counts I and IV of the Complaint under Rule 12(c).

## II.    LEGAL STANDARD

A motion for judgment on the pleadings under Rule 12(c) may be made "after the pleadings are closed." *A Pty Ltd. v. eBay, Inc.*, 149 F. Supp. 3d 739, 741 (W.D. Tex. 2016) (quoting Fed. R. Civ. P. 12(c)).[4] Such a motion is "subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Lighthouse Consulting Grp., LLC v. BB&T Corp.*, 476 F. Supp. 3d 532, 536 (W.D. Tex. 2020). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Eligibility under Section 101 is a question of law that may be resolved on a motion to dismiss or for judgement on the pleadings where no factual allegations exist that, taken as true, prevent resolving the eligibility question as a matter of law. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019); *see also SAP Am., Inc. v. InvestPic, LLC,* 898 F.3d 1161, 1166 (Fed. Cir. 2018) ("Like other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law."); *Simio, LLC v. FlexSim Software Prod., Inc*., 983 F.3d 1353, 1359-66 (Fed. Cir. 2020) (affirming order granting motion to dismiss based on Section 101); *ChargePoint*, 920 F.3d at 764-65, 777 (same).

---

[4] Documents, such as the asserted patents, "expressly referenced in a complaint and attached to that pleading become a part of the pleading for purposes of a Rule 12(c) motion." *Raybourne & Dean Consulting, Ltd. v. Metrica, Inc*., 2015 WL 128866214, at *5 (W.D. Tex. Apr. 10, 2015).

1651069

Determination of patent eligibility under Section 101 is a two-step process. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014). First, the Court must determine whether the patent claims are directed to an abstract idea. *See id.* Courts "look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). If the focus of the claims is a long-standing practice, or a process that could be performed by a human without a computer, then the claims are directed to an abstract idea. *See Alice*, 573 U.S. at 219.

At *Alice* step two, the court determines whether the claims include an "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221. If the "additional features" described in the claim recite nothing more than "well-understood, routine, conventional activity," the abstract idea is patent-ineligible. *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1328 (Fed Cir. 2017). To be patent-eligible, a claim must do "significantly more than simply describe [the] abstract method" and state "apply it." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).

## III.   ARGUMENT

The asserted claims of the '270 and '030 patents are abstract and include no inventive concept. They are therefore invalid under Section 101. Moreover, no factual allegations exist that, taken as true, preclude adjudicating the patents' validity at this stage. Voxer's Complaint offers only conclusory assertions of non-abstractness and inventiveness, which do not preclude this Court from determining patent eligibility as a matter of law. *See* Dkt. No. 1 (Complaint) ¶¶ 35, 41, 44-45; *Simio,* 983 F.3d at 1365 ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)."); *SAP Am.*, 898 F.3d at 1170 (Section 101 invalidity determination was "properly drawn under the standards governing Rule 12(c) motions").

Nor is claim construction an impediment to granting Facebook's motion. Patent eligibility may be determined even ***before*** claim construction if the patentee fails to explain how a term's construction "could affect the analysis." *Simio,* 983 F.3d at 1365; *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1184 (Fed. Cir. 2020). Here, however, the Court has already issued its claim construction ruling (Dkt. No. 74), and nothing in that Order precludes a determination of patent eligibility as a matter of law.

A.      **The '270 patent is invalid under Section 101.**

To address supposed inadequacies in then-existing communications systems, such as conventional telephone-based communications, the '270 patent purports to describe a method "that supports new modes of engaging in conversations and/or managing multiple conversations using a variety of media types." '270 patent at 4:10-15; *id*. at 2:11-12, 4:1-6. Using the disclosed method, "[u]sers can engage in conversations by sending messages to designated recipients." *Id*. at 4:15-16. The '270 patent teaches that the message "contains an identifier associated with the target recipient," and that, "[i]n response," the server "finds a delivery route to . . . the intended or targeted recipient." *Id*. at 22:41-45. The '270 patent explains that translation of the identifier to a delivery location could be accomplished by any of various known methods. *Id*. at 26:14-17 ("the system 10 uses one of the above-mentioned ***or other known addressing schemes*** for delivery of Vox packets 95 to the correct location"). Additionally, because the purported invention routes messages through an intermediate server, no direct connection between the sender and recipient is required. *See id*. at l:37-46 (describing prior art systems, such as traditional telephony, requiring that a connection first be established); Figs. 1, 8A.

Voxer asserts two independent claims of the '270 patent: claims 34 and 55. Claim 34 recites:

A video communication method, comprising:

receiving an identifier associated with a video communication transmitted by a sending communication device over a network, the identifier identifying a recipient of the video communication;

ascertaining, in response to receipt of the identifier, a location on the network for a second communication device associated with the recipient and connected to the network;

receiving the video communication from the sending communication device independently of the location for the second communication device being ascertained;

storing the video communication; and

delivering portions of the video communication over the network to the second communication device using the location, the delivery enabling the video communication to be at least partially rendered at the second communication device while the video communication is transmitted by the sending communication device,

wherein receiving the video communication from the sending communication device occurs without having to first establish an end-to-end connection over the network between the sending and the second communication device.

'270 patent, cl. 34. For purposes of the Section 101 analysis, claim 55 is indistinguishable from claim 34. Like claim 34, claim 55 recites a method comprising the steps of receiving a video communication; receiving an identifier identifying a recipient; ascertaining a location for the recipient device in response to receipt of the identifier; storing the video communication; and delivering the video communication using the ascertained location without having to first establish an end-to-end connection between the sending and receiving devices.

### 1.   Claims 34 and 55 of the '270 patent are patent-ineligible.

#### a.   Claims 34 and 55 are directed to the abstract idea of routing messages to recipients identified by the sender without first requiring a direct connection between the sender and recipient.

The alleged innovation claimed by the '270 patent consists of routing messages to a recipient identified by the sender without first requiring a direct connection between the sender and the recipient. The claims achieve this aspiration using generalized steps to carry out generic functions: "receiving" a communication, "receiving" an identifier identifying a recipient, "storing" the communication, "ascertaining" a delivery location, and "delivering" the communication for

1651069

rendering at the receiving device. '270 patent, cls. 34, 55. The claims describe no structure for performing these functions, nor do they describe technology "directed to an improvement to the functionality of the computer or network platform itself." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) (invalidating claims that "do not enable computers to operate more quickly or efficiently, nor do they solve any technological problem").

In essence, the abstract concept claimed in the '270 patent is no different than the long-standing practice of using a corporate mailroom to route communications between employees. Long before the Internet age, office workers sent interoffice communications using "identifiers" (such as a name or initials) specifying the intended recipient. The corporate mailroom would then map the "identifier" to a "location" associated with the recipient (such as an office or inbox) and then "deliver" the communication "using the location." Although the '270 patent applies this fundamental economic practice to the technical environment of a computer network, "with the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016). For instance, while the claims require "storing" the video communication, such generic computer functionality does not save a claim from a determination of abstractness. *See, e.g., Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343,1347 (Fed. Cir. 2014); *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611-12 (Fed. Cir. 2016); *Affinity Labs of Texas, LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269-70 (Fed. Cir. 2016).

Not surprisingly, courts have repeatedly found that claims like the '270 patent's recite unpatentable abstract ideas. In *Symantec*, for instance, the Federal Circuit held that claims reciting a computer-implemented method for "receiving, screening, and distributing e-mail" were abstract

and unpatentable. 838 F.3d at 1316-18. The Federal Circuit recognized that these steps were analogous to those performed by corporate mailrooms, which "receive correspondence, keep business rules defining actions to be taken regarding correspondence based on attributes of the correspondence, apply those business rules to correspondence, and take certain actions based on the application of business rules." *Id*. at 1316-17. As the court held, such claims are abstract because they recite nothing more than "methods of organizing human activity" and "fundamental practices long prevalent in our system." *Id*. at 1318.

Similarly, in *Two-Way Media,* the Federal Circuit held that a claimed method for routing "streams of audio and/or visual information" over a communication network was directed to an abstract idea. 874 F.3d at 1334-35, 1337. The court noted that "[t]he claim requires the functional results of converting, routing, controlling, monitoring, and accumulating records," but "recite[s] only conventional computer components" and fails to "sufficiently describe how to achieve these results in a non-abstract way." *Id*. at 1337-38.

Likewise, in *A Pty Ltd.*, a court in this District held that a claim directed to "[u]sing information in a message's destination address to look up the recipient's correct address" recited a patent-ineligible abstract idea. 149 F. Supp. 3d at 744. The court explained that the patent "involves a method of doing business (i.e. the idea of using information in a message's destination address to look up the recipient's correct address), but does not involve any data modification in a way that will affect the communication system itself." *Id*. at 745.[5]

---

[5] Numerous other courts have likewise recognized that claims directed to routing communications based on identifiers are abstract. *See, e.g.*, *In re Abel*, 838 Fed. App'x 558, at *2 (Fed. Cir. 2021) (claims directed to "using a generic computer as a tool to perform a [known] communication practice—giving a message to an intermediary who, unlike the sender, knows the intended recipient's location" were abstract; noting that that this practice "is familiar in the economic sphere and elsewhere"); *Telinit Techs., LLC v. Alteva, Inc.*, 2015 WL 5578604, at *17 (E.D. Tex. Sept. 21, 2015) (computer acting as an intermediary for routing and monitoring IP-based communications was "precisely the function of a telephone operator"); *Voip-Pal.Com, Inc. v.*

1651069

The independent claims of the '270 patent are no different. They simply take the age-old human activity of routing communications through an intermediary and say "do it on a computer." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1243 (Fed. Cir. 2016). The claims do not describe an "improvement to computer functionality itself." *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253,1262 (Fed. Cir. 2016). At most, they "are directed to the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two." *TLI Commc'ns*, 823 F.3d at 612; *Ericsson Inc. v. TCL Comm'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1328 (Fed. Cir. 2020) (claiming functions "in general terms, without limiting them to technical means for performing the functions that are arguably an advance, does not make a claim eligible at step one").

Voxer may argue that the requirement in the '270 patent claims of enabling the video communication to be rendered while it is being transmitted by the sending device (*i.e.*, streaming) recites an improvement to computer technology. But the claims do not describe any supposed improvement to prior art streaming technology; rather, they use purely functional language to describe a desired outcome. Here, as in numerous other cases, "[t]he purely functional nature of the claim[s] confirms that [they are] directed to an abstract idea, not to a concrete embodiment of that idea." *Amazon.com*, 838 F.3d at 1269.

In *Amazon.com* for instance, the Federal Circuit held that a claim reciting "a network-based media system with a customized user interface, in which the system delivers streaming content from a network-based resource upon demand to a handheld wireless electronic device having a

---

*Apple Inc.*, 375 F. Supp. 3d 1110, 1130-34 (N.D. Cal. 2019) (method for routing voice or video calls based on caller and callee "identifiers" was abstract), *aff'd sub nom. Voip-Pal.com, Inc. v. Twitter, Inc.*, 798 F. App'x 644 (Fed. Cir. 2020).

8

graphical user interface" was directed to a patent-ineligible abstract idea. 838 F.3d at 1268-71. The plaintiff had argued that the patent "embodied a concrete technological innovation because, as of its priority date (March 28, 2000), wireless streaming of media was not 'routine, conventional, or well-known.'" *Id*. at 1269. Rejecting that argument, the Federal Circuit noted that the claims at issue, like those of the '270 patent, "do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem." *Id*. Accordingly, the claims were directed to an abstract idea.

> **b.   Claims 34 and 55 provide no inventive concept and recite only generic computer functions and networks.**

Turning to *Alice* step two, the claims of the '270 patent fail (individually or in ordered combination) to provide an inventive concept that would make them patent-eligible. Instead, the claims themselves simply instruct the practitioner to implement the abstract idea by performing generalized functions such as "receiving," ascertaining," "storing," and "delivering." "Merely reciting the use of a generic computer . . . cannot convert a patent-ineligible abstract idea into a patent-eligible invention." *Two-Way Media*, 874 F.3d at 1338. Indeed, the '270 patent claims fail even to recite generic computer components; they recite merely functions without specifying ***any*** structure. *See Secured Mail Sols. LLC v. Universal Wilde, Inc.,* 873 F.3d 905,912 (Fed. Cir. 2017) ("non-specific" claims "lack[ing in] technical detail" failed to provide an inventive concept); *Customedia*, 951 F.3d at 1366 ("generic and functional hardware is insufficient to render eligible claims directed to an abstract idea").

To the extent the recited functions require computer implementation, nothing in the claims suggests the need for "anything other than conventional computer and network components operating according to their ordinary functions." *Two-Way Media*, 874 F.3d at 1341. This alone is dispositive because "an inventive concept must be evident in the claims." *Id*. at 1338; *Ericsson*,

1651069

955 F.3d at 1329. Even were the Court to look beyond the claims, "[t]he specification [only] confirms that the implementation of the abstract idea is routine and conventional." *Symantec*, 838 F.3d at 1318. Although the specification describes implementing the abstract idea using an intermediate server, use of a server for network communications is purely conventional. *TLI Commc'ns*, 823 F.3d at 611-12, 614; *Symantec*, 838 F.3d at 1318; *GoDaddy.com LLC v. RPost Commc'ns Ltd.*, 2016 WL 3165536, at *19 (D. Ariz. June 7, 2016), *aff'd*, 685 F. App'x 992 (Fed. Cir. 2017) ("the disclosed 'server' is indisputably not new"). The '270 patent does not disclose an improved server, nor does it provide any technical detail regarding the tangible components. *See* '270 patent, Fig. 14B; *id.* at 43:62-44:1 (describing generic server hardware: "The [server] hardware includes a CPU 152, main memory 154, mass storage 156, and the archive 89. As is well known in the art, the server application 78 is loaded and stored in main memory 154 and mass storage 156 and executed by the CPU 152."). At most, the disclosed server "provide[s] a generic environment in which to carry out the abstract idea." *TLI Commc'ns*, 823 F.3d at 611.

Nor is there anything inventive about ***how*** the claimed functions are performed. Courts have recognized that "[u]se of an identifier in conjunction with data transfer is routine." *Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*, 379 F. Supp. 3d 857, 880 (N.D. Cal. 2019), *aff'd sub nom. Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529 (Fed. Cir. 2020).[6] Likewise, the '270 patent fails to describe any novel method of "ascertaining" a delivery location "in response to receipt of" an "identifier identifying a recipient." Instead, the specification identifies pre-existing addressing schemes, such as DNS, and explains that the system "uses one of the above-

---

[6] *See also, e.g., Secured Mail*, 873 F.3d at 912 ("The district court is correct that the sender-generated identifier is not a sufficiently inventive concept."); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 888-89 (Fed. Cir. 2019) (claims directed to using persistent identifiers received from a user's device for implementing targeted marketing were directed to patent-ineligible abstract idea); *A Pty Ltd.*, 149 F. Supp. 3d at 744-46.

10

mentioned or other **known** addressing schemes for delivery of Vox packets 95 to the correct location." '270 patent at 26:5-17. Moreover, the recited steps of receiving, storing, and delivering data are entirely routine and conventional, as numerous courts have held. *See, e.g., TLI Commc'ns*, 823 F.3d at 612 ("storing, receiving, and extracting data" are "generic computer functions" that do not provide an inventive concept); *Ultramercial*, 772 F.3d at 717.

The functional recitation of real-time data transmission and rendering also fails to provide an inventive concept. Real-time communication over computer networks was not new at the time of the alleged invention. *See* '270 patent at 2:37-44 (describing prior art VoIP technology). In any event, the claims provide nothing more than a functional recitation of a desired outcome, which cannot provide an inventive concept. *See, e.g., Amazon.com*, 838 F.3d at 1269.

To the extent Voxer may contend that that the "without having to first establish an end-to-end connection" limitation recites an inventive concept, that limitation uses generic functional language to describe the abstract idea itself. *See ChargePoint,* 920 F.3d at 775–77 (recitation of abstract idea cannot supply inventive concept). The claims do not recite any innovative method for facilitating real-time communication between parties without requiring a connection, nor do the claims recite any structure for accomplishing that abstract idea. At most, the "end-to-end connection" limitation states a desired outcome, which is insufficient. *See Two-Way Media*, 874 F.3d at 1339; *Amazon.com*, 838 F.3d at 1269; *Ericsson*, 955 F.3d at 1329-31.

### 2.     The asserted dependent claims of the '270 patent are also invalid.

The asserted dependent claims of the '270 patent fare no better as they only add additional abstraction, generic computer components, or insignificant post-solution activity.

Claims 36 and 47 describe nothing more than generic computer implementation of the abstract idea. Claim 36 implements the abstract idea using a generic software application running on a sending device, while claim 47 adds the requirement of using "a plurality of servers." Such

generic computer implementation cannot transform the abstract idea into a patent-eligible invention. *See Alice*, 573 U.S. at 212, 220.

Claims 37, 38, 40, 43, and 44 recite, at most, insignificant details regarding the manner in which the abstract idea of the independent claims is carried out. Claims 37 and 38, for instance, recite enabling the sending device to start transmission before the location of the recipient device is ascertained (claim 37) or regardless of whether the recipient device is available (claim 38). At most, these claims recite "particular choices" from the range of conventional transmission methods, without any concrete implementation detail, and therefore do not contain "significantly more" than the abstract idea itself. *DIRECTV*, 838 F.3d at 1264; *Alice*, 573 U.S. at 222.

Likewise, claims 40, 43, and 44 add nothing more than "token extra-solution activity." *Ultramercial*, 772 F.3d at 714. Claim 40 requires that the sender be able to identify the recipient, and not in any purportedly novel way. Claim 43 simply expands the abstract idea to include receiving "a plurality of identifiers" and "ascertaining a plurality of locations." Claim 44 merely specifies that the video communication is delivered to "the location" using an IP address associated with the receiving device. These additional, equally aspirational limitations regarding the manner in which the abstract idea is carried out cannot save the claims from invalidity.

Claims 48 and 49 simply tack on generic data processing techniques, such as transcoding and encryption, without specifying any allegedly inventive method or structure. Requiring use of such conventional techniques specified in broad functional language likewise fails provide an inventive concept. *See, e.g., Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354–56 (Fed. Cir. 2016); *Two-Way Media*, 874 F.3d at 1338 (holding that encoding and decoding image data and converting formats are abstract ideas, not a specific purported advance in implementation); *Checksum Ventures, LLC v. Dell Inc.*, 412 F. Supp. 3d 906, 919 (N.D. Ill. 2019) ("Merely saying,

1651069

'encrypt it' is just an application of the abstract idea of encryption itself and is therefore patent ineligible.").

Claims 41 and 51 only add further abstraction. Claim 41 uses generic results-driven language to describe enabling the recipient to render a video communication either in real-time or a time-shifted mode. Claim 51 recites providing the same ability to multiple recipient devices. Neither of these claims "enables a computer . . . to do things it could not do before." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018). Rather, such claims focus on an alleged "improvement in wholly abstract ideas." *SAP Am.*, 898 F.3d at 1168.

**B.     The '030 patent is invalid under Section 101.**

Like the '270 patent, the '030 patent purports to address supposed inadequacies in then-existing telecommunications systems. '030 patent at 1:20-5:14. Specifically, the '030 patent purports to disclose "new modes of engaging in conversations and/or managing multiple conversations" in which users can "conduct communications in either: (i) a near-synchronous or 'live' conversation, providing a user experience similar to a standard full duplex phone call; or (ii) in a series of back and forth time-delayed transmissions." *Id.* at 3:67-4:15.

Voxer asserts two independent claims of the '030 patent: claims 1 and 33. Claim 33 recites:

A communication method for communicating using a communication device, comprising:

> progressively and persistently storing streaming media created using the communication device as the streaming media is created;

> progressively transmitting the streaming media over a network as the streaming media is created and persistently stored;

> progressively and persistently storing streaming media received over the network from a remote communication device as the streaming media is received; and

> selectively rendering, for the first time, the received streaming media using one of two rendering options, the two rendering options including both (i) a real-time mode as the streaming media is received over the network and (ii) a time-shifted mode by retrieving and rendering the retrieved streaming

13

media from persistent storage.

The other independent claim, claim 1, consists of the same substantive limitations as claim 33, but directed to a computer-readable application. *See* '030 patent, cl. 1.

      **1.**      **Claims 1 and 33 of the '030 patent are patent-ineligible.**

            **a.**      **Claims 1 and 33 are directed to the abstract idea of creating, transmitting, receiving, and storing streaming media, and rendering it either in real-time or after-the-fact.**

Claims 1 and 33 of the '030 patent are directed to nothing more than the abstract idea of creating, transmitting, receiving, and storing streaming media, and rendering it either in real-time or after-the-fact. They do so using only "result-based functional language," and do not "describe *how* to achieve these results in a non-abstract way." *Two-Way Media,* 874 F.3d at 1337. Through their functional, results-oriented language, claims 1 and 33 seek to monopolize a "fundamental … practice long prevalent[.]" *Symantec,* 838 F.3d at 1314.

Transmitting, receiving, and storing streaming media, and rendering it either in real-time or after-the-fact is a longstanding practice in both broadcast television and telephonic communications. Live television broadcasts, for example, have long been routinely stored by the broadcaster as they are created, for both archival and rebroadcasting purposes. And a viewer with a video recording device—such as a videocassette recorder ("VCR"), which has been widely available since the 1970s—could view the broadcast live while simultaneously storing it for subsequent replaying. Alternatively, a viewer could set their video recording device to record the incoming broadcast while the television was turned off for the purpose of viewing the broadcast for the first time after-the-fact. Likewise, in the field of telephony, devices for recording telephone conversations have existed since at least the early 20th century. Answering machines have been used to time-shift received telephonic communications since the 1930s, and voicemail services have been in widespread use since the 1980s. The '030 patent itself acknowledges that its "live"

1651069

mode is "similar to a standard full duplex phone call," and refers to its claimed "time-shifted mode" as "voice messaging," making plain the analogy to conventional telecommunications practices. '030 patent at 4:12-14, 6:17-19.

Courts have routinely found claims analogous to the '030 patent's to be directed to abstract ideas. Specifically, courts have held that "[t]he idea of sending and storing messages," *Mobile Telecomm's Techs., LLC v. Blackberry Corp.*, 2016 WL 2757371, at *3 (N.D. Tex. May 12, 2016), "the idea of capturing and transmitting data from one device to another," *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019), "the collection, storage, and recognition of data," *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1372 (Fed. Cir. 2017), "delivering user-selected media content to portable devices," *Amazon.com*, 838 F.3d at 1269, and "generating, transmitting, receiving, and storing data," *PersonalWeb Techs. LLC v. Google LLC*, 2020 WL 520618, at *11 (N.D. Cal. Jan. 31, 2020), are all abstract ideas.

The Federal Circuit's decision in *TLI Communications* is particularly instructive.  There, the Federal Circuit considered a claim for:

> A method for recording and administering digital images, comprising the steps of:
>
> **recording** images using a digital pick up unit in a telephone unit,
>
> **storing** the images recorded by the digital pick up unit in a digital form as digital images,
>
> **transmitting** data including at least the digital images and classification information to a server, wherein said classification information is prescribable by a user of the telephone unit for allocation to the digital images,
>
> **receiving** the data by the server,
>
> **extracting** classification information which characterizes the digital images from the received data, and
>
> **storing** the digital images in the server, said step of storing taking into consideration the classification information.

*TLI Commc'ns*, 823 F.3d at 610. The district court held on a Rule 12(b)(6) motion that this claim was patent ineligible under Section 101 and *Alice,* and the Federal Circuit agreed. At *Alice* step one, the Federal Circuit observed that while the claim "requires concrete, tangible components such as 'a telephone unit' and a 'server,' the specification makes clear that the recited physical components merely provide a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner." *Id.* at 611. The court further noted that "the claims here are not directed to a specific improvement to computer functionality. Rather, they are directed to the use of conventional or generic technology in a nascent but well-known environment . . . ." *Id.* at 612. Accordingly, the court held that the claim was directed to an abstract idea at *Alice* step one. *Id.* at 613.

The independent claims of the '030 patent suffer all the same defects identified in *TLI Communications*. Indeed, they do not even "require[] concrete, tangible components," much less disclose "a specific improvement to computer functionality." *Id.* at 611-12. Moreover, the '030 patent's specification makes clear that the transmitting, receiving, storing and rendering of media described in the claims are implemented using conventional computing technology. The specification describes the "device" that carries out the claimed steps as "a general-purpose computer, a portable computing device, a programmable phone, a programmable radio, ***or any other programmable communication device***." '030 patent at 7:38-44. Likewise, the "system architecture" for the '030 patent's claimed inventions consists entirely of generic components, including the aforementioned "devices," "a communication services network 14, including one or more Servers," and "[o]ne or more networks" which "may be the Public Switched Telephone Network (PSTN), a cellular network based on CDMA or GSM for example, the Internet, a tactical radio network, or ***any other communication network***, or a combination thereof." *Id.* at 11:28-49.

1651069

In other words, "[t]he specification does not describe a new telephone, a new server, or a new physical combination of the two," but instead "describes the system and methods in purely functional terms." *TLI Commc'ns*, 823 F.3d at 612; *see also Two-Way Media*, 874 F.3d at 1337 ("Claims directed to generalized steps to be performed on a computer using conventional computer activity are not patent eligible."); *Smart Sys. Innovations*, 873 F.3d at 1371 ("We look to whether the claims focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery."). Like the claim in *TLI Communications*, claims 1 and 33 are directed to nothing more than an abstract idea.

### b.   Claims 1 and 33 provide no inventive concept.

Because the '030 patent's independent claims "use[] generic functional language to achieve … purported solutions[,] [i]nquiry therefore must turn to any requirements for *how* the desired result is achieved.'" *Two-Way Media*, 874 F.3d at 1339. Here, "[n]othing in the claims or their constructions … requires anything other than conventional computer and network components operating according to their ordinary functions." *Id.* Claim 33 "uses a conventional ordering of steps … with conventional technology to achieve its desired result." *Id.* It goes without saying that streaming media must be *created* before it can be *stored* and *transmitted* by a sender. Likewise, streaming media must be *received* before it can be *stored* and *rendered* by the recipient. Claims 1 and 33 do nothing more than recite this conventional ordering of steps.

Moreover, claim 33 accomplishes this conventional ordering of steps using nothing more than generic computer components—something "insufficient to transform a patent-ineligible abstract idea into a patent-eligible invention" *DIRECTV*, 838 F.3d at 1262-63. The specification makes clear that the "hardware of a Device 13 used for storing and executing the Client application 12" requires nothing more than the conventional components of "a CPU 142, main memory 144

and mass storage 146." '030 patent at 42:43-49. The specification acknowledges that it "is well known in the art that the Client application 12 is loaded and stored in main memory 144 and mass storage 146 and executed by the CPU 142." *Id.* Similarly, the specification makes clear that "the hardware of a Server 16 used for storing and executing the server application 78" also requires nothing more than the conventional components of "a CPU 152, main memory 154, mass storage 156, and the archive 89," the last of which "is a mass storage device." *Id*. at 42:50-56; 22:9-10. Again, the specification acknowledges that it "is well known in the art [that] the server application 78 is loaded and stored in main memory 154 and mass storage 156 and executed by the CPU 152." *Id.* In short, claims 1 and 33 do not "improve the functioning of the computer itself," *Alice*, 573 U.S. at 225. Rather, the claims recite generalized steps to carry out generic computer functions.

### 2.       The asserted dependent claims of the '030 patent are also invalid.

The asserted dependent claims of the '030 patent are all directed to the same abstract idea: creating, transmitting, receiving, and storing streaming media, and rendering it either in real-time or after-the-fact. None of the additional limitations of these claims have "distinctive significance" for purposes of the *Alice* analysis. *Elec. Power Grp*., 830 F.3d at 1352.

Claims 16, 47, and 48 merely cover *transitioning between* real-time and after-the-fact rendering. This is not conceptually distinct from rendering streaming media in *either* real-time or after-the-fact, which is represented by the independent claims, and the claims are just as non-specific and results-oriented as the independent claims.

Claims 4 and 36 repackage the concept of reviewing streaming media in real-time or after-the-fact in terms of "synchronous" or "asynchronous" communications. But as the '030 patent's specification explains, any distinction between synchronous and asynchronous communications and real-time or after-the-fact (i.e., time-shifted) rendering is immaterial for purposes of Section 101. *See, e.g.*, '030 patent at 14:46-49 (communications "may flow between near *synchronous* (i.e.

live or *real-time*) and *asynchronous* (i.e., *time-shifted* or voice messaging modes)"). Moreover, the specification explains that the distinction between "synchronous" and "asynchronous" communications simply depends on the rate at which users decide to review and respond to incoming messages:

> If two Users are actively engaged in a given Conversation and the User controlled delay between transmissions is minimal, the experience will be one of a synchronous full duplex conversation, as with current telephone or VoIP conversations. If either User delays their participation, for whatever reason, the Conversation drifts towards an asynchronous voice (or other Media) messaging experience.

'030 patent at 14:35-42. Thus, the synchronous and asynchronous modes claimed by claims 4 and 36 do not encompass any technological innovation.

Claim 38 simply requires the application of the concept represented by independent claim 33 to a particular type of streaming media: "indexed media payloads." Applying the abstract idea represented by claim 33 to a particular, well-known type of communication does not make the limitation of claim 38 conceptually distinctive. The specification of the '030 patent itself notes that "the system 10 takes advantage of current packet-based communication networks running over the existing telecommunications infrastructure." '030 patent at 22:54-56. The specification further states: "The system 10 is intended to run or be layered over a variety of existing communication networks 18, such as the Internet, fixed PSTN type circuit networks, and mobile or cellular phone networks, or a combination thereof." *Id.* at 23:63-66.

Claims 13 and 44 merely require that the abstract idea of the independent claims be applied when the broadcasting device is unable to transmit the streaming media at the time of its creation, so transmission happens subsequently. These claims are directed to determining if a communication device is unable to transmit communications and then when transmission is possible, transmitting the communication out of storage. But, like the independent claims, claims

13 and 44 use purely "result-based functional language" and do nothing to "describe *how* to achieve these results in a non-abstract way." *Two-Way Media*, 874 F.3d at 1337.

Moreover, like the independent claims, claims 13 and 44 attempt to monopolize a "fundamental . . . practice long prevalent." *Symantec*, 838 F.3d at 1314. Ascertaining whether a communication device is unable to transmit communications is a conventional idea that has been practiced by humans for as long as communication devices capable of transmitting communications have existed. For instance, a person attempting to make a telephone call can ascertain whether the attempted connection fails. Likewise, a television news crew covering a live event can ascertain that their broadcast has been disrupted by technical issues.

Waiting to transmit a communication out of storage until transmission is possible is also a conventional idea that has been practiced by humans for at least as long as tape-delayed television broadcasts have existed. For instance, when a live sports broadcast is disrupted by technical difficulties, the event is typically still captured in persistent storage by the broadcaster, and subsequent rebroadcasts can be aired with the previously disrupted portion included.

None of the asserted dependent claims of the '030 patent contain any inventive concept sufficient to transform them into patent-eligible applications. Each claim can be implemented using the same generic computer as claims 1 and 33, and does not "improve the functioning of the computer itself," *Alice*, 573 U.S. at 225, but "uses a conventional ordering of steps . . . with conventional technology to achieve its desired result." *Two-Way Media* at 874 F.3d at 1339.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant judgment on the pleadings in favor of Facebook as to Counts I and IV.

1651069

Respectfully submitted,


By: _s/ Robert A. Van Nest, with permission by Michael E. Jones_

Dated: March 29, 2021

Michael E. Jones
SBN: 10929400
Patrick C. Clutter
SBN: 24036374
POTTER MINTON, PC
110 North College, Suite 500
Tyler, Texas 75702
Tel: 903-597-8311
Fax: 903-593-0845
mikejones@potterminton.com
patrickclutter@potterminton.com

Robert A. Van Nest
rvannest@keker.com
Christa M. Anderson
canderson@keker.com
David J. Silbert
dsilbert@keker.com
Eugene M. Paige
epaige@keker.com
Matthew W. Werdegar
mwerdegar@keker.com
Paven Malhotra
pmalhotra@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111
Tel: 415-391-5400

Attorneys for Defendants
FACEBOOK, INC. and INSTAGRAM LLC

1651069

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 29, 2021, I electronically filed this document with the Clerk of Court via the Court's CM/ECF system which will send notification of such filing to all counsel of record, all of whom have consented to electronic service in this action.

/s/ Michael E. Jones
Michael E. Jones

1651069