IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| VOXER, INC. and VOXER IP LLC, | § § § | |
| Plaintiffs, | § | Civil Action No. 1:20-cv-00655 [ADA] |
| v. | § § § | Jury Trial Demanded |
| FACEBOOK, INC. and INSTAGRAM LLC, | § § | **PUBLIC VERSION** |
| Defendants | § § | |

# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT NO. 3

# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 8,180,030

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................1

II. UNDISPUTED FACTS ...............................................................................................1

    A. The '030 Patent ...............................................................................................1

    B. The Accused Instrumentalities .......................................................................2

        1. Rendering Facebook and Instagram Live and "Was-Live" Videos on the Viewer's iOS Device .........................................................2

        2. Live Rewind .......................................................................................4

III. LEGAL STANDARD ..................................................................................................7

IV. ARGUMENT ...............................................................................................................8

    A. The Asserted Claim Requirements .................................................................8

    B. Voxer's Theory of Infringement .....................................................................9

    C. Undisputed Facts Establish There is No Infringement of Claim 1 and Claim 33 .........................................................................................................10

        1. Scenario One: Was-Live ..................................................................10

        2. Scenario Two: Live Rewind ............................................................12

    D. Doctrine of Equivalents .................................................................................14

    E. Dependent Claims .........................................................................................15

V. CONCLUSION ..........................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
   811 F.3d 1334 (Fed. Cir. 2016) ................................................................................................ 15

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................................... 7

*Jeneric/Pentron, Inc. v. Dillon Co.*,
   205 F.3d 1377 (Fed. Cir. 2000) .................................................................................................. 8

*Litton Sys., Inc. v. Honeywell, Inc.*,
   140 F.3d 1449 (Fed. Cir. 1998) .................................................................................................. 7

*Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*,
   739 F.3d 694 (Fed. Cir. 2014) .................................................................................................... 7

*Seal-Flex, Inc. v. Athletic Track and Court Constr.*,
   172 F.3d 836 (Fed. Cir. 1999) .................................................................................................... 7

*Texas Instruments, Inc. v. Cypress Semiconductor Corp.*,
   90 F.3d 1558 (Fed. Cir. 1996) .................................................................................................... 7

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997) ................................................................................................................... 15

**Federal Statutes**

35 U.S.C. § 112(d) ........................................................................................................................ 8

**Rules**

Fed. R. Civ. P. 56(c) ..................................................................................................................... 7

I.        **INTRODUCTION**

Judgment should be entered in Defendants Facebook, Inc. and Instagram LLC's (collectively, "Defendants" or "Facebook") favor as to Plaintiffs Voxer Inc. and Voxer IP LLC's ("Plaintiffs" or "Voxer") first cause of action because Plaintiffs have not presented any evidence upon which a reasonable jury could find that the asserted claims of U.S. Patent No. 8,180,030 ('030 patent) are infringed.

II.       **UNDISPUTED FACTS**[1]

    A.    **The '030 Patent**

The '030 patent is entitled "Telecommunication and multimedia management method and apparatus" and issued on May 15, 2012. The patent is directed to a purportedly novel "mode of engaging in conversations and/or managing multiple conversations."[2] More specifically, the patent purports to claim a system that, among other things, records incoming streaming media at a communication device (such as a mobile phone) so that the recipient can either listen to the media as it is arriving at the communication device or review a saved copy of the message at a more convenient time in the future.[3]

The claims recite streaming media being "progressively and persistently" stored on and streamed from a *transmitting* device.[4] Streaming media is also "progressively and persistently" stored on and rendered on a *receiving* device.[5] The incoming streaming media on the *receiving* device must be capable of being rendered "for the first time" in both a "real-time mode" and in a

---

[1] All exhibit citations are to the Declaration of Sean M. Arenson, filed concurrently herewith.
[2] Ex. A ('030 Patent) at 4:1-2.
[3] *Id*. at 4:6-10.
[4] *See, e.g.*, Ex. A, Claims 1 & 33.
[5] *Id*.

1

1751892

"time-shifted mode."[6] The streaming media that is rendered in a time-shifted mode must be retrieved and rendered "from persistent storage."[7]

### B.   The Accused Instrumentalities

Facebook Live and Instagram Live are live streaming video services available to users of the Facebook and Instagram mobile and web applications. The services are free to all Facebook users and allow them to share live video on the Facebook and Instagram platforms. When Voxer first filed suit, it accused the Facebook and Instagram iOS, Android, and web services of infringing the '030 patent.[8] But after discovery closed, Voxer narrowed its claims of infringement to the Facebook and Instagram iOS mobile applications only.[9]

#### 1.   Rendering Facebook and Instagram Live and "Was-Live" Videos on the Viewer's iOS Device

Broadcasters of Facebook Live and Instagram Live videos have the option of saving a version of their live broadcasts to Facebook and Instagram servers so that they can be watched in the future. Live broadcasts are referred to as "is-live" video and videos viewable on demand that were previously live are referred to as "was-live" video. The parties do not dispute how is-live and was-live videos are transmitted to and watched on a viewer's iOS device.[10]

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[6] *Id.*
[7] *Id.*
[8] Complaint ¶ 53.
[9] Ex. B (Opening Expert Report of Michael Mitzenmacher, Ph.D. (hereinafter, "Mitzenmacher Opening Rpt.")), ¶¶ 344-345.
[10] Compare Ex. B (Mitzenmacher Opening Rpt.) ¶¶ 281-284 with Ex. C (Rebuttal Report of Defendants' Expert Dr. Kevin Jeffay (hereinafter, "Jeffay Rebuttal Rpt.")) ¶¶ 162-167 and ¶¶ 228-236.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

1751892

3



███████████████████████████████

███████████████████████████████

████████████ ██████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

████ ██████████████████████████

███████████████████████████████

███████████████████████████████

████████

2. <u>Live Rewind</u>

For some Facebook Live broadcasts, users viewing the broadcast while it is still in progress (*i.e.*, an is-live video) may be able to pause, rewind or fast forward (up to the live head) the received video data during the Facebook Live broadcast.[20] This feature is generally referred

---



[18] Ex. C (Jeffay Rebuttal Rpt.) ¶ 264; Ex. D (Vaidya Dep. Tr.) at 112:17-117:21, 119:17-122:12.
[19] Ex. C (Jeffay Rebuttal Rpt.) ¶ 264; Ex. D (Vaidya Dep. Tr.) at 112:17-117:21; 119:17-122:12.
[20] Ex. D (Vaidya Dep. Tr.) at 90:21-91:4 ("Rewindable videos can definitely be paused. I don't know about nonrewindable videos, to be specific here. BY MR. SNYDER: Q. You're definitely aware that videos with Live Rewind enabled can be paused on the client devices? Is that a yes?

to as "Live Rewind," and it was first made available to some viewers on iOS devices for some live broadcasts starting in 2018.[21] Live Rewind is not available on Instagram Live.[22]

Live Rewind is available only in limited circumstances. From the broadcaster's perspective, Live Rewind cannot be enabled on any broadcasts made through a mobile device—including iOS devices.[23] Instead, only Facebook Live broadcasts made through a desktop or laptop computer using Facebook's Live Producer platform (available on the www.facebook.com site) can have Live Rewind functionality enabled and, even then, only at the broadcasting user's election.[24] Even then, Live Rewind is only available for viewers that view the live broadcast

---

A. Yes."); Ex. F (Loh Dep. Tr.) at 198:8-12 ("Q. What is Live Rewind? . . . THE WITNESS: Live Rewind is a product feature to allow the viewer to scroll back in time to places that the viewer is interested to watch.").

[21] Ex. G (FBVOX00037479).

[22] Ex. D (Vaidya Dep. Tr.) at 66:3-5 ("Q. Is Live Rewind available for Instagram Live? A. No."); Ex. E (Pei Dep. Tr. of J. Pei) at 63:20-64:11 ("Q. Let's go back to the scenario where a user with the Instagram iOS app has clicked on a live video and they are -- they are currently viewing a live -- an Instagram Live video. Do you have that scenario in mind? A. Yes. . . . Q. Can they rewind the video? A. No. They cannot rewind the video."); *id.* at 64:20-21 ("Q. Can a user fast forward a live video? A. Hmmm. No. A user cannot.").

[23] Ex. H (Defendants' Response to Request for Admission No. 24 (July 22, 2021)); Ex. D (Vaidya Dep. Tr.) at 63:5-10 ("Q. Okay. Is the default when a Facebook user broadcasts a Facebook Live video from a mobile device that viewers can rewind the live video? A. The -- no. The Facebook Live broadcasts broadcasted through mobile devices are not eligible for Live Rewind."); *id.* at 63:15-22 ("A. . . . Live Rewind is only eligible for videos broadcasted through Live Producer where the broadcaster has chosen to allow the videos to be live rewindable. Q. You believe that videos that are broadcasted from a mobile device do not have Live Rewind enabled; is that accurate? A That is accurate."); *id.* at 64:3-4 ("Videos broadcasted through a mobile device are not live rewindable."); *id.* at 64:11-17 ("Q. It's your testimony that a broadcast would have to go through Live Producer in order for Live Rewind to be enabled; is that accurate? A. Broadcaster will have -- that is correct. Broadcaster will have to go through the Live Producer and not disable Live Rewind functionality for that video to be Live-Rewind-eligible.").

[24] Ex. H (Defendants' Response to Request for Admission No. 24 (July 22, 2021)); Ex. D (Vaidya Dep. Tr.) at 63:5-10 ("Q. Okay. Is the default when a Facebook user broadcasts a Facebook Live video from a mobile device that viewers can rewind the live video? A. The -- no. The Facebook Live broadcasts broadcasted through mobile devices are not eligible for Live Rewind."); *id.* at 63:15-22 ("A. . . . Live Rewind is only eligible for videos broadcasted through

from a device that supports Live Rewind.[25]



---

Live Producer where the broadcaster has chosen to allow the videos to be live rewindable. Q. You believe that videos that are broadcasted from a mobile device do not have Live Rewind enabled; is that accurate? A. That is accurate."); *id.* at 64:3-4 ("Videos broadcasted through a mobile device are not live rewindable."); *id.* at 64:11-17 ("Q. It's your testimony that a broadcast would have to go through Live Producer in order for Live Rewind to be enabled; is that accurate? A. Broadcaster will have -- that is correct. Broadcaster will have to go through the Live Producer and not disable Live Rewind functionality for that video to be Live-Rewind-eligible.").

[25] Ex. H (Defendants' Response to Request for Admission No. 24 (July 22, 2021)); Ex. D (Vaidya Dep. Tr.) at 63:5-10 ("Q. Okay. Is the default when a Facebook user broadcasts a Facebook Live video from a mobile device that viewers can rewind the live video? A. The -- no. The Facebook Live broadcasts broadcasted through mobile devices are not eligible for Live Rewind."); *id.* at 63:15-22 ("A. . . . Live Rewind is only eligible for videos broadcasted through Live Producer where the broadcaster has chosen to allow the videos to be live rewindable. Q. You believe that videos that are broadcasted from a mobile device do not have Live Rewind enabled; is that accurate? A. That is accurate."); *id.* at 64:3-4 ("Videos broadcasted through a mobile device are not live rewindable."); *id.* at 64:11-17 ("Q. It's your testimony that a broadcast would have to go through Live Producer in order for Live Rewind to be enabled; is that accurate? A. Broadcaster will have -- that is correct. Broadcaster will have to go through the Live Producer and not disable Live Rewind functionality for that video to be Live-Rewind-eligible.").

[26] Ex. H (Defendants' Response to Request for Admission No. 24 (July 22, 2021)).

[27] Ex. H (Defendants' Response to Request for Admission No. 24 (July 22, 2021)).

[28] Ex. C (Jeffay Rebuttal Rpt.) ¶ 154; Ex. D (Vaidya Dep. Tr.) at 72:4-6, 97:13-98:4.

[29] Ex. C (Jeffay Rebuttal Rpt.) ¶ 154; Ex. D (Vaidya Dep. Tr.) at 72:4-6, 97:13-98:4.

6

### III. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id*. at 247–48 (emphases in original).[30]

To prove infringement, the patent owner "must supply sufficient evidence to prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim." *Seal-Flex, Inc. v. Athletic Track and Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999). "Literal infringement requires that the accused device contain each limitation of the claim exactly; any deviation from the claim precludes a finding of literal infringement." *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1454 (Fed. Cir. 1998).

To prove infringement under the doctrine of equivalents, the patent holder must provide "particularized testimony and linking arguments as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process . . . on a limitation-by-limitation basis." *Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996); see also *Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 700 (Fed. Cir. 2014) (explaining that an "alternate formulation focuses on whether the

---

[30] Unless otherwise noted, all emphases are added, and internal quotation marks and citations omitted.

substitute element matches the function, way, and result of the claimed element"). Finally, if a product does not infringe an independent claim, it cannot infringe a related dependent claim. *See* 35 U.S.C. § 112(d); *Jeneric/Pentron, Inc. v. Dillon Co.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000).

## IV. ARGUMENT

There is no material dispute regarding how received Facebook Live and Instagram Live videos are rendered on iOS devices. The sole questions are whether the accused products directly or indirectly satisfy every element of the Asserted Claims, as properly construed, and whether there is infringement via the doctrine of equivalents.

### A. The Asserted Claim Requirements

Voxer asserts independent claims 1 and 33 of the '030 patent as well as dependent claims 16 and 47.[31] The bolded limitations of claims 1 and 33 below are particularly relevant to the bases on which Facebook seeks summary judgment in this Motion.

| Independent Claim 1 | Independent Claim 33 |
|---|---|
| A computer readable application embedded in a non-transitory computer readable medium and intended to run on a communication device, the application comprising: | A communication method for communicating using a communication device, comprising: |
| [a] a storage module configured to progressively and persistently store streaming media created using the communication device as the streaming media is created; | [a] progressively and persistently storing streaming media created using the communication device as the streaming media is created; |
| [b] a transmission module configured to progressively transmit the streaming media over a network as the streaming media is created and persistently stored; | [b] progressively transmitting the streaming media over a network as the streaming media is created and persistently stored; |
| [c] a network receive module cooperating with the storage module to progressively and persistently store **streaming media received** over the network from a remote communication device as **the streaming media is received**; and | [c] progressively and persistently storing **streaming media received** over the network from a remote communication device as **the streaming media is received**; and |

---

[31] *See* Ex. A ('030 patent).

| [d] a rendering module configured to provide rendering options to **selectively render the received streaming media, for the first time, in both a real-time mode as the streaming media is received over the network and in a time-shifted mode by retrieving and rendering the retrieved streaming media from persistent storage**. | [d] **selectively rendering, for the first time, the received streaming media using one of two rendering options, the two rendering options including both (i) a real-time mode as the streaming media is received over the network and (ii) a time-shifted mode by retrieving and rendering the retrieved streaming media from persistent storage.** |
|---|---|

Claim element 1[c] requires an application's network receive and storage modules to cooperate "to progressively and persistently store streaming media received over the network from a remote communication device as the streaming media is received." In turn, claim element 1[d] requires a rendering module "configured to provide rendering options to selectively render *the received streaming media*, for the first time, in both a real-time mode . . . and in a time-shifted mode." "The received streaming media" of claim element 1[d] has as its antecedent basis the "progressively and persistently store[d] streaming media received over the network from a remote communication device" of claim element 1[c]. Accordingly, claim element 1[d] requires that the rendering module be configured to render the particular "received streaming media" that has been "progressively and persistently stored" on the recipient's communication device for the first time in both the claimed real-time mode and the claimed time-shifted mode. Independent claim 33 has similar requirements in the form of a method claim. As applied to the accused products in this case, Voxer must establish that received streaming media associated with Facebook Live and Instagram Live videos can be rendered for the first time in **both** a real-time mode **and** in a time-shifted mode.

B.    **Voxer's Theory of Infringement**

Voxer asserts that claim elements 1[d] and 33[d] are satisfied in two separate scenarios: first, where a version of Facebook Live and Instagram Live broadcasts can be watched on-

9

demand *after the live broadcast has ended* (referred to as watching a "was-live" video)[32]; and second, where viewers can rewind Facebook Live videos[33] while they are still being broadcast (no such option exists in Instagram Live video).[34] By way of illustrative example, if a live football game was broadcast on Facebook Live, the first scenario (was-live video) involves a viewer watching a recorded version of the game broadcast *after the live broadcast's conclusion*, while the second scenario (Live Rewind) involves a viewer rewinding portions of the game's live broadcast *as it is happening*.

    **C.**    **Undisputed Facts Establish There is No Infringement of Claim 1 and Claim 33**

Defendants are entitled to summary judgment of non-infringement because they do not practice claims 1 and 33. The Facebook and Instagram iOS Apps are not capable of rendering the same "received streaming media" described in claim elements 1[c] and 33[c] in both the claimed real-time mode and the claimed time-shifted mode, as required by claim elements 1[d] and 33[d].

    1.    <u>Scenario One: Was-Live</u>

With respect to the first scenario described above, when a user elects to view a was-live video, ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[32] Ex. B (Mitzenmacher Opening Rpt.) ¶¶ 390, 392.

[33] ███████████████████████████████████████████████

[34] Ex. B (Mitzenmacher Opening Rpt.) ¶ 391.

10

1751892

██████████████████████████████████████

██████████████ That same received streaming media *cannot be rendered in a "real-time mode,"* as both a logical and a technical matter. Therefore, the Facebook and Instagram iOS Apps are not "configured to provide rendering options to selectively render *the received streaming media*, for the first time, in **both** a real-time mode . . . **and** in a time-shifted mode."[35]

To illustrate this point, consider the "was-live" scenario, which Voxer describes as follows: "[a] user can select th[e] option to view a video for the first time in a time-shifted mode by, for example, waiting for a Live video to conclude and then starting to view the was-live version instead of joining the video while it is still live."[36] Even in this scenario, when hypothetical users "start to view the was-live version," ████████████████████████ ████████████████████████████████████████████████████████

██████████████ Streaming media that is "received" and "stored" only *after* a corresponding live broadcast has concluded cannot be rendered "for the first time" in "a real-time mode"—doing so is both a logical and technical impossibility. In other words, the received streaming media of was-live videos can be rendered for the first time *only* in a time-shifted mode. Likewise, ████████████████████████████████████████████████████ ████████████████████████████████████████████ the received streaming media of is-live videos can be rendered for the first time *only* in real-time mode.

Voxer does not dispute that is-live and was-live videos are not rendered from the same stored media.[37] Instead, it asserts that "the retrieved streaming media" referenced in claim

---

[35] Ex. A ('030 patent) Claim 1[d].
[36] Ex. B (Mitzenmacher Opening Rpt.) ¶ 392.
[37] Ex. B (Mitzenmacher Opening Rpt.) ¶ 402.

11

element 1[d] is "the video, whether in is-live or was-live format, and regardless of what time the data for the video was downloaded."[38] But Voxer cites no support for this position[39] and it rests upon a construction of "the received streaming media" that is contrary to the plain language of claim elements 1/33[c] and 1/33[d]. As noted above, "the received streaming media" of claim elements 1[d] and 33[d] have as their antecedent basis the streaming media referenced in claim elements 1[c] and 33[c], respectively. Accordingly, claim elements 1[d] and 33[d] cannot be satisfied by retrieving and rendering *any* version of a video, wherever it may reside. Rather, claim elements 1[d] and 33[d] require that, for the *specific* "progressively and persistently store[d] streaming media received over the network from a remote communication device" referenced in claim element 1[c], both claimed rendering modes (real-time and time-shifted modes) must be available for the first time. As even Voxer acknowledges, the Facebook and Instagram iOS Apps do not function in that manner because the received streaming media of an is-live video cannot be rendered for the first time in a time-shifted mode, and the received streaming media of a was-live video cannot be rendered for the first time in a real-time mode.[40] Received and stored streaming media can be rendered, at most, in one mode or the other, but not both. Therefore, neither the Facebook nor Instagram App for iOS devices practices claim elements 1[d] and 33[d].

### 2. Scenario Two: Live Rewind

The situation is no different for the Live Rewind scenario.[41] In that scenario, too, the received and stored streaming media of claim elements 1[c] and 33[c] cannot be rendered, as it

---

[38] *Id.*
[39] *Id.*
[40] Ex. B (Mitzenmacher Opening Rpt.) ¶ 402.
[41] Voxer never asserted that Live Rewind infringed any of the Asserted Claims in its

1751892

must under claim elements 1[d] and 33[d], "for the first time, in both a real-time mode as the streaming media is received over the network and in a time-shifted mode by retrieving and rendering the retrieved streaming media from persistent storage."[42] When a user rewinds a video such that they are viewing portions of the video behind the live head, ███████ ███████████████████████████████████ As previously explained, streaming media that is not received and stored by the viewer's device until after it is no longer live cannot be rendered in a "real-time mode." In that case, there is no option to render the received streaming media in both claimed modes. Alternatively, if the viewer rewinds to a portion of an ongoing Facebook Live broadcast that they have already viewed, ██████████████████████████ ████████████████████████████████████████████ ████ In that instance, however, the purported "time-shifted" rendering is necessarily of media that has *already been rendered* in a real-time mode—that is, live. Therefore, it is still not possible to render the received streaming media "*for the first time*, in both a real-time mode as the streaming media is received over the network and in a time-shifted mode by retrieving and rendering the retrieved streaming media from persistent storage."[43] Because any streaming media retrieved and rendered from storage on the receiving device has necessarily already been rendered live, that received streaming media cannot be rendered for the first time in a time-shifted mode.

---

infringement contentions. Consequently, Defendants are simultaneously moving to strike Voxer's infringement theories concerning Live Rewind as they apply to the '030 patent.
[42] Ex. A ('030 patent) Claim 1[d].
[43] *Id.*

## D.     Doctrine of Equivalents

Defendants are entitled to summary judgment of non-infringement because they do not practice independent claims 1 and 33 even under the doctrine of equivalents. In its discovery responses and in its expert's report, Voxer asserted the same boilerplate for infringement of claim elements 1[d] and 33[d] under the doctrine of equivalents:

> The accused products perform substantially the same function (e.g., enabling selective rendering of streaming media while that media is still being created, or in time-shifted mode), in substantially the same way (e.g., using storage to store the streaming media), **to achieve substantially the same result (e.g., recipient can view and/or interact with streaming media while it is being created, or view the same in time-shifted mode)** as the claimed 'progressively and persistently store streaming media received over the network from a remote communication device as the streaming media is received.'"[44]

Voxer has produced no further discovery or expert opinions explaining these assertions.

The purported "same result" in Voxer's doctrine of equivalents theory effectively strikes two requirements from claim elements 1[d] and 33[d]: the requirement that both claimed rendering modes must be available for "*the received*" streaming media, and that both claimed rendering modes must be available "*for the first time.*"

| Independent Claim 1 | Independent Claim 33 |
|---|---|
| [d] a rendering module configured to provide rendering options to selectively render ~~the received~~ streaming media, ~~for the first time,~~ in both a real-time mode as the streaming media is received over the network and in a time-shifted mode by retrieving and rendering the retrieved streaming media from persistent storage. | [d] selectively rendering, ~~for the first time, the received~~ streaming media using one of two rendering options, the two rendering options including both (i) a real-time mode as the streaming media is received over the network and (ii) a time-shifted mode by retrieving and rendering the retrieved streaming media from persistent storage. |

---

[44] Ex. B (Mitzenmacher Opening Rpt.) ¶ 404; Ex. I (Plaintiffs' Supplemental Response to Interrogatory No. 28 (July 30, 2021)) at 90.

Indeed, neither in its discovery response nor its expert's report (the relevant portions of which are provided above) does Voxer address how anything Facebook Live or Instagram Live does is equivalent to the requirement for rendering "for the first time" "the received streaming media" in both a real-time and time-shifted mode.

It is black letter law that "[u]nder the doctrine of equivalents, an infringement theory . . . fails if it renders a claim limitation inconsequential or ineffective." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016). This vitiation doctrine ensures the application of the doctrine of equivalents does not "effectively eliminate [a claim] element in its entirety." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). But Voxer has, in effect, vitiated the "for the first time" requirement as it applies to "the received streaming media" in the asserted claims.

Because Voxer failed to produce any evidence or expert opinions establishing how the inability to view streaming media in both of the two claimed rendering modes in the first instance is "substantially the same" as the absence of that ability, the Facebook and Instagram iOS Apps do not achieve substantially the same result as claim element 1[d]. Summary judgment of non-infringement on any doctrine of equivalents theory must be entered for Defendants.

### E. Dependent Claims

Because neither Facebook Live nor Instagram Live infringe independent claims 1 and 33, neither do they infringe either of the asserted dependent claims—16 and 47. Consequently, Defendants are entitled to summary judgment of non-infringement on those claims as well.

### V. CONCLUSION

For the foregoing reasons, Defendants respectfully request summary judgment of non-infringement of the '030 patent be entered as to both Scenarios One (was-live) and Two (Live Rewind) of Voxer's infringement theories.

October 18, 2021                                        Respectfully submitted,


                                                         By: *s/ Paven Malhotra*
          Christa M. Anderson
          canderson@keker.com
          David J. Silbert
          dsilbert@keker.com
          Eugene M. Paige
          epaige@keker.com
          Matthew W. Werdegar
          mwerdegar@keker.com
          Paven Malhotra
          pmalhotra@keker.com
          KEKER, VAN NEST & PETERS LLP
          633 Battery Street
          San Francisco, CA 94111
          Tel: 415-391-5400

          Michael E. Jones
          SBN: 10929400
          Patrick C. Clutter
          SBN: 24036374
          POTTER MINTON, PC
          110 North College, Suite 500
          Tyler, Texas 75702
          Tel: 903-597-8311
          Fax: 903-593-0845
          mikejones@potterminton.com
          patrickclutter@potterminton.com

Attorneys for Defendants
FACEBOOK, INC. and INSTAGRAM LLC

1751892

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on October 18, 2021.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on October 18, 2021.

                                              */s/ Paven Malhotra*
                                              Paven Malhotra

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order in this case and Judge Albright's Standing Order Regarding Filing Documents Under Seal in patent Cases and Redacted Pleadings.

                                              */s/ Paven Malhotra*
                                              Paven Malhotra