

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| VOXER, INC. AND VOXER IP LLC, | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | CAUSE NO. A-20-CV-00655-LY |
| | § | |
| FACEBOOK, INC. AND | § | |
| INSTAGRAM LLC, | § | |
| DEFENDANTS. | § | |

## ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS

Before the court is the above styled and numbered patent-infringement action. Pending are Defendants Facebook, Inc. and Instagram LLC's (collectively "Facebook") Motion For Judgment on the Pleadings Under Fed. R. Civ. P. 12(c) filed March 29, 2021 (Doc. #85), Plaintiffs Voxer, Inc. and Voxer IP LLC's (collectively "Voxer") Plaintiffs' Response To Defendants' Motion For Judgment on the Pleadings Under Fed. R. Civ. P. 12(c) filed April 19, 2021 (Doc. #87), and Facebook's Reply in Support of Motion For Judgment on the Pleadings Under Fed. R. Civ. P. 12(c) filed May 3, 2021 (Doc. #89).

Voxer's complaint alleges that several of Facebook's products have infringed and continue to infringe one or more claims of six Voxer patents.[1] Specifically, Voxer alleges that Facebook infringes the patents at issue by making, using, selling, and offering to sell the Facebook and Instagram mobile applications, mobile devices running the Facebook or Instagram mobile applications, and systems, servers, and services used with Facebook Live or Instagram Live.

---

[1] The patents at issue are Voxer's United States Patents Nos. 8,180,030 ("'030 patent"); 9,634,969; 10,109,028; 10,142,270 ("'270 patent"); and 10,511,557. Voxer is the owner of all rights, title, and interest in these patents.

In 2006, Tom Katis, Voxer's co-founder, began developing solutions for communication shortcomings he experienced during his overseas military service. At the time, communication systems could operate only in real-time or after composing a complete message. None of the systems available were suited for time-sensitive communications with multiple groups in a highly disruptive environment. Katis and his development team worked on new technologies that enabled transmission of voice and video communications with the immediacy of live communication and the reliability and convenience of messaging. The technologies allowed transmission and reception under poor and varying network conditions and regardless of a recipient's availability.

The '030 patent, titled "Telecommunication and multimedia management method and apparatus," issued on May 15, 20212. The '030 patent addressed a specific improvement to the way computers operate, including by progressively transmitting streaming media over a network as the streaming media is created and persistently stored, therefore enabling hybrid digital communications that can be real-time and time-shifted; and by allowing a progressive media stream which can be sent synchronously while another stream is received. This "enab[es] users to review the messages of conversations in either a live mode or time-shifted mode" and "to seamlessly transition a conversation between a synchronous 'live' mode and a 'time shifted mode.'"

The '270 patent, also titled "Telecommunication and multimedia management method and apparatus," issued on November 27, 2018. The '270 patent addressed a specific improvement to the way computers operate, including by progressively transmitting streaming media over a network as the streaming media is created and persistently stored, therefore enabling hybrid digital communications that can be real-time and time-shifted; and by delivering video communication without first establishing an end-to-end connection over the network between the sender and

receiver. The improvement in existing communication systems is described as "delivering video communication without first establishing and end-to-end connection over the network between the sender and receiver." This "enabl[es] users to participate in conversations without waiting for a connection to be established with another participant or the network" and "even when there is no network available, when the network is of poor quality, or other participants are unavailable."

By its motion Facebook contends Voxer's complaint fails to state a claim for which relief may be granted because claims 1 and 33 of the '030 patent and claims 34 and 55 of the '270 patent are directed to abstract ideas or present no inventive concepts and, therefore, the '030 and '270 patents are invalid. *See* 35 U.S.C. § 101 ("Section 101"); Fed. R. Civ. P. 12(b)(6). Additionally, Facebook argues the asserted dependent claims of the '030 and '270 patents are invalid.

Facebook argues that the '030 patent is directed to the abstract idea of transmitting, receiving, and storing streaming media, and rendering it either in real-time or after the fact. This abstract idea Facebook argues encompasses long-practiced, precomputer communication methods, including broadcast television and telephonic communications. Facebook also argues that the '270 patent is directed to the abstract idea of routing messages to recipients identified by the sender without first requiring a direct connection between the sender and recipient. Facebook contends that this is an abstract idea encompassing long-practiced human behavior for routing communications through corporate mailrooms, telephone switchboards, and other message-delivery systems. Facebook argues that these are the types of "well-understood, routine, conventional activities previously known to the industry" that are ineligible for patent protection under *Alice Corp. v. CLS Bank International* and its progeny. 573 U.S. 208, 225 (2014).

Voxer responds that the challenged claims of the '030 patent and the '270 patent are directed to improvements to existing communication systems–improving how computers communicate real-time video or other media–and achieve those improvements using innovative technical solutions. Claims like those at issue–that improve "the functionality of [a] communication system"–are patent eligible. *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020).

Every issued patent is presumed to have been issued properly, absent clear-and-convincing evidence to the contrary. *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338-39 (Fed. Cir. 2013), *vacated sub nom., on other grounds*, *WildTangent, Inc. v. Ultramercial, LLC*, 573 U.S. 942 (2014). When patent eligibility is challenged by a motion to dismiss for failure to state a claim, the court applies the standard that is consistently applied in all areas of law. *See Berkheimer v. HP, Inc.*, 890 F.3d 1369, 1372 (Fed. Cir. 2018) (order on petition for rehearing en banc). A motion to dismiss will be denied if in reviewing the complaint in the light most favorable to the plaintiff and with every doubt resolved in the pleader's favor–but disregarding conclusory statements–the complaint states any cognizable claim for relief. *Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013). Denying a motion to dismiss is not a holding that the challenged patent claims are eligible. *Berkheimer*, 890 F.3d at 1373. "And the mere fact that there [are] sufficient allegations in the pleading to state a claim for patent infringement does not mean that the case need go to trial." *Id.* An accused infringer may move for summary judgment at any time, the court can convert a Rule 12(b)(6) motion into a summary-judgment motion, and alternatively, the court can raise summary judgment *sua sponte*. *See id.*; Fed. R. Civ. P. 12(d), 56(f)(3). "Moreover, if the allegations in the complaint about the invention as claimed ultimately lack evidentiary support or if the case is exceptional, the court can award attorney's fees to the accused infringer under either [Federal] Rule [of Civil Procedure] 11

4

or [Title 35 United States Code] Section 285 to compensate the accused infringer for any additional litigation costs it incurs." *Berkheimer*, 890 F.3d at 1373.

Section 101 describes the types of subject matter that are eligible for patent protection and also "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp.*, 573 U.S. at 216. The concern is that granting a patent monopoly on an abstract idea would impede innovation by tying up the building blocks of future ingenuity. *Id.* At the same time, courts are to "tread carefully in construing this exclusionary principle" for "at some level all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* "An invention is not rendered ineligible for patent simply because it involves an abstract concept." *Id.* (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)).

A two-part test exists to determine whether a patent claim is directed to patentable subject matter or, alternatively, to a "building block of human ingenuity." *Id.* at 217 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 88-89 (2012)). The first part requires the court to determine whether each asserted claim is directed to a patent ineligible "abstract idea." *Id.* If the court determines that each claim is directed to an abstract idea, the second part of the test asks whether an "inventive concept" exists–whether there is an element or combination of elements that "ensure the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* The court must also consider that "[a]n inventive concept can be found in the nonconvetional and nongeneric arrangement of known, conventional pieces." *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

**'030 patent issues**

Facebook argues that the '030 patent fails because independent claims 1 and 33 are directed at nothing more than the abstract idea of creating, transmitting, receiving, and storing streaming media, and rendering it either in real-time or after-the-fact. Facebook argues that live television broadcasts or an individual with a videocassette recorder, could view the broadcast live while simultaneously storing it for subsequent replaying. Also, as for telephonic methods, answering machines and voicemail also provide this time-shifting function. What is claimed is simply a general-purpose computer, portable computing device, programmable phone, or any other programmable communication device. Voxer disagrees and responds that the persistent storage of messages is central to the inventive features of the '030 patent. What is different is that the '030 patent claims include selectively rending the received streaming media, for the first time, in both a real-time mode and a time-shifted mode.

Second Facebook argues that the '030 patent fails because lacking is any inventive concept that would make the idea patent-eligible. Facebook contends that nothing in claims 1 and 33 requires anything other than a conventional computer and network components operating according to their ordinary functions. The claims recite generalized steps to carry out generic computer functions. Voxer disagrees with Facebook's conclusory characterization of claims 1 and 33, and argues at a minimum questions of fact remain and Facebook's motion should be denied.

**'270 patent issues**

Facebook argues first that the '270 patent fails because claims 34 and 55 are patent-ineligible as they consist only of routing messages to a recipient identified by the sender without first requiring a direct connection between the sender and the recipient. Facebook argues this is simply an abstract

idea, and compares the process to a corporate mailroom routing correspondence to corporate recipients. Further, Facebook argues the patent does no more that describe a desired function or outcome, without providing any limiting detail that confines the claims to a particular solution to an identified problem. Voxer responds that the '270 patent delivery method focuses on enabling video communication to be at least partially rendered at the second communication device while the video communication is being transmitted by the sending communication device. And that delivery method is not an abstract idea comparable to the corporate mailroom example suggested by Facebook.

Second, Facebook argues that the '270 patent fails because lacking is any inventive concept that would make the idea patent-eligible. Facebook contends that only conventional computer and network components are utilized, and they are described to work only according to their ordinary functions. Facebook contends that even looking beyond the claims, the specification of the '270 patent confirms that the implementation of the abstract idea is routine and conventional. Further, there is nothing inventive about how the claimed functions are performed. Voxer responds that at a minimum, questions of fact remain about whether the '270 patent lacks an inventive concept.

Having reviewed the complaint, the motion, response, and reply, the case file, and the applicable law, the court accepts Voxer's well-pleaded facts as true and has viewed them in the light most favorable to Voxer. Through that lens, the court concludes that Facebook has failed to show by clear-and-convincing evidence that either the '270 patent or the '030 patent addressses only an abstract idea and presents no inventive concept. To survive a motion to dismiss for failure to state a claim, Voxer must only have pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On this limited record, it cannot

be said, as a matter of law, that either the '270 patent or the '030 patent involves only an abstract or generic idea and lacks any inventive concept. The court concludes that Voxer's complaint, on its face, states a plausible claim for relief.

**IT IS ORDERED** that Defendant Facebook, Inc. and Instragram LLC's Motion For Judgment on the Pleadings Under Fed. R. Civ. P. 12(C) (Doc. #85) is **DENIED**.

SIGNED this 15th day of February, 2022.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE