UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **VOXER, INC. and VOXER IP LLC,** § | | |
| *Plaintiffs* § | | |
| § | | |
| **v.** § | | |
| § | | |
| **META PLATFORMS, INC. f/k/a** § | **CASE NO. A-20-CV-00655-LY-SH** | |
| **FACEBOOK, INC. and** § | | |
| **INSTAGRAM LLC,** § | | |
| *Defendants* § | | |

**ORDER DENYING META PLATFORMS, INC.'S
MOTIONS TO EXCLUDE EXPERT TESTIMONY**

Before the court in the above styled patent-infringement action are, *inter alia*, Defendant Meta Platforms, Inc.'s ("Meta") motion to exclude expert reports and opinions of Plaintiff Voxer, Inc. and Voxer IP LLC's (collectively, "Voxer") technical expert, Michael Mitzenmacher.[1] Meta argues that Mitzenmacher's opinions are conclusory, not based on sufficient facts or data, not based on any reliable principles or methods, and will not help the trier of fact to understand the evidence. *See* Fed. R. Civ. P. 702. Additionally, Meta challenges Voxer's damages expert Alan Ratliff's opinions about what would be a reasonable royalty award.[2] *Id.* Meta asserts several

---

[1] The filings associated with this contention are [Meta's] Revised Motion to Exclude Testimony by Voxer's Technical Expert [ ] and Revised Motion to Strike [ ] Mitzenmacher's Opinions on Literal and Doctrine of Equivalents Infringement That Voxer Failed to Disclose in Its Infringement Contentions filed January 28, 2022 (Doc. #189), Voxer's Revised Response In Opposition to Defendants' Motion [ ] and Motion to Strike filed January 31, 2022 (Doc. #204), and Meta's reply filed February 1, 2022 (Doc. #211). The 456-page Opening Expert Report is a sealed exhibit located in the case file at Document No. 190-1 ("Mitzenmacher's Report").

[2] The filings associated with this contention are [Meta's] Revised Motion to Exclude the Expert Reports and Testimony of Alan Ratliff filed January 28, 2022 (Doc. #185), Voxer's Revised Response in Opposition to Defendants' Motion to Exclude the Expert Reports and Testimony of Alan Ratliff filed January 31, 2022 (Doc. # 136); and Meta's reply filed February 1, 2022 (Doc. # 213). The 60-page Damages Expert Report of Alan Ratliff on Behalf of Voxer, Inc and Voxer IP LLC is a sealed exhibit located in the case file at Document No. 185-3 ("Ratliff's Report").

reasons that Ratliff's damages opinions fail to meet the essential requirement for reliability, which is that "the ultimate reasonable royalty award [ ] be based on the incremental value that the patented invention adds to the end product."  *Commonwealth Sci. & Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015).

## Accused Products: Facebook Live and Instagram Live

Voxer alleges that Meta infringes the patents-in-suit through the use of Meta's products, Facebook Live and Instagram Live.  Meta's description of its product, Facebook Live, explains that Facebook Live was launched around December 3, 2015 and allows users to "broadcast in real-time a conversation, live performance, or virtual event."  Meta monetizes Facebook Live three ways: (1) Facebook places in-stream ads into the videos and shares the revenue from those ads with the content creators; (2) Facebook takes a portion of users' direct payments to the live-content creators; and (3) Facebook charges content creators to boost their live content.  Ratliff estimated that during the relevant time period, United States revenue from these sources directly tracked to Facebook Live exceeded $100 million.  Meta's description of Instagram Live explains that the two products are similar but have differences; for example, Instagram Live does not have a live rewind feature.  Instagram Live does allow users to share real-time video broadcasts with one another.  Meta monetizes Instagram Live differently, in that it does not offer in-stream ads.

Voxer maintains that Meta's revenue analysis is too limited in that it comprises only the new revenue channels created by Facebook Live and does not account for the increased app-advertising revenues resulting from all Live video watch time.  Because Meta does not track such data, Voxer asserts that Ratliff had to make such computations using Ratliff's own model, which was based on the evidence produced during discovery.

**Expert testimony**

A witness qualified as an expert may testify if:

> the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; the testimony is based in sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Rule 702 was amended to incorporate the principles articulated in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See* FED. R. CIV. P. 702, Adv. Comm. Notes (2000). Following *Daubert* and its progeny, trial courts act as gatekeepers, overseeing the admission of scientific and nonscientific expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Trial courts must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. In carrying out this task, district courts have broad latitude in weighing the reliability of expert testimony for admissibility. *See Kumho Tire Co.*, 526 U.S. at 152. The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*.

*Daubert* provides the analytical framework for determining whether expert testimony is admissible under Rule 702 of the Federal Rules of Evidence. *See Kumho Tire Co.*, 526 U.S. at 141. This *Daubert* framework includes many factors that can be used to determine the admissibility of expert testimony, including, but not limited to, whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally

accepted in the relevant scientific community. *See Daubert*, 509 U.S. at 593-94. Not every *Daubert* factor will be applicable in every situation and a court has discretion to consider other factors it deems relevant. *See Kumho Tire*, 526 U.S. at 151-52.

Under these rules, a district court may exclude evidence that is based on unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case. *Kumho Tire*, 526 U.S. at 150 (gatekeeping inquiry must be tied to particular facts of case); *i4i Ltd. v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010) ("*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness."). Whether the expert is credible or the opinions are correct is generally a question for the fact finder, not the court. *Apple Inc. v. Motorola, Inc.*, 757 Fed. Cir. 1286, 1314 (Fed. Cir. 2014), *overruled en banc on other grounds*, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

To prove infringement, a plaintiff must prove the presence of each and every claim element or its equivalent in the accused method or device. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011). Expert testimony is admissible to give an opinion on the ultimate question of infringement. *Snellman v. Ricoh Co., Ltd.*, 862 F.2d 283, 287 (Fed. Cir. 1988); *see also Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1378 (Fed. Cir. 2011) (plaintiff's primary evidence in support of infringement claims was its technical expert's infringement testimony and jury had ability to credit or discredit expert witness at trial).

Meta's motion asserts various reasons why the court should strike several portions of Mitzenmacher's technical analysis. *See* Fed. R. Evid. 703. Meta also takes issue with Ratliff's

damages opinions about what a reasonable royalty would be in the event the jury finds infringement.  *See* 35 U.S.C. § 284.  Meta does not take contest either Mitzenmacher's or Ratliff's qualifications.

### Challenges to Mitzenmacher's report

Meta argues, *inter alia*, that Voxer has failed to demonstrate that Mitzenmacher's technical apportionment opinions are the product of a reliable methodology and based on sufficient facts and data.  Meta contends that Mitzenmacher's opinions related to Instagram's 2012 technology should be excluded because he only personally used Instagram for purposes of this litigation. Meta also argues that Mitzenmacher's opinions regarding nontechnical matters should be excluded because the evidence shows that Mitzenmacher is not qualified to offer an opinion about the commercial acceptability of Facebook's non-infringing alternatives and is not "an expert in the field of user privacy and data control."  Meta argues that Mitzenmacher's opinions about Facebook's state of mind as related to indirect infringement should be excluded because those opinions "amount to nothing more than vouching for Voxer's allegations, which is improper."

Initially, the court finds that Mitzenmacher is a well-educated and qualified scientist. Mitzenmacher's work, teaching, and research experience in the scientific fields related to the issues raised in the case reasonably indicate to the court, operating in a gatekeeping capacity, that Mitzenmacher is qualified to render opinions in this action based on his "knowledge, skill, experience, training, or education."  Fed. R. Civ. P. 702.  The court finds that based on the flexible nature of the court's *Daubert* inquiry, the issues raised by Meta may be explored and developed at trial through cross-examination of Mitzenmacher.  The court thus concludes that Mitzenmacher's opinions are relevant and may aid the jury.  The court also concludes that Mitzenmacher may testify about his opinions related to whether Meta's products infringe the patents at issue, and Meta may cross-examine Mitzenmacher regarding his methods.

### **Challenges to Ratliff's report**

Meta argues that Ratliff's damages calculation should be excluded because the royalty-base portion of the calculation failed to use the Smallest Salable Patent Practicing Unit and instead improperly used the entire market value. "Where methodology is reasonable and its data or evidence are sufficiently tied to the facts of the case, the gatekeeping role of the court is satisfied, and the inquiry on the correctness of the methodology and of the results produced thereunder belongs to the factfinder." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). Although apportionment generally is required if the patented features are not the sole driver of demand, it is not a rigid rule, but rather an evidentiary tool intended to avoid jury confusion. *See, e.g., Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("The point of the evidentiary principle is to help the jury system reliably implement the substantive statutory requirement of apportionment of damages to the invention's value.").

Initially, the court in a gatekeeping capacity finds that Ratliff is well-educated and is qualified to testify about damages in this case. Having considered all of Meta's contentions that portions of Ratliff's report and his proposed testimony are deficient and should be excluded from trial, the court finds that Meta's complaints are for the factfinder to assess. Cross-examination and the presentation of contrary evidence are the traditional and appropriate means of addressing what one side may believe to be shaky evidence. *Daubert*, 509 U.S. at 596. Meta may cross-examine Ratliff at trial about his methodology.

Having considered Meta's motions, the responses, the reply, each side's supplemental authorities, the case file, and the applicable law,

**IT IS ORDERED** that [Meta's] Revised Motion to Exclude Testimony by Voxer's Technical Expert [ ] and Revised Motion to Strike [ ] Mitzenmacher's Opinions on Literal and Doctrine of Equivalents Infringement That Voxer Failed to Disclose in Its Infringement

Contentions filed January 28, 2022 (Doc. #189) and [Meta's] Revised Motion to Exclude the Expert Reports and Testimony of Alan Ratliff filed January 28, 2022 (Doc. #185) are **DENIED**.

**SIGNED** August 16, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE