```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
 2                      AUSTIN DIVISION

 3  VOXER, INC. and VOXER IP LLC,        ) AU:20-CV-00655-LY
                                         )
 4     Plaintiffs,                       )
                                         )
 5  v.                                   ) AUSTIN, TEXAS
                                         )
 6  META PLATFORMS, INC., f/k/a          )
    FACEBOOK, INC., and INSTAGRAM LLC,   )
 7                                       )
       Defendants.                       ) SEPTEMBER 12, 2022
 8

 9          ************************************************
                    TRANSCRIPT OF JURY TRIAL
10                          VOLUME 1
                  BEFORE THE HONORABLE LEE YEAKEL
11          ************************************************

12  APPEARANCES:

13  FOR THE PLAINTIFFS:  G. BLAKE THOMPSON
                         MANN TINDEL THOMPSON
14                       201 E. HOWARD STREET
                         HENDERSON, TEXAS 75654
15
                         MICHAEL D. POWELL
16                       SAM STAKE
                         CHRISTINE WEIJIA CHEN
17                       OGNJEN ZIVOJNOVIC
                         QUINN EMANUEL URQUHART & SULLIVAN LLP
18                       50 CALIFORNIA STREET, 22ND FLOOR
                         SAN FRANCISCO, CALIFORNIA 94111
19
                         ROBERT W. STONE
20                       QUINN EMANUEL URQUHART & SULLIVAN LLP
                         555 TWIN DOLPHIN DRIVE, 5TH FLOOR
21                       REDWOOD SHORES, CALIFORNIA 94065

22                       GAVIN SNYDER
                         QUINN EMANUEL URQUHART & SULLIVAN LLP
23                       1109 FIRST AVENUE, SUITE 210
                         SEATTLE, WASHINGTON 98101
24

25
```

```
 1  FOR THE DEFENDANTS:   MICHAEL E. JONES
                          SHAUN WILLIAM HASSETT
 2                        POTTER MINTON PC
                          110 NORTH COLLEGE, SUITE 500
 3                        TYLER, TEXAS 75702

 4                        ROBERT A. VAN NEST
                          CHRISTA M. ANDERSON
 5                        DAVID J. SILBERT
                          EUGENE M. PAIGE
 6                        PUJA V. PARIKH
                          PAVEN MALHOTRA
 7                        JASON S. GEORGE
                          SEAN M. ARENSON
 8                        VISHESH NARAYEN
                          KEKER, VAN NEST & PETERS LLP
 9                        633 BATTERY STREET
                          SAN FRANCISCO, CALIFORNIA 94111-1809
10
                          BLAINE H. EVANSON
11                        GIBSON, DUNN & CRUTCHER LLP
                          3161 MICHELSON DRIVE
12                        IRVINE, CALIFORNIA 92612

13  COURT REPORTER:       ARLINDA RODRIGUEZ, CSR
                          501 WEST 5TH STREET, SUITE 4152
14                        AUSTIN, TEXAS 78701
                          (512) 391-8791
15

16

17

18

19

20

21

22

23

24  Proceedings recorded by computerized stenography, transcript

25  produced by computer.
```

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
| 13:01:45 | 1  | (Open court, no jury)                                      |
| 13:01:45 | 2  | THE COURT:  We're here because I understand there's a      |
| 13:01:47 | 3  | matter we need to take up before we start selecting the jury in |
| 13:01:53 | 4  | Cause Number 20-CV-655, *Voxer and others v. Meta Platforms and* |
| 13:02:01 | 5  | *others*.                                                  |
| 13:02:02 | 6  | So who wants to proceed with where we are today?           |
| 13:02:04 | 7  | MR. POWELL:  Good morning, Your Honor.  Mike Powell        |
| 13:02:06 | 8  | for the plaintiff, Voxer.  The plaintiff does have one issue it |
| 13:02:09 | 9  | would like to raise regarding the limine rulings.  The Court |
| 13:02:13 | 10 | advised that the parties, in this case, Voxer, should request |
| 13:02:17 | 11 | leave before seeking to use certain evidence in the case.  That |
| 13:02:22 | 12 | evidence that we're interested in does come up in the opening |
| 13:02:26 | 13 | statement and with some early witnesses.  So we're hoping the |
| 13:02:30 | 14 | Court will indulge hearing our argument to request leave to |
| 13:02:33 | 15 | introduce that evidence.                                   |
| 13:02:34 | 16 | THE COURT:  As long as it's short.                         |
| 13:02:36 | 17 | MR. POWELL:  It will be.  With the Court's                 |
| 13:02:39 | 18 | permission, I do have some PowerPoint slides that I think will |
| 13:02:40 | 19 | help illustrate the issues.  I can hand up --              |
| 13:02:43 | 20 | THE COURT:  That doesn't lead to short.                    |
| 13:02:48 | 21 | MR. POWELL:  I think it's only four or five slides,        |
| 13:02:50 | 22 | just to present the evidence so you can see what we're talking |
| 13:02:53 | 23 | about.                                                     |
| 13:02:54 | 24 | THE COURT:  Pass them up.                                  |
| 13:03:03 | 25 | MR. POWELL:  And I don't know if the electronic            |

| | |
|---|---|
| 13:03:05 | 1 |
| 13:03:08 | 2 |
| 13:03:11 | 3 |
| 13:03:15 | 4 |

```
13:03:05   1   system is live.  But if we could pull up the first slide, I'm
13:03:08   2   just going to compare quickly, Your Honor, Motion in Limine
13:03:11   3   Number 3, which you granted, and Motion in Limine Number 4,
13:03:15   4   which was withdrawn by the defense.
13:03:18   5        In both motions the subject matter that the defense
13:03:24   6   was concerned with is, I think, the same.  In both instances
13:03:28   7   they were worried about an e-mail from Mark Zuckerberg dated
13:03:33   8   March 2012 which advocated for copying competitor technology
13:03:38   9   such as Voxer.
13:03:39  10        Voxer is actually mentioned in that e-mail, and it
13:03:42  11   relates to Mr. Zuckerberg's trip to China, where he was
13:03:45  12   impressed by their ability to copy other people's technology
13:03:49  13   and quickly bring it to market.  And the -- the reference was
13:03:53  14   to Voxer because two Chinese companies had done just that and
13:03:57  15   were having great success in the market in Asia because of it.
13:04:01  16        The second category is about completion, whether the
13:04:07  17   parties are competitors and whether Facebook's actions in
13:04:10  18   cutting off Voxer from what's called its Friends API,
13:04:14  19   Application Programming Interface, is a fact that the jury
13:04:17  20   should hear in this case.
13:04:18  21        In Motion in Limine Number 3, the purported reason to
13:04:22  22   exclude was, quote, Voxer's conduct in this litigation to date
13:04:27  23   has made clear that it intends to try to piggyback on negative
13:04:32  24   publicity directed to Facebook in recent years and turn this
13:04:35  25   patent infringement matter into a de facto referendum on
```

| | | |
|---|---|---|
| 13:04:38 | 1 | Facebook's corporate citizenship. |
| 13:04:39 | 2 | In Motion in Limine Number 4 we're going to find the |
| 13:04:42 | 3 | same evidence being presented, or they're attempting to |
| 13:04:47 | 4 | exclude.  The difference here -- the only difference here is |
| 13:04:49 | 5 | that, as to that competitor category, they limited that motion |
| 13:04:53 | 6 | to just matters in 2012. |
| 13:04:56 | 7 | Now, they did that, importantly, because the decision |
| 13:04:59 | 8 | to cut Voxer off from the Friends API happened in January of |
| 13:05:05 | 9 | 2013.  And actually happened as a culmination of the |
| 13:05:08 | 10 | discussions that Voxer and Facebook were having about whether |
| 13:05:11 | 11 | they were going to acquire Voxer, license its technology, |
| 13:05:15 | 12 | whether they were or were not competitors. |
| 13:05:17 | 13 | At some point in that process in early 2013, Facebook |
| 13:05:21 | 14 | decides you are a competitor; we're going to cut you off.  And |
| 13:05:25 | 15 | the contention by Voxer is that activity led to Voxer's |
| 13:05:29 | 16 | ultimate financial demise. |
| 13:05:31 | 17 | The reason here in MIL Number 4, they again accuse us |
| 13:05:34 | 18 | of seeking to capitalize on negative publicity directed to |
| 13:05:38 | 19 | Facebook. |
| 13:05:39 | 20 | The point, Your Honor, is we're not trying to bring |
| 13:05:41 | 21 | in Facebook's misdeeds globally.  There may be several |
| 13:05:46 | 22 | perceived misdeeds that have nothing to do with this case.  The |
| 13:05:48 | 23 | misdeeds that we're interested in are specifically tied to |
| 13:05:50 | 24 | Voxer.  The Mark Zuckerberg e-mail involves Voxer's technology |
| 13:05:55 | 25 | being copied in China and Mark Zuckerberg saying that sounds |

13:05:58  1   like a good idea.

13:05:59  2           The other e-mails and internal communications relate

13:06:03  3   to whether or not Voxer is a competitor and Facebook's decision

13:06:07  4   to cut them off from a very important interface that was a

13:06:10  5   third of Voxer's business in 2013.

13:06:12  6           Now, tying it to the case, slide 4, this is

13:06:17  7   Cathy Lawton.  This is the expert report for the defense.

13:06:21  8   She's going to offer the opinion that I've highlighted here.

13:06:24  9   Voxer had a history of failing to meet its projections.

13:06:28  10  Voxer's financial condition indicates that the form of the

13:06:31  11  license agreement would be a lump sum.  And she talks about the

13:06:35  12  lackluster financial performance leading up to the hypothetical

13:06:39  13  negotiation, Your Honor, which in this case is November of

13:06:42  14  2018.

13:06:44  15          All of this conduct leads into the hypothetical

13:06:47  16  negotiation that the real reason Voxer's financial condition

13:06:51  17  suffered is Facebook stepped in and cut it off from the Friends

13:06:54  18  Application Programming Interface, which tubed its business.

13:06:58  19          The next slide will show how this same information,

13:07:03  20  facts, and evidence is relevant to the issue of willful

13:07:06  21  infringement.  This excerpt is from Voxer's opposition to the

13:07:11  22  motion for summary judgment on willfulness which, as Your Honor

13:07:14  23  knows, the defendants withdrew.  They withdrew it because they

13:07:18  24  knew there was a triable issue of fact based on the exact

13:07:22  25  evidence they now seek to exclude.  We argued in that

13:07:26   1   opposition Facebook determined that Voxer app was a competing

13:07:29   2   social network and restricted the Voxer app's access to

13:07:32   3   Facebook Friends API.  That's bad-faith conduct and shows an

13:07:37   4   intent to harm Voxer.

13:07:38   5          We know from Ms. Lawton's expert report, if we can go

13:07:43   6   to the second cite.  I think it's page 6 -- no.  It is

13:07:50   7   page 615.  This isn't in the slide deck, Your Honor, but here's

13:07:56   8   another opinion from Ms. Lawton:  Quote, Voxer and Facebook are

13:08:00   9   not competitors, end quote.

13:08:01  10          She intends to argue to the jury that they're not

13:08:05  11   competitors, whereas the documents that we seek to use and

13:08:08  12   profile in the opening say the exact opposite.  They say that

13:08:11  13   Mark Zuckerberg and his senior executives discussed ad nauseam

13:08:17  14   Voxer's business and came to the exact opposite conclusion.

13:08:20  15   They said they are competitive and we must harm their business.

13:08:23  16   Otherwise, it's a problem for us going forward.

13:08:25  17          That information is necessary to explain the entire

13:08:28  18   commercial relationship between Voxer and Facebook that will

13:08:32  19   inform the *Georgia-Pacific* Factor analysis that goes into the

13:08:36  20   hypothetical negotiation.

13:08:37  21          Thank you, Your Honor.

13:08:42  22          MR. VAN NEST:  Good afternoon, Your Honor.

13:08:44  23   Bob Van Nest for Meta.

13:08:47  24          Your Honor granted Motion in Limine 3, which was

13:08:50  25   directed to keeping out evidence of Facebook's decision in 2013

13:08:56  1   to prevent Voxer from using the Friends API platform.  And
13:09:00  2   there's a good reason for that.
13:09:02  3          This evidence is essentially an unpled antitrust
13:09:06  4   claim lobbed into the middle of a patent case.  It has nothing
13:09:10  5   to do with patent infringement.  It happened in 2013, five
13:09:14  6   years before the patents issued.  It doesn't have anything to
13:09:18  7   do with the patents.  They hadn't even been applied for.  It
13:09:22  8   involves a different Facebook product than the accused product,
13:09:25  9   which is Facebook Live.  It involves Voxer's walkie-talkie app,
13:09:31 10   which is a voice app, not video.
13:09:35 11          And in a patent case, the but-for world we look to is
13:09:39 12   a world in which there was no patent infringement.  This has
13:09:42 13   nothing do with that.  And, as we said in our motion,
13:09:45 14   Your Honor, it's highly prejudicial.  They do want to tap into
13:09:48 15   whatever feelings people have about social networking companies
13:09:52 16   like Facebook, and they want to present Facebook as a bully
13:09:58 17   that kicked them off.
13:10:00 18          Now, this happened in 2013.  They could have filed a
13:10:03 19   claim then, but they didn't.  They could have filed a claim as
13:10:06 20   part of this case, but they didn't.  This evidence has nothing
13:10:08 21   to do with any issue the jury is going to be hearing.  And
13:10:13 22   that's why I think Your Honor granted the motion in the first
13:10:15 23   place, and that's what should pertain.
13:10:17 24          They want to turn this case into sort of a referendum
13:10:20 25   or the corporate conduct of Facebook, which is going to amount

13:10:24  1   of a real free-for-all.

13:10:26  2          Now, as to these opinions by Ms. Lawton and others,

13:10:29  3   none of those opinions have been expressed yet.  I obviously

13:10:33  4   understand that, if we open the door to something, then

13:10:35  5   Your Honor may revisit this.  But, as the case stands now, it's

13:10:39  6   a patent infringement case where they're alleging infringement

13:10:43  7   of two patents that didn't issue until 2018 and 2019 and in

13:10:48  8   which the conduct of Facebook or the conduct of Voxer back in

13:10:52  9   2013 has absolutely nothing to do with it.

13:10:54  10         So that's the -- that was the basis for the motion.

13:10:59  11  I assume that was the basis for Your Honor's ruling.  But, in

13:11:02  12  any event, it's correct that if we start to allow this type of

13:11:06  13  thing, we're going to have a free-for-all on our hands where

13:11:09  14  we're talking about conduct that just has nothing whatsoever to

13:11:13  15  do with patent infringement or patent damages or willfulness.

13:11:17  16         Willfulness in a patent case, as Your Honor is well

13:11:20  17  aware, depends on knowing about the patents and willfully

13:11:23  18  infringing them.  These patents didn't even issue until five

13:11:27  19  years after 2013 and 2018.  They weren't even applied for until

13:11:32  20  Facebook Live was on the market.  They weren't applied for

13:11:35  21  until four years after these events that counsel is talking

13:11:38  22  about.

13:11:38  23         So, again, we have no problem with them talking about

13:11:43  24  discussions they had with Facebook about selling them their

13:11:48  25  technology.  Okay.  That -- but this -- the idea that they can

| | | |
|---|---|---|
| 13:11:52 | 1 | come in an unpled antitrust claim or breach of contract or |
| 13:11:57 | 2 | whatever they want to call it and turn this case into a |
| 13:12:01 | 3 | free-for-all is just not the way we ought to be going.  We |
| 13:12:04 | 4 | ought to be focusing the jury's attention on the issues as to |
| 13:12:07 | 5 | patent infringement, which are plenty complicated, as |
| 13:12:11 | 6 | Your Honor knows.  We've got two patents, six claims, an |
| 13:12:13 | 7 | invalidity claim, infringement claims, and a willfulness claim. |
| 13:12:17 | 8 | This evidence has nothing to do with any of those and |
| 13:12:21 | 9 | is only going to serve to confuse our jurors, prolong the |
| 13:12:25 | 10 | trial, turn it into a free-for-all.  And for that reason I |
| 13:12:28 | 11 | think Your Honor was right to stick with the ruling that you |
| 13:12:32 | 12 | made on Motion in Limine 3. |
| 13:12:36 | 13 | THE COURT:  Mr. Powell, you can respond briefly. |
| 13:12:39 | 14 | MR. POWELL:  Thank you, Your Honor. |
| 13:12:40 | 15 | I'm not sure what I just heard, but willful |
| 13:12:43 | 16 | infringement absolutely covers the conduct that we're talking |
| 13:12:46 | 17 | about.  There's no underhanded way to assert breach of contract |
| 13:12:51 | 18 | or anticompetition.  That's just pure fallacy, Your Honor. |
| 13:12:55 | 19 | The conduct we're talking about is directed at Voxer, |
| 13:12:59 | 20 | not the world, not the market, not harming consumers.  And, |
| 13:13:03 | 21 | yeah, if they breached a contract called their terms of use to |
| 13:13:07 | 22 | inflict pain on my client, of course that's relevant to |
| 13:13:09 | 23 | willfulness.  It shows an intent and motive to harm.  So I'm |
| 13:13:13 | 24 | not sure what case Mr. Van Nest is litigating, but it ain't the |
| 13:13:17 | 25 | case that's here today. |

13:13:18  1        The hypothetical negotiation, the but-for world,

13:13:21  2  yeah, it's November 2018.  The but-for world starts there.

13:13:25  3  This conduct happened before.  It's leading up to that

13:13:28  4  negotiation.  It's real-world, not but-for world.  And there's

13:13:32  5  no fantastical situation where you can sweep this evidence

13:13:36  6  under the carpet and pretend it didn't exist.

13:13:39  7        They've already allowed in all the communications

13:13:42  8  from 2012.  That discussion continues into 2013, and it ends

13:13:46  9  when Facebook cuts us off from the API.  It would be incredibly

13:13:50  10 unfair not to let the jury hear the culmination of the parties'

13:13:53  11 commercial relationship over a two-year period just because

13:13:56  12 they're worried that their client has a bad reputation in the

13:14:00  13 world.  That's not our problem, that's theirs.  We're trying

13:14:02  14 this case, not the case that he just told you about.

13:14:05  15       THE COURT:  Well, the case the court sees that we're

13:14:07  16 going to try is a patent infringement case.  At least that's

13:14:14  17 what we're going to start out trying, and we'll see how it

13:14:17  18 develops from that point forward.

13:14:20  19       I'm going to deny the motion to bring these things

13:14:23  20 out in opening statements.  Make your opening statements based

13:14:27  21 solely on patent infringement.  We will then see how this

13:14:31  22 progresses.  And if there is an opening of the door or if there

13:14:36  23 is reason that I think that it should come back in, it can come

13:14:41  24 back in later.  But it's not going to come in in opening

13:14:44  25 statements.  I think you can open this case well enough, and

13:14:49  1   we'll go forward from there.

13:14:51  2           MR. POWELL:  Thank you, Your Honor.

13:14:52  3           THE COURT:  So what else do we have before we get the

13:14:56  4   jury up here at two o'clock?  Are we ready to go.

13:15:01  5           MR. STONE:  Nothing from the plaintiff, Your Honor.

13:15:03  6           MR. SILBERT:  Your Honor, David Silbert for Meta.

13:15:05  7   Just one housekeeping issue, which is that we sent the Court a

13:15:09  8   letter on Friday to Ms. Baffes about a proposed confidentiality

13:15:14  9   protocol.  I just wanted to check in with the Court on the

13:15:17 10   status of that.  There will be exhibits admitted, I assume,

13:15:21 11   starting tomorrow.

13:15:21 12           THE COURT:  Well, yes, I have reviewed that.  Are the

13:15:27 13   parties in agreement on that protocol?

13:15:30 14           MR. STONE:  We didn't have an objection to it, Your

13:15:32 15   Honor.  Robert Stone for the plaintiff.

13:15:34 16           THE COURT:  Then we'll proceed with that protocol.

13:15:36 17           MR. SILBERT:  Thank you so much, Your Honor.

13:15:37 18           THE COURT:  Now, the way we'll proceed just -- and

13:15:40 19   I'll give you some time to set up because it's going to affect

13:15:44 20   people in the audience -- is the way I select a jury is

13:15:48 21   probably a whole lot closer to what you've seen in state court.

13:15:51 22   I don't bring people up to the bench and do that kind of thing.

13:15:55 23           They'll be in the pews.  I will run through my

13:15:58 24   questions, which you'll find are going to be cumulative of some

13:16:03 25   of yours and are going to be cumulative of some of the

13:16:11  1   questionnaires.  But I think we need to reinforce some things.

13:16:13  2   When I get through with my questions, then the plaintiff gets

13:16:19  3   their 30 minutes of voir dire I've allotted and then the

13:16:22  4   defendant does.  You can spend your time just about any way you

13:16:27  5   want to except in argument.  This is voir dire.  It's not

13:16:32  6   argument.  You can ask your pet questions that I haven't had an

13:16:35  7   objection to, and I don't have an objection to any of what you

13:16:38  8   submitted.  So don't read into it that I may have had an

13:16:43  9   objection if I don't ask your question.

13:16:45  10          You can ask additional questions off of the

13:16:48  11  questionnaires or to follow up anything that any of the jurors

13:16:53  12  have -- potential jurors have indicated.  Or you can just stand

13:17:00  13  there and look nice and tell them how pretty you are and what a

13:17:03  14  great lawyer you are and you're going to win your case without

13:17:05  15  arguing that.

13:17:06  16          Now, one of the things, if I didn't make it clear

13:17:09  17  when we talked about jury selection before, I'm going to be

13:17:13  18  keeping notes up here of responses that jurors make that I

13:17:20  19  think might be problematic as to whether somebody might be a

13:17:24  20  good juror or a bad juror or whether they really want to serve

13:17:28  21  on this jury or whether they might be distracted.  And that

13:17:40  22  means issues that are not grounds for legally excluding a

13:17:46  23  juror.

13:17:46  24          Before you make your challenges for cause and after

13:17:54  25  the jury panel is out of the room, I'm going to go though my

13:17:57   1   list; I urge you to be keeping your own lists.  And I'll get to

13:17:59   2   a juror and I'll say, I've got a problem with what this juror

13:18:04   3   said.  I'll go to the plaintiff first.  If the plaintiff is

13:18:08   4   willing to strike the juror, then I'll go to the defendant.

13:18:11   5   We're not going to argue this, but if you both agree that there

13:18:18   6   is a juror you don't want, we'll take them off and they will

13:18:20   7   not appear in your strike lists.

13:18:23   8          I do that because I found when I was on your side of

13:18:26   9   the bench for many years that, if somebody really didn't want

13:18:32   10  to be on a jury, they did not make a good juror.  And they

13:18:35   11  always blamed it on somebody, and I was always afraid I was

13:18:39   12  going to be the one they blamed it on that they ended up on the

13:18:42   13  jury.  But this is not going to be argued.  If the plaintiff

13:18:44   14  says, no, we want the juror retained, then I don't ever get to

13:18:47   15  the defendant and vice versa.  But that way, if you both agree

13:18:50   16  there's a problem juror out there, since you're only getting

13:18:52   17  three strikes, we'll take that up.

13:18:58   18         Now, we're not going to tell the jurors that we're

13:19:00   19  doing because that would start a land rush and we're not going

13:19:03   20  to do that.  But after we get through that, then I will take up

13:19:05   21  your challenges for cause, and then we'll recess for you to

13:19:07   22  strike your lists.  And then we'll get the jurors back in here

13:19:11   23  and we will seat the eight that are actually going to try your

13:19:18   24  case.

13:19:19   25         I do not -- we're not going to go to opening

| | | |
|---|---|---|
| 13:19:21 | 1 | statements this evening.  We're going to get the jury selected |
| 13:19:25 | 2 | this evening, and then we'll come back in the morning, you'll |
| 13:19:27 | 3 | make your opening statements, and call your first witness. |
| 13:19:31 | 4 | Anything else between now and two o'clock we need to |
| 13:19:34 | 5 | take up, or are we ready for the jury? |
| 13:19:38 | 6 | MR. STONE:  Not for the plaintiff. |
| 13:19:40 | 7 | MR. VAN NEST:  I think we're ready, Your Honor. |
| 13:19:41 | 8 | Thank you. |
| 13:19:41 | 9 | THE COURT:  Ms. Oakes, you may let Ms. Demings know |
| 13:19:44 | 10 | that she can go ahead and bring the jurors up an seat them to |
| 13:19:52 | 11 | where they're seated by two o'clock or in that range.  When |
| 13:19:55 | 12 | they're through with their orientation, let me know when |
| 13:19:58 | 13 | they're ready for us to proceed with voir dire. |
| 13:20:00 | 14 | MR. VAN NEST:  Your Honor, could I ask one quick |
| 13:20:02 | 15 | question.  And I apologize because I think you told us this |
| 13:20:05 | 16 | last time.  But are they seeing the patent video now? |
| 13:20:07 | 17 | THE COURT:  Yes. |
| 13:20:08 | 18 | MR. VAN NEST:  So they're seeing it now, and they'll |
| 13:20:09 | 19 | have seen it -- they won't see it again tomorrow. |
| 13:20:12 | 20 | THE COURT:  No.  They won't see it again tomorrow. |
| 13:20:15 | 21 | MR. VAN NEST:  Thank you.  That's what I thought. |
| 13:20:16 | 22 | THE COURT:  I was just at the Federal Circuit |
| 13:20:18 | 23 | Judicial Conference, and we had judges meeting.  It's always |
| 13:20:19 | 24 | interesting to see how people around the country do things. |
| 13:20:22 | 25 | Some judges view the video with the jurors and ask -- |

| | | |
|---|---|---|
| 13:20:27 | 1 | and answer any questions that they may have.  Those judges I |
| 13:20:30 | 2 | suspect come from jurisdictions that have a lot more free time |
| 13:20:35 | 3 | on their hands than I do. |
| 13:20:37 | 4 | But, no, the jurors will have seen the video before |
| 13:20:40 | 5 | they're up here, before the voir dire starts, and they won't |
| 13:20:42 | 6 | see it again. |
| 13:20:43 | 7 | MR. VAN NEST:  Great.  Thank you, Your Honor. |
| 13:20:44 | 8 | MR. STONE:  Thank you, Your Honor. |
| 13:20:45 | 9 | THE COURT:  All right.  Thank you. |
| 14:13:41 | 10 | We're in recess for a few minutes. |
| 14:13:41 | 11 | (Open court, prospective jurors present) |
| 14:50:44 | 12 | THE COURT:  The jurors are out in the hall ready to |
| 14:50:46 | 13 | be seated.  Let me ask a question, because I generally at the |
| 14:51:00 | 14 | appropriate point in the voir dire ask the lawyers, one from |
| 14:51:02 | 15 | each side, to identify themselves for the plaintiff.  Who |
| 14:51:05 | 16 | should I call on to introduce yourself and the people at your |
| 14:51:08 | 17 | counsel table and the witnesses you expect to call? |
| 14:04:09 | 18 | MR. THOMPSON:  Blake Thompson for the plaintiff, |
| 14:04:11 | 19 | Your Honor. |
| 14:04:12 | 20 | THE COURT:  And for the defendant? |
| 14:04:13 | 21 | MR. JONES:  Your Honor, Mike Jones. |
| 14:04:15 | 22 | THE COURT:  All right.  We've got it. |
| 14:04:17 | 23 | MR. JONES:  Thank you, sir. |
| 14:04:18 | 24 | THE COURT:  Are we ready to go. |
| 14:04:21 | 25 | MR. THOMPSON:  We're ready. |

14:04:21   1                THE COURT:  All right.  Let's bring the jurors -- the
14:04:23   2   potential jurors in and seat them, then.  And they are going to
14:04:25   3   be on my right; is that correct?  All right.
14:04:28   4        (Open court, prospective jurors present)
14:06:39   5                THE COURT:  All right.  You may be seated.
14:06:45   6                Good afternoon, ladies and gentlemen.  I'd like to
14:06:49   7   welcome all members of the jury panel to the United States
14:06:52   8   District Court here in Austin.  My name is Lee Yeakel, and I am
14:06:56   9   one of two district judges for the Austin Division of the
14:07:00  10   Western District of Texas.
14:07:02  11                As Ms. Demings, the Division Deputy Clerk, explained
14:07:05  12   to you, the Western District of Texas consists of seven
14:07:09  13   divisions:  Austin, Waco, San Antonio, El Paso, Del Rio, Pecos,
14:07:17  14   and Midland-Odessa.  The federal court here in Austin considers
14:07:22  15   appropriate federal actions brought in Bastrop, Blanco,
14:07:26  16   Burleson, Burnet, Caldwell, Gillespie, Hays, Kimble, Lampasas,
14:07:31  17   Lee, Llano, Mason, McCulloch, San Saba, Travis, Washington, and
14:07:37  18   Williamson Counties.
14:07:39  19                The area covered by the Austin Division is quite
14:07:42  20   large, and that is the reason that some of you were required to
14:07:46  21   travel a substantial distance to participate in these court
14:07:50  22   proceedings.  The court recognizes the sacrifices that many of
14:07:55  23   you are making to perform this jury service, and I greatly
14:07:58  24   appreciate your efforts.
14:08:00  25                Now, you've been summoned to try a civil case.  When

14:08:06  1  parties to a federal lawsuit like this one desire and qualify

14:08:08  2  for a resolution of their case by a jury, federal law entitles

14:08:13  3  them to receive the benefit of an impartial jury of their

14:08:16  4  peers.  To obtain such a jury, persons are called from

14:08:21  5  throughout the area which comprises that particular division of

14:08:25  6  the district, in this case, from the 17 counties that make up

14:08:28  7  the Austin Division.

14:08:31  8       Persons are selected at random to assure that they

14:08:35  9  represent a cross-section of people.  It was this random

14:08:40  10  selection process that resulted in your being here today.  In

14:08:43  11  fact, you were randomly selected by a computer.  So if you're

14:08:47  12  in the group of people that believes a computer has never done

14:08:51  13  you a favor, I'm sure that has been reinforced by your name

14:08:55  14  popping out of the computer and getting you down here today.

14:08:59  15  But, again, your participation in the jury process, which is

14:09:02  16  vital to our nation's judicial system, is especially

14:09:08  17  appreciated by the court and the parties involved in this

14:09:10  18  litigation.

14:09:12  19       Now, let me share with you a little bit about the

14:09:15  20  jury system and its importance to our society and why it is

14:09:18  21  important to this court and these parties and you.

14:09:22  22       Calling citizens to hear disputes has been known

14:09:26  23  throughout history.  The jury system is mentioned as far back

14:09:30  24  as the Pentateuch, the first five books of the Hebrew Bible.

14:09:34  25  The Jewish people would impanel juries to decide questions of

14:09:37  1  property value and property ownership, and there is some

14:09:43  2  thought that, traditionally, the reason we have twelve jurors

14:09:46  3  in our typical jury is a reflection of the twelve Tribes of

14:09:50  4  Israel and the Twelve Apostles.  Although, as time has moved

14:09:53  5  on, we have adjusted that a little bit, and we're only going to

14:09:57  6  select eight of you for jury service today.

14:10:00  7       Modern-day juries have historic roots in Byzantine,

14:10:04  8  Greek, Roman, and European systems.  The Greeks began using the

14:10:09  9  jury system in about 1500 BC.  Greek juries were sometimes

14:10:14  10 huge.  501 jurors decided the fate of Socrates.  And you think

14:10:22  11 you've had some parking problems here today when we only

14:10:25  12 summoned about 23 of you to be on this panel.

14:10:27  13      The Romans adopted the jury system from the Greeks.

14:10:32  14 The Romans are responsible for bringing the jury system to

14:10:36  15 England in about the fourth century.  The English experience

14:10:39  16 has been a leading influence in shaping the modern American

14:10:43  17 jury system.

14:10:45  18      Following its advance by the Romans, England had a

14:10:49  19 rough system of juries in the late ninth century under Alfred.

14:10:53  20 The Normans, following their arrival in the 11th century,

14:10:57  21 established the foundations of the modern jury system.

14:11:01  22      In 1215 a tyrannical English king, King John,

14:11:07  23 attempted to do away with the right to trial by jury which had

14:11:10  24 been part of the English judicial system for over 700 years.

14:11:14  25 The English people would not stand for the deprivation of this

14:11:18  1  right, among others that they cherished, so in a misty meadow

14:11:22  2  called Runnymede, King John was forced to sign the Magna Carta,

14:11:27  3  which guaranteed to the English people the right to jury trials

14:11:29  4  and other rights as well.  Twenty-eight states have adopted the

14:11:34  5  language of the Magna Carta verbatim and placed it in their

14:11:39  6  state constitutions in ensuring the right to a trial by jury in

14:11:43  7  state court.

14:11:44  8        The concept of jury trials was so deeply ingrained in

14:11:48  9  the American colonists in the settling of America, that when

14:11:51  10 another tyrannical English king, King George, III, attempted to

14:11:56  11 deny the right to jury trials to the colonists,

14:11:59  12 Thomas Jefferson, for the Second Continental Congress, in

14:12:04  13 penning the complaints against the Crown, set out the denial of

14:12:08  14 the right to jury trial as one of the specific bases for

14:12:11  15 separation from England.  The War of Independence followed,

14:12:16  16 people fought and died to secure our rights and independence,

14:12:20  17 and today the United States Constitution guarantees the right

14:12:23  18 to jury trials.

14:12:25  19        Now, democracy makes very few demands of its

14:12:29  20 citizens.  We're required to pay taxes and render service in

14:12:33  21 time of war.  Some have said that jury service is akin to

14:12:37  22 service for your country in time of war in importance, and I

14:12:41  23 have no quarrel with that statement.

14:12:43  24        To the average citizen there are, in my opinion, but

14:12:47  25 two things you must do to preserve democracy:  And that's to

respond for jury service and to vote. And your presence here today satisfies one of those, and you'll have the opportunity in November for the other.

Now, we're about to select a jury for a case styled *Voxer, Incorporated and Voxer IP, LLC, versus Meta Platforms, Incorporated, formally known as Facebook, Inc., and Instagram, LLC*. It is Cause Number 1:20-CV-655-LY on the docket of my court.

We call what we're doing now voir dire, which derives its name from the French *vua-deer*, and many people pronounce it *vua-deer*. But in Texas we just say *vor-dire*. It seems to roll off the tongue better and go better with BBQ than *vua-deer*. So we're not in Paris today, so we're going to pronounce it the Texas way.

Now, I will ask you a number of questions, and it's imperative that you listen carefully to the questions I'm about to ask because you may be selected to serve on the jury in this case.

After I have finished asking questions, the attorneys for each side will have an opportunity to ask questions, and then the attorneys will exercise strikes that they are allotted to exclude certain members of the panel so that we end up with eight jurors, as I've mentioned, who will ultimately remain and hear the evidence in this case.

The process of voir dire requires the court and the

14:14:28   1   attorneys for each party to ask potential jurors about their

14:14:35   2   backgrounds, knowledge, biases, and prejudices.  In the process

14:14:39   3   of doing this, these questions may at times feel intrusive to

14:14:42   4   you.  Please understand that it is certainly not the court or

14:14:45   5   the parties' intention to intrude on your personal business.

14:14:50   6   However, to ensure that the jury selected for this case has no

14:14:54   7   knowledge of the facts or the parties to the case and holds no

14:14:58   8   biases or prejudices, it is necessary to ask these questions.

14:15:03   9        If at any time you would like to provide your answer

14:15:06   10  to any question privately, please simply indicate that you

14:15:10   11  would like to do so, I will have you approach the bench, and

14:15:14   12  you can then answer the question with only the court and

14:15:18   13  attorneys present.

14:15:19   14       When you answer a question, I would appreciate it if

14:15:23   15  you would state your name and your seat number.  That is the

14:15:27   16  seat number you're in at this moment in the courtroom.  And

14:15:31   17  please use the microphone that will be provided to you by

14:15:34   18  Ms. Baffes so that the court reporter's record will be able to

14:15:38   19  reflect who is answering.

14:15:40   20       Now, Mr. Blake Thompson, would you please stand.

14:15:45   21       The person standing is Mr. Blake Thompson of the law

14:15:49   22  firm of Mann, Tindel & Thompson, and he represents the

14:15:53   23  plaintiffs in this case, Voxer Inc. and Voxer IP, LLC.

14:15:59   24       Mr. Thompson would you please introduce the

14:16:03   25  representatives, cocounsel, local counsel, legal assistants or

| | | |
|---|---|---|
| 14:16:07 | 1 | others who are now or who will be seated at your counsel table |
| 14:16:12 | 2 | during this trial. |
| 14:16:15 | 3 | MR. THOMPSON:  Yes, Your Honor.  Again, my name is |
| 14:16:17 | 4 | Blake Thompson, and members of my team are Sam Stake, |
| 14:16:20 | 5 | Mike Powell, Robert Stone, my client, Thomas Katis, and |
| 14:16:27 | 6 | Johanna Hillard. |
| 14:16:27 | 7 | THE COURT:  Mr. Thompson, would you please read to |
| 14:16:29 | 8 | the members of the panel the list of all witnesses that |
| 14:16:32 | 9 | Voxer -- that the Voxer parties expect to call in this case. |
| 14:16:37 | 10 | MR. THOMPSON:  Yes, Your Honor.  We'll be calling, |
| 14:16:38 | 11 | again, our client Thomas Katis.  We'll also be calling |
| 14:16:42 | 12 | Matthew Ranney, Michael Mitzenmacher, Benjamin Davenport, |
| 14:16:47 | 13 | Christopher Daniels, Peter Deng, and Alan Ratliff. |
| 14:16:51 | 14 | THE COURT:  Members of the jury panel, do any of you |
| 14:16:54 | 15 | recognize, or are any of you or any member of your family |
| 14:16:58 | 16 | familiar with, to your knowledge, personally acquainted with, |
| 14:17:02 | 17 | related to, had any business dealings with, or ever been |
| 14:17:06 | 18 | employed by Voxer Incorporated, Voxer IP, LLC, or their lawyers |
| 14:17:12 | 19 | or legal assistants who have been introduced, or any of the |
| 14:17:16 | 20 | persons whose names Mr. Thompson has just listed for you? |
| 14:17:20 | 21 | If so, please raise your hand. |
| 16:19:02 | 22 | (No response) |
| 14:17:25 | 23 | THE COURT:  Thank you.  Mr. Jones, would you please |
| 14:17:28 | 24 | stand. |
| 14:17:30 | 25 | MR. JONES:  Yes, sir. |

```
14:17:31   1              THE COURT:  The person standing is Mr. Mike Jones
14:17:34   2   from Potter Minton PC, and he represents the defendants in this
14:17:38   3   case, Meta Platforms, Incorporated, formally known as Facebook,
14:17:43   4   incorporated, and Instagram, LLC.
14:17:46   5              Mr. Jones, would you introduce the representatives
14:17:49   6   cocounsel, local counsel, legal assistants, or others who are
14:17:54   7   or will be seated at the counsel table with you.
14:17:57   8              MR. JONES:  Thank you, Your Honor.  Yes, sir.
14:18:00   9              Seated at counsel table is our lead counsel, Robert
14:18:04  10   Van Nest.  Beside him is David Silbert.  This is Mr. Paven
14:18:15  11   Malhotra.  Seated next to Mr. Malhotra is Puja Parikh.  Seated
14:18:21  12   next to her is Christa Anderson.  Seated next to her is
14:18:26  13   Gene Paige.  My client is John Poffenberger from Facebook.
14:18:34  14              Thank you, Your Honor.
14:18:35  15              THE COURT:  Mr. Jones, would you please read to the
14:18:37  16   members of the jury panel the list of all witnesses that the
14:18:40  17   defendants expect to call in this case.
14:18:43  18              MR. JONES:  Yes, sir.
14:18:47  19              Dave Capra, Jeremiah Chan, Federico Larumbe,
14:18:52  20   Ken Leland, Victor Loh, Abhischek Mathur, John Poffenberger,
14:19:03  21   Jacob Stinson, Cathy Lawton, Samrat Bhattacharjee, and
14:19:10  22   Kevin Jeffay, Your Honor.
14:19:12  23              THE COURT:  Members of the jury panel, do any of you
14:19:15  24   recognize, or are any of you or any member of your family known
14:19:19  25   to you, familiar with, personally acquainted with, related to,
```

14:19:25  1    or had any business dealings with or ever been employed by the

14:19:29  2    defendants or defendant's lawyers or legal assistants who were

14:19:33  3    introduced or any of the persons whose name Mr. Jones has just

14:19:36  4    listed for you?

14:19:37  5          If so, please raise your hand.

16:21:47  6       (No response)

14:19:40  7          THE COURT:  Thank you.  You may be seated.

14:19:43  8          MR. JONES:  Thank you, sir.

14:19:45  9          THE COURT:  Ladies and gentlemen of the jury panel,

14:19:47  10   to the best of your knowledge, have any of the attorneys in

14:19:50  11   this case or members of their law firms acted as your attorney

14:19:55  12   or the attorney for any member of your immediate family or

14:19:58  13   close friends that you know about?

16:22:10  14      (No response)

14:20:03  15         THE COURT:  Do any of you recognize any other member

14:20:07  16   of the panel as being a close, personal friend, acquaintance,

14:20:11  17   or business associate?  Now you laugh because I've just told

14:20:15  18   you a computer selected all of you, but I asked that question

14:20:18  19   one time and we had two people that had played golf in the same

14:20:23  20   foursome for the last 20 years once or twice a week.

14:20:26  21         So do any of you know any of the others of you on the

14:20:29  22   jury panel?  If so, please raise your hand.

16:22:43  23      (No response)

14:20:32  24         THE COURT:  Do any of you know or do you know anyone

14:20:41  25   that you know of that has interest in the outcome of this case?

14:20:46  1      (No response)

14:20:47  2          THE COURT:  The attorneys, in consultation with me

14:20:50  3  and in several discussions about this, have estimated that this

14:20:55  4  case will take approximately six to seven trial days, which

14:21:00  5  means we will move into next week and probably should finish

14:21:05  6  this case up by the middle of the week.

14:21:08  7          Is there anyone who would suffer any undue hardship

14:21:12  8  or have any special problem serving on a jury for that length

14:21:16  9  of time?  I know it is a hardship and a problem for all of you,

14:21:20  10  and your service is appreciated, but is there anyone that would

14:21:24  11  suffer any undue hardship or problems?

14:21:31  12      (No response)

14:21:31  13          THE COURT:  Thank you.  Do any of you have any

14:21:32  14  illness in your family or any business problem or similar

14:21:36  15  personal concern which would make it difficult for you if you

14:21:40  16  were on this jury to be attentive to the evidence that's

14:21:44  17  presented?

14:21:44  18          If so, please raise your hand.

14:21:46  19      (No response)

14:21:46  20          THE COURT:  Do any of you have any problem with your

14:21:51  21  eyesight or your hearing or any other physical disability which

14:21:55  22  in any manner would prevent you from either seeing or hearing

14:21:59  23  the evidence presented at trial, knowing that the eight of you

14:22:04  24  who are selected will be sitting over here in the jury box to

14:22:07  25  my right, which is against the wall, and the witness will be

14:22:11  1    sitting in this stand here to my right.  And we have pretty

14:22:16  2    good microphone systems and electronic systems in here when

14:22:21  3    they work.  But know if there's a problem during this trial,

14:22:25  4    everything you're looking at went to the lowest bidder.  That's

14:22:29  5    what the government gave us here.

14:22:31  6         But is there anyone -- usually it's the court that's

14:22:33  7    accused of having the bad eyesight or hearing, but is there any

14:22:36  8    of you-all that might have a problem?

16:24:53  9         (No response)

14:22:39  10        THE COURT:  Seeing none, thank you.

14:22:42  11        Now, Voxer asserts that the defendant's Facebook Live

14:22:47  12   and Instagram Live services and features infringe on two

14:22:54  13   patents that were issued to Voxer.  Now, this is the assertion

14:22:59  14   by the plaintiff.  I'm not telling you this is what happened.

14:23:02  15   This is what the claims are.  You will make the decision as to

14:23:06  16   what's happened.

14:23:07  17        But Voxer asserts that Meta and Instagram directly

14:23:12  18   infringed Voxer's patents and directly infringed by inducing or

14:23:16  19   contributing to end users' infringements.  That's what they

14:23:22  20   claim.

14:23:22  21        They additionally contain that Meta's, which was

14:23:26  22   formally known as Facebook, infringement is willful because

14:23:29  23   Facebook knew of Voxer's patents, knew that the Facebook Live

14:23:34  24   and Instagram Live services and features infringed, but they

14:23:38  25   deliberately chose to continue in their course of using the

14:23:42  1  infringing services and features and inducing or contributing

14:23:47  2  to end users' infringement.

14:23:49  3       Because of this, Voxer seeks damages for no less than

14:23:53  4  a reasonable royalty for the defendant's alleged infringements,

14:23:58  5  together with interest and costs.

14:24:01  6       Now, the defendants on the other hand, Facebook and

14:24:09  7  Instagram, deny Voxer's allegations of patent infringement.

14:24:13  8  And, first, Facebook contends that its Facebook Live and

14:24:17  9  Instagram Live products do not infringe Voxer's patents.

14:24:22  10  Facebook contends that it independently developed its Facebook

14:24:26  11  Live and Instagram video products without using any of Voxer's

14:24:31  12  claimed inventions.

14:24:32  13       So, again, like what I told you about Voxer, I'm not

14:24:35  14  telling you that any of this is true.  That will be your

14:24:38  15  decision.  This is what the defendant's allegations and

14:24:42  16  positions are.

14:24:43  17       Accordingly, Facebook contends that Voxer will fail

14:24:47  18  in meeting its burden of proof to prove that Facebook practiced

14:24:51  19  every aspect of Voxer's patented technology.  And, second,

14:24:55  20  Facebook contends that some of the patents Voxer asserts in

14:25:00  21  this case are invalid.

14:25:02  22       Now, patent law requires a patent to be found invalid

14:25:07  23  if the claimed invention had already been invented by others or

14:25:11  24  would have been obvious to people in the field.  Facebook

14:25:15  25  contends that some of Voxer's patents are invalid because

14:25:18  1    someone else developed the claimed inventions before Voxer did.

14:25:22  2    And, finally, Facebook contends that, even if infringement of a

14:25:27  3    valid patent is found, the damages Voxer requests are

14:25:31  4    unreasonable.

14:25:32  5          So that, in a nutshell, is the claims of the parties.

14:25:37  6    This will play itself out in more detail for the eight of you

14:25:40  7    that are selected to serve on this jury.  And later in this

14:25:46  8    proceeding the lawyers will give their opening statements,

14:25:48  9    which will be more detailed renditions of their understanding

14:25:53  10   of the facts and their allegations in this case.

14:25:56  11         But based on the sort summary that I have just

14:25:58  12   provided you, I want to ask you a few questions concerning any

14:26:02  13   knowledge you might have about this case.

14:26:05  14         Have any of you read anything about this case in the

14:26:10  15   newspapers, or have you heard anything about it on the radio or

14:26:13  16   in conversations with others or seen anything on television

14:26:17  17   about it, or have you learned, heard, read, or seen anything

14:26:21  18   about it from any source whatsoever, other than in this

14:26:26  19   courtroom or in connection with your initial qualification or

14:26:30  20   orientation for jury service by Ms. Demings or any other court

14:26:35  21   personnel?

14:26:35  22         If you've heard anything about it other than in that

14:26:39  23   context, please raise your hand.

14:26:49  24         You've got to stick your hand way up so I can see

14:26:51  25   you.

14:26:52    1                Yes.  Would you please state your name and seat

14:26:55    2    number.

14:26:55    3                JUROR KALISH:  Howard Kalish, Number 21.

14:26:59    4                THE COURT:  All right.  I do not want you to tell me

14:27:01    5    at this time what you may have read or heard about this case.

14:27:04    6    Rather, I want to ask you a few specific questions about the

14:27:10    7    matter.

14:27:10    8                First, what is your source of information: newspaper,

14:27:12    9    radio, television, or conversations with others?

14:27:15   10                JUROR KALISH:  It's an online newspaper magazine.

14:27:19   11                THE COURT:  All right.  And how many separate

14:27:22   12    articles did you see or read?

14:27:23   13                JUROR KALISH:  Just one.

14:27:25   14                THE COURT:  And when about was that?

14:27:27   15                JUROR KALISH:  Oh, maybe six or eight months ago.

14:27:33   16                THE COURT:  All right.  Did you read the article all

14:27:35   17    the way through, or did you just read a paragraph or two and

14:27:39   18    scan the remainder?

14:27:40   19                JUROR KALISH:  I just scanned it.

14:27:42   20                THE COURT:  All right.  Do you now remember any

14:27:44   21    specific fact or circumstances covered in the article which you

14:27:48   22    may not have -- which you may not have already heard here in

14:27:52   23    court?  But don't specify that fact or circumstance to me, just

14:27:56   24    do you remember anything specific about it?

14:27:59   25                JUROR KALISH:  Yes.

14:27:59  1            THE COURT:  All right.  In any event, regardless of

14:28:10  2   what it is that you've heard, have you formed an opinion

14:28:12  3   concerning any of the issues to be tried in this case?

14:28:16  4            JUROR KALISH:  No.

14:28:18  5            THE COURT:  If selected as a juror in this case,

14:28:24  6   would you be able to disregard what you've heard in its

14:28:29  7   entirety, put it out of your mind, anything at all you may have

14:28:34  8   read in that article, and decide the case based solely on the

14:28:37  9   evidence presented here in the courtroom and during the trial

14:28:43  10  and follow the law as I give it to you?

14:28:45  11           JUROR KALISH:  Yes.

14:28:46  12           THE COURT:  All right.  Give me your seat number one

14:28:48  13  more time.

14:28:48  14           JUROR KALISH:  Twenty-one.

14:28:50  15           THE COURT:  All right.  Thank you.  You may be

14:28:58  16  seated.

14:28:58  17           Anyone else?

14:28:59  18      (No response)

14:28:59  19           THE COURT:  Now, let me ask you this:  Is there

14:29:17  20  anyone on the jury panel -- this to some extent goes over what

14:29:22  21  you may have gotten in your jury questionnaire that was sent

14:29:25  22  out, but it's information that I want to know here.  Is there

14:29:31  23  anyone on this panel that's ever served on a grand jury in the

14:29:34  24  past.

18:00:00  25      (No response)

| | | |
|--|--|--|
|14:29:36|1|THE COURT:  Is there anyone here on the panel who has|
|14:29:39|2|ever served on a jury like this, what we call a regular jury or|
|14:29:44|3|a petit jury?  If so, please raise your hand.|
|14:29:56|4|JUROR RUDOLPHI:  Christine Rudolphi, Seat Number 6.|
|14:30:02|5|THE COURT:  What was your seat number again?|
|14:30:04|6|JUROR RUDOLPHI:  Six.|
|14:30:05|7|THE COURT:  All right.  Was your prior jury service|
|14:30:08|8|on a state or federal jury?|
|14:30:10|9|JUROR RUDOLPHI:  State.|
|14:30:11|10|THE COURT:  And how many times have you served on a|
|14:30:13|11|jury?|
|14:30:14|12|JUROR RUDOLPHI:  Twice.|
|14:30:17|13|THE COURT:  And when did you serve on a jury each|
|14:30:20|14|time?  Approximately how long ago?|
|14:30:23|15|JUROR RUDOLPHI:  One in 2015 and one in 2017.|
|14:30:27|16|THE COURT:  All right.  Were the cases civil or|
|14:30:29|17|criminal or one of each?|
|14:30:30|18|JUROR RUDOLPHI:  One of each.|
|14:30:31|19|THE COURT:  Were you the foreman of either one of|
|14:30:33|20|those jurors?|
|14:30:34|21|JUROR RUDOLPHI:  No, sir.|
|14:30:35|22|THE COURT:  Without telling me the outcome in each|
|14:30:38|23|case, did the jury deliberate and arrive at a verdict?|
|14:30:41|24|JUROR RUDOLPHI:  It did.|
|14:30:42|25|THE COURT:  Is there anything about that prior jury|

| 14:30:45 | 1 | experience that would prevent you from being a fair and |
| 14:30:48 | 2 | impartial juror if chosen in this case? |
| 14:30:51 | 3 | JUROR RUDOLPHI:  No, sir. |
| 14:30:51 | 4 | THE COURT:  Thank you. |
| 14:30:52 | 5 | Who else? |
| 14:30:58 | 6 | JUROR CHAMPLIN:  Jacob Champlin, 17. |
| 14:31:05 | 7 | THE COURT:  All right.  And was your prior jury |
| 14:31:07 | 8 | experience in state or federal court? |
| 14:31:09 | 9 | JUROR CHAMPLIN:  State. |
| 14:31:09 | 10 | THE COURT:  And how many times have you served on a |
| 14:31:11 | 11 | jury? |
| 14:31:12 | 12 | JUROR CHAMPLIN:  Once. |
| 14:31:13 | 13 | THE COURT:  And how long ago was it? |
| 14:31:14 | 14 | JUROR CHAMPLIN:  Ten years. |
| 14:31:16 | 15 | THE COURT:  Was the case civil or criminal? |
| 14:31:18 | 16 | JUROR CHAMPLIN:  Criminal. |
| 14:31:18 | 17 | THE COURT:  Were you the foreman of the jury? |
| 14:31:20 | 18 | JUROR CHAMPLIN:  No. |
| 14:31:21 | 19 | THE COURT:  And without, again, disclosing the |
| 14:31:24 | 20 | outcome, did the jury deliberate and arrive at a verdict? |
| 14:31:27 | 21 | JUROR CHAMPLIN:  Yes. |
| 14:31:28 | 22 | THE COURT:  Is there anything in that prior jury |
| 14:31:31 | 23 | experience that would prevent you from being fair and impartial |
| 14:31:34 | 24 | if you were selected as a member of this jury? |
| 14:31:36 | 25 | JUROR CHAMPLIN:  No. |

| 14:31:37 | 1 | THE COURT:  Thank you. |
| 14:31:37 | 2 | Anyone else?  All right.  This next question. |
| 14:31:47 | 3 | JUROR WELCH:  My name Roxann Welch.  I'm Number 2. |
| 14:31:55 | 4 | THE COURT:  And Ms. Welch, was your prior service in |
| 14:32:01 | 5 | a federal court or a state court? |
| 14:32:02 | 6 | JUROR WELCH:  I thought it was a county court.  Is |
| 14:32:04 | 7 | that a thing or not?  I've been on two juries here in Austin, |
| 14:32:10 | 8 | and they were both criminal cases. |
| 14:32:12 | 9 | THE COURT:  It would have been state, I'm pretty |
| 14:32:14 | 10 | sure. |
| 14:32:14 | 11 | JUROR WELCH:  Okay. |
| 14:32:14 | 12 | THE COURT:  How many times have you served on a jury? |
| 14:32:17 | 13 | JUROR WELCH:  Twice. |
| 14:32:18 | 14 | THE COURT:  And how long ago was that? |
| 14:32:20 | 15 | JUROR WELCH:  About 7 years and 14 years. |
| 14:32:22 | 16 | THE COURT:  And were the cases civil, criminal, or |
| 14:32:24 | 17 | one of each? |
| 14:32:25 | 18 | JUROR WELCH:  Criminal. |
| 14:32:27 | 19 | THE COURT:  All right.  Were you the foreman of |
| 14:32:29 | 20 | either jury? |
| 14:32:30 | 21 | JUROR WELCH:  No. |
| 14:32:30 | 22 | THE COURT:  Without telling me the outcome, did the |
| 14:32:33 | 23 | jury deliberate and arrive at a verdict? |
| 14:32:36 | 24 | JUROR WELCH:  Yes. |
| 14:32:36 | 25 | THE COURT:  In each case? |

| | | |
|---|---|---|
| 14:32:37 | 1 | JUROR WELCH:  Yes. |
| 14:32:37 | 2 | THE COURT:  And is there anything in any of that |
| 14:32:39 | 3 | prior jury experience that would prevent you from being a fair |
| 14:32:42 | 4 | and impartial juror if chosen in this case? |
| 14:32:44 | 5 | JUROR WELCH:  No. |
| 14:32:45 | 6 | THE COURT:  Thank you.  Anybody else?  Please stick |
| 14:32:49 | 7 | your hand way up so I can see you from here. |
| 14:32:51 | 8 | (No response) |
| 14:32:52 | 9 | THE COURT:  As will become more obvious to the eight |
| 14:32:56 | 10 | of you that serve on this jury, I'm really old, so you've got |
| 14:32:59 | 11 | to bear that in mind. |
| 14:33:00 | 12 | All right.  This next question is directed to those |
| 14:33:03 | 13 | of you that might have served in the military. |
| 14:33:05 | 14 | Is there anyone on the panel who has ever served on |
| 14:33:09 | 15 | general or special court-martial?  Please raise your hand. |
| 18:00:00 | 16 | (No response) |
| 14:33:15 | 17 | THE COURT:  Have you or any family member or close |
| 14:33:18 | 18 | friend, other than in a divorce proceeding, ever participated |
| 14:33:22 | 19 | in a lawsuit or other legal action as a party, witness, or any |
| 14:33:29 | 20 | other capacity?  If so, please raise your hand. |
| 14:33:33 | 21 | JUROR MOORE-CATION:  Monica Moore-Cation, Seat 1. |
| 14:33:39 | 22 | And it was an eviction case. |
| 14:33:41 | 23 | THE COURT:  All right.  And in what capacity were you |
| 14:33:45 | 24 | involved: a witness? a party? |
| 14:33:46 | 25 | JUROR MOORE-CATION:  I was the residence owner. |

14:33:49   1          THE COURT:  All right.  Is there anything in that
14:33:51   2   prior experience that would prevent you from being a fair and
14:33:54   3   impartial juror if selected in this case.
14:33:56   4          JUROR MOORE-CATION:  No.
14:33:58   5          THE COURT:  Thank you.  I think we have one more down
14:34:00   6   the row here.
14:34:13   7          JUROR SMITH:  Aaron Smith, Number 19.
14:34:14   8          I was a defendant in an employment lawsuit.
14:34:17   9          THE COURT:  Pardon me.  I didn't hear the last part.
14:34:19  10          JUROR SMITH:  I was a defendant in an employment
14:34:21  11   lawsuit.
14:34:22  12          THE COURT:  All right.  Is there anything in that
14:34:24  13   prior jury experience that would prevent you from being a fair
14:34:27  14   and impartial juror if selected in this case?
14:34:32  15          JUROR SMITH:  No.
14:34:32  16          THE COURT:  Thank you.  Anyone else?
14:34:34  17      (No response)
14:34:34  18          THE COURT:  Seeing none, have any of you, or a close
14:34:40  19   family member known to you, filed a lawsuit or -- well, had a
14:34:47  20   desire to file a lawsuit or other legal action but were
14:34:51  21   prevented from doing so for some reason?
18:00:00  22      (No response)
14:34:56  23          THE COURT:  Have any of you attended law school or
14:35:03  24   had any special training in the law or worked in a law library,
14:35:08  25   a law school, a lawyer's office, or other business related to

```
14:35:12   1   the law?

14:35:13   2            If so, please raise your hand.

14:35:14   3            JUROR MOORE-CATION:  I have worked in multiple law

14:35:24   4   offices.

14:35:25   5            THE COURT:  You've got to state your name and seat

14:35:27   6   number.

14:35:28   7            JUROR MOORE-CATION:  Sorry.  Monica Moore-Cation,

14:35:30   8   Seat 1.

14:35:30   9            And I have worked in multiple law offices.

14:35:32  10            THE COURT:  All right.  For a law firm?

14:35:33  11            JUROR MOORE-CATION:  Yes.

14:35:34  12            THE COURT:  All right.  And would that experience

14:35:35  13   prevent you from following the court's instructions in this

14:35:39  14   case, even though you might disagree with my instructions.

14:35:43  15            JUROR MOORE-CATION:  No.

14:35:45  16            THE COURT:  All right.  And would that experience

14:35:46  17   prevent you from being a fair and impartial juror in this case?

14:35:49  18            JUROR MOORE-CATION:  No.

14:35:50  19            THE COURT:  And would that experience prevent you

14:35:52  20   from rendering a verdict based solely on the evidence presented

14:35:55  21   in the courtroom and the instructions that I give you as a

14:35:59  22   juror?

14:36:00  23            JUROR MOORE-CATION:  No.

14:36:01  24            THE COURT:  Thank you.

14:36:02  25            JUROR KALISH:  Howard Kalish, 21.
```

```
14:36:11   1              I'm retired now, but I worked for a technology
14:36:14   2    company here in Austin for many years, and I worked with the
14:36:17   3    lawyers there on patent and trademark infringement in my role
14:36:21   4    there.  And I have fairly good ongoing training on patent and
14:36:28   5    trademark infringement.
14:36:32   6              THE COURT:  Is there anything in that experience that
14:36:34   7    would prevent you -- this is the $64 question -- from following
14:36:38   8    my instructions in this case even if you disagree with those
14:36:42   9    instructions?
14:36:43  10              JUROR KALISH:  No.
14:36:44  11              THE COURT:  Would that experience prevent you in any
14:36:46  12    way from being a fair and impartial juror in this case?
14:36:49  13              JUROR KALISH:  No.
14:36:50  14              THE COURT:  And would that experience prevent you
14:36:52  15    from rendering a verdict based solely on the evidence presented
14:36:55  16    here in the courtroom and the instructions that I give to the
14:36:59  17    jury?
14:36:59  18              JUROR KALISH:  I think that's a yes answer.  I'm not
14:37:05  19    sure.  I can do it.
14:37:06  20              THE COURT:  All right.  In other words, you could put
14:37:07  21    your experiences out of your mind and render a verdict based
14:37:10  22    solely on what you hear in the courtroom and the instructions
14:37:13  23    that I give you; is that correct?
14:37:14  24              JUROR KALISH:  Yes.
14:37:15  25              THE COURT:  All right.  Thank you.
```

14:37:16  1          Anyone else?  Any law-related employment or

14:37:20  2   background?

14:37:25  3      (No response)

14:37:25  4          THE COURT:  Now, members of the panel who have served

14:37:26  5   on juries before are already aware that, once selected as a

14:37:31  6   juror, you become the judge of facts in the case, the judge of

14:37:34  7   the credibility of the witnesses, and the judge of the weight

14:37:38  8   to be given the testimony of the witnesses.

14:37:41  9          It is your prerogative as a juror to believe all of

14:37:44  10  the testimony of a witness, only part of the testimony of a

14:37:47  11  witness, or you may totally disbelieve the testimony of a

14:37:51  12  witness.  This is completely up to you.  As jurors, you are the

14:37:57  13  exclusive judges of the facts, the credibility of the

14:38:00  14  witnesses, and the weight to be given their testimony.

14:38:06  15         Whereas the jury is the exclusive judge of the facts,

14:38:09  16  the court, which is represented by me, is the sole judge of the

14:38:15  17  law applicable in the case.  At the conclusion of all the

14:38:19  18  testimony and after the lawyers for both sides have presented

14:38:22  19  their summary of the case to you and their closing arguments, I

14:38:26  20  will explain the law controlling the issues involved in this

14:38:30  21  case.  You are to be governed by my explanation of the

14:38:34  22  applicable law, which will be set out in what is termed the

14:38:38  23  "Court's Instructions and Charge."

14:38:41  24         If you are selected to sit as a juror on this case,

14:38:45  25  will you be able to -- able and willing to render a verdict

14:38:49 1  based solely on the evidence presented at the trial and the law

14:38:52 2  as I give it to you in my instructions, disregarding any other

14:38:57 3  ideas, notions, or beliefs about the law that you may have

14:39:01 4  encountered in reaching your verdict?

14:39:03 5       If you would be unable or unwilling to render a

14:39:07 6  verdict based solely on the evidence presented at trial and the

14:39:11 7  law as I give it to you in my instructions, please raise your

14:39:14 8  hand at this time.

18:00:00 9       (No response)

14:39:16 10       THE COURT:  This is a civil case.  Therefore, the

14:39:22 11  plaintiffs have the burden of proving their claims by what is

14:39:25 12  called a preponderance of the evidence.  Those of you who have

14:39:29 13  served on criminal juries are familiar with the requirement of

14:39:33 14  proof beyond a reasonable doubt.  Please bear in mind that, in

14:39:38 15  civil cases, the proof standard is not beyond a reasonable

14:39:40 16  doubt, as in criminal cases; but, rather, the plaintiffs must

14:39:45 17  prove each claim by a preponderance of the evidence.

14:39:51 18       This means that the plaintiff must produce evidence

14:39:54 19  which, when considered in the light of all of the facts, leads

14:39:57 20  you to believe that the plaintiff's claims are more likely true

14:40:00 21  than not.  In other words, the plaintiff must prove each of its

14:40:08 22  claims by evidence that shows merely by the greater weight of

14:40:14 23  the credible evidence.  It's a balancing test.  It's above 50

14:40:20 24  percent.

14:40:20 25       Is there anyone among you who would require Voxer to

| | | |
|--|--|--|
| 14:40:24 | 1 | prove each claim by a preponderance -- would be unable -- let |
| 14:40:28 | 2 | me just start over. |
| 14:40:30 | 3 | Is there anyone among you who would be unable to |
| 14:40:33 | 4 | require Voxer to prove each claim by a preponderance of the |
| 14:40:36 | 5 | evidence as I have explained that term to you? |
| 18:00:00 | 6 | (No response) |
| 14:40:40 | 7 | THE COURT:  Is there anyone among you who would hold |
| 14:40:44 | 8 | Voxer to a greater or lesser standard of proof? |
| 18:00:00 | 9 | (No response) |
| 14:40:51 | 10 | THE COURT:  You will be called upon in this case to |
| 14:40:53 | 11 | decide liability, and you may be called upon to award money |
| 14:40:56 | 12 | damages if you find they are appropriate. |
| 14:40:59 | 13 | Do any of you have any religious, philosophical, or |
| 14:41:04 | 14 | other belief that prevents you from acting as an impartial |
| 14:41:08 | 15 | juror in this case? |
| 18:00:00 | 16 | (No response) |
| 14:41:10 | 17 | THE COURT:  Do any of you have any strong feelings |
| 14:41:12 | 18 | either way about whether or not to award monetary damages that |
| 14:41:18 | 19 | would cause you not to be able to follow the law in that regard |
| 14:41:22 | 20 | as I give it to you? |
| 18:00:00 | 21 | (No response) |
| 14:41:27 | 22 | THE COURT:  Now, do any of you have a Voxer, |
| 14:41:34 | 23 | Facebook, or Instagram account? |
| 14:41:39 | 24 | Almost everyone. |
| 14:41:40 | 25 | Do any of you have strong feelings, positive or |

14:41:48  1  negative, toward Voxer, Facebook, or Instagram, based on your

14:41:52  2  own experience or experience of someone close to you?

14:42:01  3          All right.  I'm going to let the lawyers follow up

14:42:03  4  with questions, so note which jurors have indicated so.

14:42:09  5          THE COURT:  Have you or any member of your immediate

14:42:12  6  family, or your employer, current or previous, ever been

14:42:15  7  employed or had any dealings with the United States Patent and

14:42:18  8  Trademark Office?  Please raise your hand.

14:42:21  9      (No response)

14:42:27 10          THE COURT:  Have you or any member of your immediate

14:42:29 11  family ever invented a new product or process or applied for a

14:42:35 12  United States or foreign patent?

14:42:41 13      (Several jurors raise their hands)

14:42:45 14          THE COURT:  Have any of you had an experience in

14:42:47 15  which you felt someone used an idea you had without your

14:42:52 16  permission or you were accused of using an idea without

14:42:57 17  permission?

18:00:00 18      (No response)

14:43:01 19          THE COURT:  Have any of you ever been involved in or

14:43:05 20  worked for a company that was involved in a licensing a patent?

14:43:12 21      (Several jurors raise their hands)

14:43:12 22          THE COURT:  Now, this case involves a patent dispute,

14:43:16 23  including issues of patent infringement and patent validity.

14:43:20 24          Have you, any of you, or any member of your family or

14:43:23 25  close friends known to you been involved in a patent dispute,

| | | |
|---|---|---|
| 14:43:27 | 1 | either as an individual or as part of a company? |
| 18:00:00 | 2 | (No response) |
| 14:43:33 | 3 | THE COURT:  Do any of you have any opinions about |
| 14:43:35 | 4 | patents, patent rights, or the United States Patent and |
| 14:43:40 | 5 | Trademark Office that may make it difficult for you to be a |
| 14:43:43 | 6 | fair and impartial juror in this case? |
| 14:43:46 | 7 | (No response) |
| 14:43:50 | 8 | THE COURT:  Do any of you work in the high-tech |
| 14:43:53 | 9 | industry? |
| 14:43:57 | 10 | (Several jurors raise their hands) |
| 14:43:57 | 11 | THE COURT:  After all, you live in Austin. |
| 14:44:01 | 12 | Do any of you have any opinions about patents, patent |
| 14:44:05 | 13 | rights, or the United States Patent, and Trademark Office that |
| 14:44:08 | 14 | might make it difficult for you to be a fair and impartial |
| 14:44:10 | 15 | juror in this case? |
| 14:44:12 | 16 | (No response) |
| 14:44:12 | 17 | THE COURT:  Do any of you have any particular |
| 14:44:19 | 18 | expertise in audio, video, or text messages or social media, |
| 14:44:25 | 19 | more than just being good at it? |
| 18:00:00 | 20 | (No response) |
| 14:44:29 | 21 | THE COURT:  Now, if you're selected as a juror in |
| 14:44:32 | 22 | this case, you cannot discuss the case with your fellow jurors |
| 14:44:36 | 23 | before you are permitted to do so at the conclusion of trial, |
| 14:44:40 | 24 | or with anyone else until after a decision has been reached by |
| 14:44:44 | 25 | the jury.  Therefore, you cannot talk about the case or |

```
14:44:48   1   otherwise have any communications about the case with anyone,
14:44:52   2   including your fellow jurors, until I tell you that such
14:44:56   3   discussions may take place.
14:44:59   4        Thus, in addition to not having face-to-face
14:45:02   5   discussions with your fellow jurors or anyone else, you cannot
14:45:06   6   communicate with anyone about the case in any way, whether in
14:45:10   7   writing or through e-mail, text messaging, blogs, or comments,
14:45:15   8   or on social media, websites and apps like Twitter, Facebook,
14:45:20   9   Instagram, LinkedIn, Youtube, WhatsApp, GroupMe, Snapchat, and
14:45:28  10   TikTok.  If you feel you cannot do this, then you cannot let
14:45:31  11   yourself become a member of the jury in this case.
14:45:34  12        Is there anyone who will not be able to comply with
14:45:37  13   this restriction?  And by that I mean turning off your smart
14:45:41  14   phones and your means of electronic communication, knowing only
14:45:45  15   about this case from what you hear in the courtroom and the law
14:45:50  16   as I give it to you?  Will everybody, if you're selected to the
14:45:54  17   jury, be willing and able to do that?
14:45:56  18        If you cannot do that, raise your hand for me.
18:00:00  19     (No response)
14:46:00  20        THE COURT:  You also cannot conduct any type of
14:46:03  21   independent or personal research or investigation regarding any
14:46:08  22   matters related to this case.  Therefore, you cannot use your
14:46:12  23   cell phones, iPads, computers, or any other device to do any
14:46:16  24   research or investigation regarding this case, the matters in
14:46:20  25   this case, the legal issues in this case, or the individuals or
```

14:46:24  1   entities in this case.  And you must ignore any information

14:46:28  2   about this case that you may see, even accidentally, while

14:46:34  3   browsing on the Internet or on your social media feeds.

14:46:37  4          This is because you must -- pardon me.

14:46:41  5          This is because you must base the decision that you

14:46:44  6   will have to make in this case solely on what you hear and see

14:46:47  7   in this courtroom.  If you feel that you cannot do this, then

14:46:52  8   you cannot let yourself become a member of the jury in this

14:46:55  9   case.

14:46:56  10         Is there anyone who would not be able to comply with

14:46:59  11  this restriction?

14:47:03  12     (No response)

14:47:03  13         Now, I have allocated the lawyers for each side an

14:47:07  14  opportunity to ask you questions.  They will do their best to

14:47:15  15  stay within my time confines, but if you hear me say "thank

14:47:20  16  you" to one of them, it doesn't mean they've done anything

14:47:23  17  wrong.  It's just their signal that they're going to have to

14:47:28  18  sit down because they've exhausted the time I've given them.

14:47:31  19         So at this time the attorney for each party will have

14:47:35  20  an opportunity to ask you questions.  Please remember, as I

14:47:41  21  stated earlier, that the nature of some of the attorneys'

14:47:45  22  questions may seem intrusive, but I assure you that the lawyers

14:47:49  23  have no desire to pry into your backgrounds unnecessarily, but,

14:47:53  24  rather, are doing so to ensure that each of you can act

14:47:57  25  independently and without bias in serving as a juror in this

14:48:00  1  case.  Further, the lawyers are given certain peremptory

14:48:04  2  strikes which they can exercise, and their questions will give

14:48:07  3  them information on which to base those strikes.

14:48:10  4       So please remember that if at any time you do not

14:48:14  5  want to publicly answer a question, you may approach the bench

14:48:18  6  and ask the question with only the court and the lawyers

14:48:22  7  present.

14:48:22  8       So at this time the plaintiff may ask questions of

14:48:28  9  the jury panel.

14:48:30 10       MR. THOMPSON:  Thank you, Your Honor.  May I get a

14:48:32 11  five-minute warning before my time?

14:48:34 12       THE COURT:  You may.

14:48:35 13       MR. THOMPSON:  Thank you.  May it please the Court:

14:48:38 14       Good afternoon, ladies and gentlemen.  Again, my name

14:48:41 15  is a Blake Thompson, and I'm one of the lawyers that has the

14:48:44 16  honor of representing Voxer and Mr. Tom Katis.  I appreciate

14:48:49 17  you being here.  I know there's probably places you'd rather be

14:48:52 18  or things you'd rather be doing, so we appreciate your time and

14:48:56 19  attention.

14:48:57 20       I know you've all filled out juror questionnaires and

14:49:00 21  been answering questions today, so it's probably only fair that

14:49:03 22  I give you a little bit of information about myself.  I'm from

14:49:06 23  Texas, if you can't tell from my accent.  I grew up in a small

14:49:09 24  town of Overton, Texas.  I live in Tyler now.  I'm married.  I

14:49:14 25  have one son who is almost 8 years old, but he thinks he's

14:49:17  1  almost 18 years old.  I went to school right down the road in

14:49:21  2  Waco.  So any of you that are diehard Longhorns, I hope you

14:49:26  3  won't hold that against me.

14:49:27  4       I have a few questions for you, and it's my opinion

14:49:30  5  that all of us have opinions and feelings and biases that we've

14:49:34  6  just garnered from our personal life experiences.  And so the

14:49:39  7  point of these questions really are just to determine if you

14:49:41  8  have any of those particular opinions or biases or feelings

14:49:46  9  that might make it difficult for you to decide this case based

14:49:50  10 solely on the evidence that's going to be provided.  There's no

14:49:54  11 right or wrong answers.  I just need to get to know you a

14:49:58  12 little bit so we can make our decision.  Okay?

14:50:00  13      First question I have for the panel is:  Have you or

14:50:02  14 a close family member or close friend ever worked for an

14:50:06  15 insurance company?  If you have, please raise your hand.

14:50:09  16    (No response)

14:50:09  17    MR. THOMPSON:  Okay.  A little different twist on

14:50:12  18 that:  Have you or a family member or close friend ever worked

14:50:16  19 in what's sometimes referred to as risk management or claims

14:50:20  20 for a company?  Anyone?

14:50:21  21    (No response)

14:50:23  22    MR. THOMPSON:  Okay.  I see no hands.

14:50:25  23      Now, I know you were asked in your questionnaire your

14:50:28  24 feelings about lawsuits, and Judge Yeakel has asked you a

14:50:32  25 little bit about that, too.  But I have a few more questions

14:50:36   1   about that.  Who here thinks just as a whole there are too many

14:50:38   2   lawsuits in our country?  If you believe that, please raise

14:50:41   3   your hand.  And keep them up for just a second so I can kind of

14:50:45   4   mark who you are, okay?

14:50:50   5           Okay.  Now, for those of you that raised your hand, I

14:51:01   6   know we live in a world where we're watching TV, there's

14:51:05   7   lawyers advertising; we're on the Internet, there's lawyers

14:51:08   8   advertising; we're driving down the freeway, there's lawyers on

14:51:10   9   the billboard.  Lawyers everywhere, okay?

14:51:13  10           Who, when you're saying there's too many lawsuits in

14:51:16  11   this country, really you're thinking about personal injury type

14:51:19  12   lawsuits?  Raise hand if that's really what you're referring

14:51:23  13   to?  Okay.  Keep them up for me if you don't mind just so I can

14:51:27  14   see.

14:51:31  15           All right.  Now, there's no such thing as "patent

14:51:36  16   police."  So my client, the only option we have to redress

14:51:40  17   their wrong is to come here to the courthouse.  So is there

14:51:45  18   anybody here that thinks there's just too many patent lawsuits,

14:51:47  19   lawsuits over a patent?

14:51:49  20           Okay.  Mr. Champlin; is that correct?

14:51:54  21           MR. THOMPSON:  Okay.  I have a question for you.  Can

14:52:02  22   you tell me little bit more about that, why you have that

14:52:05  23   feeling?

14:52:06  24           JUROR CHAMPLIN:  I've looked at lots of software

14:52:09  25   patent because I'm a software developer, or was.  And I feel

```
14:52:15   1  like it's maybe less a problem with the legal system but more a
14:52:18   2  problem with the Patent Office.  I don't think they really
14:52:21   3  understand what is novel and not in the software industry.
14:52:28   4          MR. THOMPSON:  Okay.  And I think you also mentioned
14:52:30   5  that you had an issue with the Patent and Trademark Office.  Is
14:52:32   6  that what you're talking about?
14:52:34   7          JUROR CHAMPLIN:  Yes.  I've had personal issue with
14:52:37   8  the Patent and Trademark Office, yes.
14:52:41   9          MR. THOMPSON:  You kind of have an issue with the way
14:52:44  10  the system works.  Is that fair?
14:52:45  11          JUROR CHAMPLIN:  Yes.
14:52:46  12          MR. THOMPSON:  Would those issues and your beliefs
14:52:48  13  prevent you from being able to be a fair and impartial juror on
14:52:51  14  this case?
14:52:52  15          JUROR CHAMPLIN:  No.
14:52:53  16          MR. THOMPSON:  Okay.  All right.  Thank you,
14:52:55  17  Mr. Champlin.
14:53:04  18          Mrs. Albright.  I think she's on the front row here.
14:53:09  19          Ms. Albright, from your response to questionnaire, I
14:53:12  20  couldn't really determine if you were familiar with Voxer or
14:53:15  21  not.  Are you familiar with Voxer?
14:53:17  22          JUROR ALBRIGHT:  No.
14:53:18  23          MR. THOMPSON:  Okay.  So I think that, if I read this
14:53:19  24  right, you put a one as unfavorable for Voxer in your response.
14:53:24  25  Was that just unintentional or you just had no idea who Voxer
```

```
14:53:28   1   is?
14:53:29   2          JUROR ALBRIGHT:  That was unintentional.
14:53:31   3          MR. THOMPSON:  Okay.  Thank you.  I appreciate that.
14:53:33   4   You can sit down.
14:53:33   5          Ms. Beebe.  Did I pronounce your name right?
14:53:43   6          JUROR BEEBE:  Yes.
14:53:44   7          MR. THOMPSON:  Okay.  Sorry.  Ms. Beebe, I think in
14:53:47   8   some of your responses you describe yourself as very tech
14:53:50   9   savvy; is that right?
14:53:51  10          JUROR BEEBE:  Yes.
14:53:52  11          MR. THOMPSON:  Okay.  Can you -- it's not a trick
14:53:54  12   question.  Can you -- can you kind of tell me why you consider
14:53:57  13   yourself pretty tech savvy.
14:54:00  14          JUROR BEEBE:  I use technology a lot, but it's not
14:54:02  15   for work.  Well, it is in a teaching standpoint.  I'm a
14:54:06  16   teacher.  So in that light I use technology a lot, and then
14:54:12  17   also in social media.
14:54:13  18          MR. THOMPSON:  What do you teach?
14:54:13  19          JUROR BEEBE:  I teach art and work at a private
14:54:15  20   school.
14:54:16  21          MR. THOMPSON:  Okay.  Thank you very much.  I
14:54:18  22   appreciate it.
14:54:20  23          Mr. Chang.  I should have said it quicker, and you
14:54:25  24   could have gotten the microphone quicker.
14:54:27  25          Mr. Chang, I believe that in your responses to the
```

14:54:30  1   questionnaire, that you indicated that you've used the Voxer

14:54:32  2   app; is that right?

14:54:34  3              JUROR CHANG:  Correct.

14:54:35  4              MR. THOMPSON:  Can you tell me a little bit about

14:54:36  5   that?  Do you currently use it?

14:54:38  6              JUROR CHANG:  I don't currently use it.  This was

14:54:40  7   probably sometime last year.  It was at my gym.  It was a way

14:54:44  8   for the coaches to stay in communication with participants

14:54:50  9   during training sessions, and it was only for maybe a

14:54:54  10  three-month period, and I believe the app after that was over.

14:55:01  11             MR. THOMPSON:  How would you describe your experience

14:55:03  12  with that?  Did you like it?  Did you not like it?  What?

14:55:05  13             JUROR CHANG:  Neutral.  I mean, it's -- yeah.

14:55:09  14  Neutral.

14:55:09  15             MR. THOMPSON:  Okay.  I noticed I think in your

14:55:10  16  background that you have a lot of experience in design; is that

14:55:13  17  right?  Maybe games and such?

14:55:14  18             JUROR CHANG:  Correct.

14:55:15  19             MR. THOMPSON:  All right.  With your level of

14:55:19  20  expertise and your background in technology, would you have any

14:55:21  21  problem -- because I'll tell you in this case there's going to

14:55:23  22  be experts on both sides talking about both sides' positions.

14:55:27  23  Would you have any problem listening to those experts and not

14:55:31  24  just looking at your own personal background when making a

14:55:35  25  decision as a juror?

14:55:36  1           JUROR CHANG:  Yeah.  I don't think I would have a

14:55:40  2  problem, no.

14:55:41  3           MR. THOMPSON:  Okay.  And my point is, basically,

14:55:44  4  that you don't feel like, with your level of expertise, that

14:55:46  5  you might ignore or not pay attention that closely to the

14:55:50  6  experts and rely more on your personal experience.

14:55:53  7           JUROR CHANG:  This domain is not my area of focus, so

14:55:57  8  I wouldn't have a problem.

14:55:59  9           MR. THOMPSON:  Okay.  Fair enough.  Thank you so

14:56:02 10  much.

14:56:03 11           Ms. Estes.  Ms. Estes, I think your response to some

14:56:14 12  of the questionnaire questions, you indicated you don't use

14:56:16 13  Facebook or Instagram; is that correct?

14:56:19 14           JUROR ESTES:  That is correct.

14:56:21 15           MR. THOMPSON:  Now, I think your job is at H-E-B in

14:56:26 16  marketing and so forth; is that correct?

14:56:26 17           JUROR ESTES:  Okay.

14:56:26 18           MR. THOMPSON:  Do you not use any social media as

14:56:28 19  part of your job or anything of that nature?

14:56:30 20           JUROR ESTES:  I mean, obviously, H-E-B uses social

14:56:33 21  media and I have a team in San Antonio that uses social media

14:56:38 22  from an advertising perspective.  But for me, personally, I'm

14:56:41 23  not directly involved in that.

14:56:43 24           MR. THOMPSON:  Do you oversee that team that is doing

14:56:46 25  that work?

| | | |
|---|---|---|
| 14:56:46 | 1 | JUROR ESTES:  I do not. |
| 14:56:48 | 2 | MR. THOMPSON:  Thank you.  I appreciate it. |
| 14:56:50 | 3 | Mr. Ilango?  Did I pronounce your name correctly. |
| 14:56:53 | 4 | JUROR ILANGO:  Yes. |
| 14:56:54 | 5 | THE COURT:  Okay.  Thank you.  You indicated that you |
| 14:56:56 | 6 | have a background in developing products; is that right? |
| 14:57:00 | 7 | JUROR ILANGO:  Yes. |
| 14:57:00 | 8 | MR. THOMPSON:  Can you tell us little more about |
| 14:57:03 | 9 | that? |
| 14:57:03 | 10 | JUROR ILANGO:  I'm involved in system design and |
| 14:57:05 | 11 | design of semiconductor chips. |
| 14:57:09 | 12 | MR. THOMPSON:  Have you ever had any of your |
| 14:57:11 | 13 | inventions patented? |
| 14:57:12 | 14 | JUROR ILANGO:  Yes. |
| 14:57:13 | 15 | MR. THOMPSON:  How many? |
| 14:57:14 | 16 | JUROR ILANGO:  Maybe a dozen. |
| 14:57:16 | 17 | MR. THOMPSON:  Okay.  You also indicated, I think, |
| 14:57:18 | 18 | that maybe you were in a small claims -- had a small claims |
| 14:57:23 | 19 | court case; is that right? |
| 14:57:24 | 20 | JUROR ILANGO:  Yes. |
| 14:57:25 | 21 | MR. THOMPSON:  For an automobile; is that right? |
| 14:57:27 | 22 | JUROR ILANGO:  Yes. |
| 14:57:28 | 23 | MR. THOMPSON:  Were you the claimant or defendant or |
| 14:57:30 | 24 | what? |
| 14:57:31 | 25 | JUROR ILANGO:  I was the defendant. |

| 14:57:33 | 1 | MR. THOMPSON:  Okay.  Thank you very much, |

```
14:57:33   1            MR. THOMPSON:  Okay.  Thank you very much,

14:57:35   2   Mr. Ilango.

14:57:37   3            Ms. Lancaster.  Hi.  I believe on your questionnaire

14:57:42   4   you indicated that either you or maybe your significant other

14:57:46   5   had some military experience; is that right?

14:57:50   6            JUROR LANCASTER:  I served in the Army, yes.

14:57:51   7            MR. THOMPSON:  You served in the Army.  How long were

14:57:55   8   you in the Army?

14:57:55   9            JUROR LANCASTER:  Three years.

14:57:56  10            MR. THOMPSON:  How long ago was that?

14:57:58  11            JUROR LANCASTER:  Over 20 years ago.

14:58:00  12            MR. THOMPSON:  That was a bad question of me to ask

14:58:02  13   you.  I'm sorry.  Thank you very much.  I appreciate you.

14:58:04  14            Mrs. Moore-Cation.  We'll let the microphone get to

14:58:15  15   you.  I think -- and, now, people were raising their hand

14:58:18  16   pretty quickly and putting them down, so I want to make sure I

14:58:21  17   have this right.  Did you indicate that you have a patent or

14:58:24  18   that you had applied for a patent?

14:58:25  19            JUROR MOORE-CATION:  Well, I worked for a company in

14:58:27  20   the Bay Area.  They were a material science company.  And I was

14:58:32  21   the product manager for a new polymer-based overcurrent

14:58:37  22   protection device, and we did file for a patent for that

14:58:40  23   product.

14:58:40  24            MR. THOMPSON:  Okay.  And you were just involved in

14:58:42  25   that process, I guess?
```

| | | |
|---|---|---|
| 14:58:43 | 1 | JUROR MOORE-CATION:  I was involved in the process, |
| 14:58:44 | 2 | yes. |
| 14:58:45 | 3 | MR. THOMPSON:  Okay.  Now, you also indicated, I |
| 14:58:48 | 4 | think, there's a number of lawyers in your family; is that |
| 14:58:51 | 5 | right? |
| 14:58:51 | 6 | JUROR MOORE-CATION:  There are. |
| 14:58:52 | 7 | MR. THOMPSON:  So your dad is a judge; is that right? |
| 14:58:54 | 8 | JUROR MOORE-CATION:  Was a state judge. |
| 14:58:56 | 9 | MR. THOMPSON:  Okay.  And where was that? |
| 14:58:57 | 10 | JUROR MOORE-CATION:  120th District Court in El Paso. |
| 14:59:00 | 11 | MR. THOMPSON:  Okay.  And what kind of law did he |
| 14:59:03 | 12 | practice before he went on the bench? |
| 14:59:03 | 13 | JUROR MOORE-CATION:  Criminal. |
| 14:59:04 | 14 | MR. THOMPSON:  And who else?  I think you had a few |
| 14:59:06 | 15 | other family members who are lawyers.  Can you tell me about |
| 14:59:09 | 16 | those. |
| 14:59:09 | 17 | JUROR MOORE-CATION:  Yes.  A couple of uncles, also |
| 14:59:11 | 18 | criminal law. |
| 14:59:12 | 19 | MR. THOMPSON:  Okay. |
| 14:59:13 | 20 | JUROR MOORE-CATION:  A nephew who has currently just |
| 14:59:16 | 21 | graduated, in fact, so I'm not sure what direction he's going. |
| 14:59:19 | 22 | But he's also an attorney. |
| 14:59:20 | 23 | MR. THOMPSON:  Where did he graduate from? |
| 14:59:22 | 24 | JUROR MOORE-CATION:  NYU. |
| 14:59:24 | 25 | MR. THOMPSON:  NYU.  Okay.  I think you indicated |

| | | |
|---|---|---|
| 14:59:27 | 1 | you've worked at a number of law offices; is that right? |
| 14:59:29 | 2 | JUROR MOORE-CATION:  I have, during high school and |
| 14:59:30 | 3 | college.  And while I was at UT, I worked for some mostly |
| 14:59:34 | 4 | research assistant positions. |
| 14:59:36 | 5 | MR. THOMPSON:  Were those law firms mostly criminal |
| 14:59:39 | 6 | law firms or civil or a mix? |
| 14:59:40 | 7 | JUROR MOORE-CATION:  It was a mix, but primarily |
| 14:59:43 | 8 | criminal. |
| 14:59:43 | 9 | MR. THOMPSON:  Okay.  All right.  Did you ever work |
| 14:59:46 | 10 | for any law firms that did civil litigation, either on the |
| 14:59:50 | 11 | plaintiff's side or the defense' side? |
| 14:59:52 | 12 | JUROR MOORE-CATION:  Yes.  But it was a long time |
| 14:59:55 | 13 | ago. |
| 14:59:56 | 14 | MR. THOMPSON:  Okay.  You don't recall who those |
| 14:59:58 | 15 | were? |
| 14:59:58 | 16 | JUROR MOORE-CATION:  I don't. |
| 14:59:59 | 17 | MR. THOMPSON:  Okay.  Thank you.  I think you also |
| 15:00:01 | 18 | indicated that your husband had developed or started several |
| 15:00:04 | 19 | technology businesses; is that right? |
| 15:00:06 | 20 | JUROR MOORE-CATION:  That is correct. |
| 15:00:07 | 21 | MR. THOMPSON:  Can you tell us about those? |
| 15:00:09 | 22 | JUROR MOORE-CATION:  Yes.  They are -- he is a |
| 15:00:11 | 23 | software designer and has been the founder of three software |
| 15:00:16 | 24 | startup companies.  He currently runs two of those, and I am |
| 15:00:21 | 25 | contributor, not a paid employee. |

| | | |
|---|---|---|
| 15:00:25 | 1 | MR. THOMPSON:  Okay.  All right.  Thank you very |
| 15:00:28 | 2 | much.  I appreciate it. |
| 15:00:29 | 3 | Ms. Nelson.  Well, Ms. Nelson, I really don't have |
| 15:00:40 | 4 | any questions for you.  I guess I was blank.  I was just moving |
| 15:00:43 | 5 | along.  Does that make your day? |
| 15:00:45 | 6 | JUROR NELSON:  It does. |
| 15:00:46 | 7 | MR. THOMPSON:  Okay.  Thank you.  I do have some |
| 15:00:48 | 8 | questions for Mr. Ridley.  I believe in your questionnaire that |
| 15:01:00 | 9 | you listed that your brother is an attorney; is that right? |
| 15:01:03 | 10 | JUROR RIDLEY:  Correct. |
| 15:01:04 | 11 | MR. THOMPSON:  And where does he practice? |
| 15:01:05 | 12 | JUROR RIDLEY:  In Georgia. |
| 15:01:07 | 13 | MR. THOMPSON:  Do you know what kind of law he |
| 15:01:09 | 14 | practices? |
| 15:01:10 | 15 | JUROR RIDLEY:  General practice. |
| 15:01:11 | 16 | MR. THOMPSON:  Okay.  All right.  I think you also |
| 15:01:12 | 17 | have started your own business.  You are a financial planner; |
| 15:01:15 | 18 | is that right? |
| 15:01:15 | 19 | JUROR RIDLEY:  Correct. |
| 15:01:16 | 20 | MR. THOMPSON:  Can you tell us a little bit more |
| 15:01:18 | 21 | about starting your own business?  How you did it, when you did |
| 15:01:22 | 22 | it, that sort of thing? |
| 15:01:23 | 23 | JUROR RIDLEY:  Sure.  Yeah.  Just filed with the |
| 15:01:26 | 24 | State, the LLC, and had to process the -- become a registered |
| 15:01:31 | 25 | investment advisor with the State as well.  Through my |

15:01:35  1  experience with financial planning, investments, kind of saw a

15:01:39  2  need for a specific service within the church world.  And so I

15:01:45  3  started my own firm six months ago.

15:01:48  4         MR. THOMPSON:  And when you say church work, do you

15:01:50  5  cater to some certain area or demographic?

15:01:53  6         JUROR RIDLEY:  To churches, specifically.

15:01:55  7         MR. THOMPSON:  Thank you very much.  I appreciate

15:01:57  8  you.

15:01:57  9         Ms. Rudolphi.  I know you indicated you were a juror

15:02:07 10  on a couple of cases; is that right?

15:02:08 11         JUROR RUDOLPHI:  Yes.

15:02:09 12         MR. THOMPSON:  But I think I noticed in your

15:02:11 13  information that you're also a member of a class action; is

15:02:13 14  that right?

15:02:13 15         JUROR RUDOLPHI:  Yes.  Uh-huh.

15:02:15 16         MR. THOMPSON:  Can you tell me a little bit about

15:02:16 17  that?

15:02:16 18         JUROR RUDOLPHI:  Yes.  I worked for Toys"R"Us for 26

15:02:20 19  years, and we were released, of course, when they went bankrupt

15:02:24 20  without severance.  So there was class action lawsuit filed for

15:02:27 21  severance pay, and I was a part of that.

15:02:28 22         MR. THOMPSON:  Okay.  Have you been involved in any

15:02:29 23  other lawsuits?

15:02:30 24         JUROR RUDOLPHI:  I don't think so, no.

15:02:32 25         MR. THOMPSON:  All right.  Thank you.

| | | |
|---|---|---|
| 15:02:34 | 1 | JUROR RUDOLPHI:  You're welcome. |
| 15:02:36 | 2 | MR. THOMPSON:  And Mr. Rylie, good afternoon. |
| 15:02:42 | 3 | JUROR RYLIE:  Good afternoon. |
| 15:02:44 | 4 | MR. THOMPSON:  I understand you worked for NXP or you |
| 15:02:47 | 5 | retired from NXP; is that right? |
| 15:02:50 | 6 | JUROR RYLIE:  Thirty-two years. |
| 15:02:52 | 7 | MR. THOMPSON:  And I believe you were a maintenance |
| 15:02:54 | 8 | technician; is that right? |
| 15:02:55 | 9 | JUROR RYLIE:  That's correct. |
| 15:02:56 | 10 | MR. THOMPSON:  Can you tell us a little bit about |
| 15:02:57 | 11 | what that job was and what you did on a daily basis? |
| 15:02:59 | 12 | JUROR RYLIE:  I mainly maintained the semiconductor |
| 15:03:03 | 13 | machines -- *[unintelligible].* |
| 15:03:07 | 14 | MR. THOMPSON:  Can you say that again?  I think you |
| 15:03:09 | 15 | kind of cut out.  Technology.  You know how that goes. |
| 15:03:12 | 16 | JUROR RYLIE:  *[Unintelligible].* |
| 15:03:17 | 17 | MR. THOMPSON:  I'm hearing you, but I'm not sure the |
| 15:03:19 | 18 | court reporter can. |
| 15:03:38 | 19 | JUROR RYLIE:  I did maintenance on the semiconductor |
| 15:03:43 | 20 | equipment that makes the wafers. |
| 15:03:46 | 21 | MR. THOMPSON:  Okay.  Okay.  All right.  Thank you |
| 15:03:48 | 22 | very much.  Appreciate you. |
| 15:03:56 | 23 | Ms. Lewis.  Now, Ms. Lewis, I think I noticed in your |
| 15:04:02 | 24 | questionnaire that you said you have a real distrust of social |
| 15:04:05 | 25 | media companies.  You had some opinions about that.  Can you |

15:04:09 1  tell me about that?

15:04:10 2          JUROR LEWIS:  That's correct.  I would say that

15:04:12 3  pretty much sums it up.  I have a very strong bias against

15:04:15 4  social media, Facebook, particularly.

15:04:18 5          MR. THOMPSON:  Okay.  All right.  Okay.  Thank you

15:04:20 6  very much.  All right.

15:04:24 7          Now, just to everyone, another question for the

15:04:26 8  entire panel, so you can raise your hand if it applies to you.

15:04:29 9          Is there any of you who would have a problem sitting

15:04:33 10 on a jury, regardless of the type of case it is, whether it's a

15:04:37 11 patent case or any other kind of case, where you're asked to

15:04:40 12 award potentially tens of millions or hundreds of millions of

15:04:44 13 dollars?  Just where that amount of money is a lot, and you

15:04:47 14 would just have a problem considering that, no matter what the

15:04:50 15 facts are.  Does anyone -- anyone have a problem with that?  If

15:04:53 16 you do, raise your hand.

15:04:56 17     (No response)

15:04:56 18         MR. THOMPSON:  Okay.  I see no hands.

15:04:58 19         Is there anyone here who just has sort of fundamental

15:05:01 20 distrust of the government, just such that you feel like, if

15:05:06 21 the government's involved in the process, whatever that is,

15:05:09 22 it's probably messed up or screwed up or whatever because the

15:05:12 23 government is involved in it?  Does anyone here have a distrust

15:05:15 24 in the government such that just anything they were involved

15:05:17 25 in, you would question it, to put it another way?  Anyone?

```
15:05:21   1        (No response)
15:05:21   2              THE COURT:  Okay.  I see no hands.
15:05:24   3        All right.  Who here considers yourself a leader?  If
15:05:27   4   you're in a situation and put in with a group of people, you're
15:05:31   5   the type of person that kind of takes charge, whatever it is,
15:05:33   6   and -- and moves forward.
15:05:35   7        Okay one hand.  Ms. Beebe; is that right, and Ms. --
15:05:39   8   Ms. Estes.  Okay.  Let me talk to Ms. Beebe first.  Okay,
15:05:50   9   Ms. Beebe, I'm going to put you on the spot again.
15:05:52  10        Tell me why you think you're a leader -- consider
15:05:55  11   yourself a leader?
15:05:56  12              JUROR BEEBE:  I'm in a lot of leadership positions.
15:06:00  13   I teach at school, and I'm the leader of my department, based
15:06:04  14   on I'm the only person in my department, so I'm in charge of
15:06:08  15   running the art program at the school that I'm at.  Also, at
15:06:12  16   the old school that I was at, I was also the only art teacher,
15:06:16  17   so I was over the entire department and built the program from
15:06:20  18   scratch.  Also I lead high school girls at my church.
15:06:25  19              MR. THOMPSON:  Okay.  And what's the name of the
15:06:27  20   school that you teach?
15:06:28  21              JUROR BEEBE:  I work at San Marcos Academy.
15:06:32  22              MR. THOMPSON:  Okay.  Thank you very much, Ms. Beebe.
15:06:34  23   I appreciate you.  Can you pass that down to Ms. Estes?
15:06:40  24        Okay, Ms. Estes, I'm putting you on the spot, too.  I
15:06:43  25   already know you're leading people at H-E-B, but tell me why
```

| | | |
|---|---|---|
| 15:06:46 | 1 | you consider yourself a leader. |
| 15:06:49 | 2 | JUROR ESTES:  Mostly because of that, 38 years with |
| 15:06:51 | 3 | H-E-B, running stores, director of operations for Central |
| 15:06:55 | 4 | Texas, and now I'm the director of marketing and merchandising |
| 15:06:58 | 5 | for the 56 stores here in Central Texas.  I have a team of |
| 15:07:02 | 6 | about 20 people reporting to me. |
| 15:07:04 | 7 | MR. THOMPSON:  Okay.  Twenty people, and you're over |
| 15:07:06 | 8 | about 56 stores? |
| 15:07:08 | 9 | JUROR ESTES:  Yeah.  Yes, sir. |
| 15:07:09 | 10 | MR. THOMPSON:  Okay.  Thank you very much.  I |
| 15:07:11 | 11 | appreciate you. |
| 15:07:21 | 12 | Mr. Shultz.  Mr. Shultz, I think in your |
| 15:07:29 | 13 | questionnaire that there's a question about legal cases and |
| 15:07:35 | 14 | such, and you indicated you work for Dell, I believe; is that |
| 15:07:39 | 15 | right? |
| 15:07:40 | 16 | JUROR SHULTZ:  That's correct. |
| 15:07:41 | 17 | MR. THOMPSON:  And you couldn't speak to any cases on |
| 15:07:43 | 18 | behalf of Dell.  Is that because you are involved in them and |
| 15:07:46 | 19 | it's confidential, or it's because you don't know about any |
| 15:07:48 | 20 | cases they're involved in? |
| 15:07:49 | 21 | JUROR SHULTZ:  Both, actually.  I'm not involved in |
| 15:07:51 | 22 | that department, and I'm not able to speak on their behalf as a |
| 15:07:55 | 23 | spokesman. |
| 15:07:56 | 24 | MR. THOMPSON:  Okay.  But you're not involved in, |
| 15:07:58 | 25 | like, the legal cases for Dell; is that right? |

| | | |
|---|---|---|
| 15:08:00 | 1 | JUROR SHULTZ:  That's correct. |
| 15:08:02 | 2 | MR. THOMPSON:  Okay.  All right.  Thank you very |
| 15:08:03 | 3 | much.  Oh, wait.  One other question.  I think you also |
| 15:08:06 | 4 | indicated that you had -- is it your spouse that works in a |
| 15:08:08 | 5 | police role or something like that?  Can you tell me about |
| 15:08:10 | 6 | that? |
| 15:08:10 | 7 | JUROR SHULTZ:  Yeah.  Police communications |
| 15:08:12 | 8 | supervisor.  Also a dispatcher for University of Texas. |
| 15:08:17 | 9 | MR. THOMPSON:  Okay.  All right.  Thank you very |
| 15:08:19 | 10 | much. |
| 15:08:21 | 11 | All right.  I believe that's all the questions I |
| 15:08:26 | 12 | have. |
| 15:08:27 | 13 | One other last question.  See, that was a trick.  One |
| 15:08:30 | 14 | other last question.  Judge Yeakel has asked you a lot of |
| 15:08:35 | 15 | questions; I've asked you a lot of question.  But is there |
| 15:08:37 | 16 | anyone sitting here on this panel today that is sitting there |
| 15:08:41 | 17 | thinking, If told him about X, whatever it is, it would |
| 15:08:44 | 18 | probably mean I -- he would probably need to know that to |
| 15:08:48 | 19 | decide whether or not I'd be a good juror for this case? |
| 15:08:51 | 20 | Is there anything that you just need to share with us |
| 15:08:53 | 21 | that you feel like we should know before choosing who is going |
| 15:08:56 | 22 | to be the jurors in this case?  Anyone? |
| 18:00:00 | 23 | (No response) |
| 15:09:00 | 24 | MR. THOMPSON:  Okay.  All right.  Well, I appreciate |
| 15:09:03 | 25 | you, I thank you for your time, and we look forward to |

| | | |
|---|---|---|
| 15:09:06 | 1 | presenting our case to the eight of you that are chosen. |
| 15:09:12 | 2 | Thank you. |
| 15:09:13 | 3 | THE COURT:  You may proceed. |
| 15:09:14 | 4 | MR. JONES:  Thank you, Your Honor. |
| 15:09:17 | 5 | Again, my name is Mike Jones.  It is indeed my |
| 15:09:20 | 6 | privilege in this case to represent Meta.  As you've been told, |
| 15:09:23 | 7 | they were formally known as Facebook.  I'm probably going to |
| 15:09:27 | 8 | just refer to them as Facebook because in all the documents and |
| 15:09:32 | 9 | a lot of things you'll, see you'll hear everything talking |
| 15:09:35 | 10 | about Facebook and we know them as Facebook.  So that's what I |
| 15:09:39 | 11 | will do, if it's okay with you.  I also represent Instagram, |
| 15:09:44 | 12 | and it's my privilege to do so. |
| 15:09:45 | 13 | In this particular case, the first thing I want to do |
| 15:09:49 | 14 | on behalf of Facebook and Instagram is to thank you for coming |
| 15:09:56 | 15 | here as jurors.  I appreciate the time you're spending here, |
| 15:10:00 | 16 | and I appreciate the time those of you who are selected as |
| 15:10:03 | 17 | jurors will spend in this case.  It's important time because |
| 15:10:06 | 18 | this is an important resolution that needs to be decided |
| 15:10:10 | 19 | between these parties.  I thank you for doing that.  I also |
| 15:10:14 | 20 | thank you for the time you've already spent in filling out the |
| 15:10:16 | 21 | questionnaires, because it does make things go much more |
| 15:10:20 | 22 | smoothly. |
| 15:10:20 | 23 | And I do have a few questions that I want to ask you |
| 15:10:24 | 24 | to follow up on things that you said in the questionnaire |
| 15:10:28 | 25 | initially.  But before I do that, the judge asked you if you |

15:10:32  1    had personal dealings with the Patent and Trademark Office and

15:10:36  2    also if you've had personal dealings either in applying or

15:10:40  3    owning patents.  And, unfortunately, I'm old.  I don't move

15:10:45  4    quickly, and I didn't get everybody's hand written down of

15:10:50  5    those of you that raised your hand for that.

15:10:52  6          So could I ask that question one more time and ask

15:10:56  7    everybody to raise their hand, because I would like to talk to

15:10:58  8    you each a little bit about those experiences that you have had

15:11:03  9    with the patent office and have had experiences applying and

15:11:07  10   owning patents.

15:11:08  11         So, if you would, would you raise your hands?  Thank

15:11:13  12   you.  And I'll start out with you, Mrs. Moore-Cation.  And I

15:11:24  13   think you've already told us a little bit about those

15:11:26  14   experiences, right?

15:11:27  15         JUROR MOORE-CATION:  Correct.

15:11:28  16         MR. JONES:  And that your husband has been involved

15:11:29  17   in that company that develops software products, correct?

15:11:33  18         JUROR MOORE-CATION:  Multiple companies, yes.

15:11:35  19         MR. JONES:  Multiple companies.  My question to you

15:11:37  20   is this:  Is there anything about those experiences that you've

15:11:39  21   had or you've heard about from your husband that would cause

15:11:41  22   you to lean one way or the other as we enter into this case?

15:11:45  23         JUROR MOORE-CATION:  No.

15:11:46  24         MR. JONES:  Okay.  Thank you so much.  Who is next on

15:11:49  25   the first row?  Yes, sir.  That would be Mr. Ziaja.  Did I

15:11:55  1   pronounce that right?

15:11:55  2           JUROR ZIAJA:  Ziaja.

15:11:58  3           MR. JONES:  I apologize.  Anyway, could you tell me a

15:12:01  4   little bit about your experiences?

15:12:03  5           JUROR ZIAJA:  So I think the question he asked was

15:12:05  6   family members, too.  I applied for one patent when I worked at

15:12:09  7   IBM, but I was not granted one.  And then my son worked for

15:12:13  8   Paypal, and I think he was granted 12 or 13 patents in Paypal.

15:12:16  9   And then I have a brother who was granted several patents at --

15:12:21  10  for Sun and for Oracle Joan.

15:12:26  11          MR. JONES:  Thank you, sir.  I appreciate that.  My

15:12:29  12  question to you would be the same that I just asked a moment

15:12:31  13  ago.  Is there anything about those experiences, either what

15:12:34  14  you heard about from your son or others, or what you personally

15:12:38  15  experienced, that would cause you to lean one way or the other

15:12:40  16  as we begin this case?

15:12:41  17          JUROR ZIAJA:  No.

15:12:43  18          MR. JONES:  Thank you, sir.  I appreciate it.

15:12:44  19          Next on the first row that would answer yes to that

15:12:47  20  question?  Anybody else on the first row had dealings with the

15:12:52  21  patent office in either applying or owning patents?

15:12:55  22          Thank you.  So we can go to the next row, who would

15:12:59  23  answer yes to that question?  Yes, sir.  I think that is

15:13:02  24  Mr. Smith, right?

15:13:03  25          JUROR SMITH:  Yes.

| | | |
|---|---|---|
| 15:13:05 | 1 | MR. JONES:  Jones and Smith.  All right.  Yes, sir. |
| 15:13:08 | 2 | Could you tell me about your experiences in that regard. |
| 15:13:11 | 3 | JUROR SMITH:  I've applied for several U.S. patents. |
| 15:13:14 | 4 | MR. JONES:  And what type of patents? |
| 15:13:16 | 5 | JUROR SMITH:  Electromechanical devices, not software |
| 15:13:19 | 6 | related. |
| 15:13:20 | 7 | MR. JONES:  Thank you.  And how many, sir? |
| 15:13:23 | 8 | JUROR SMITH:  Three. |
| 15:13:24 | 9 | MR. JONES:  Three.  Thank you, sir.  And is there |
| 15:13:26 | 10 | anything about those experiences that would cause you to lean |
| 15:13:29 | 11 | any way or the other as we start this case? |
| 15:13:32 | 12 | JUROR SMITH:  No. |
| 15:13:34 | 13 | MR. JONES:  Thank you, sir.  I appreciate it. |
| 15:13:36 | 14 | Anybody else on the second row that's had experiences |
| 15:13:38 | 15 | applying for and owning patents?  Yes, sir.  And that would be |
| 15:13:43 | 16 | Mr. Rylie? |
| 15:13:45 | 17 | JUROR ILANGO:  Ilango. |
| 15:13:47 | 18 | MR. JONES:  Okay.  Thank you, sir.  Juror 13, I |
| 15:13:50 | 19 | believe, right, sir? |
| 15:13:52 | 20 | JUROR ILANGO:  Fourteen. |
| 15:13:54 | 21 | THE COURT:  Thank you.  Mr. Ilango.  I apologize. |
| 15:13:58 | 22 | And can you tell me a little bit about your experiences. |
| 15:13:59 | 23 | JUROR ILANGO:  As part of working for my company, I |
| 15:14:02 | 24 | have applied for several patents and received a dozen. |
| 15:14:09 | 25 | MR. JONES:  And what type of patents did you receive? |

15:14:12  1              JUROR ILANGO:  Electronics design.

15:14:19  2              MR. JONES:  Thank you, sir.

15:14:19  3              JUROR ILANGO:  And electrical software.

15:14:19  4              MR. JONES:  Thank you, sir.  And is there anything

15:14:20  5     about that experience that would cause you to lean one way or

15:14:23  6     the other as we begin this case?

15:14:25  7              JUROR ILANGO:  No.

15:14:27  8              MR. JONES:  Thank you, sir.  I appreciate it.

15:14:28  9              And then anybody else on the second row?

18:00:00  10        (No response)

15:14:36  11             MR. JONES:  Anybody else on the third row?

15:14:38  12        (No response)

15:14:38  13             MR. JONES:  Thank you so much.

15:14:43  14             Now, I know that you all have -- while we're talking

15:14:45  15    about the patent office, I know that you've all watched the

15:14:48  16    film, the federal judiciary film that talks about patent

15:14:52  17    lawsuits.  And one of the things that was stated in the film

15:14:57  18    that the judge had you look at was the fact that one of the

15:15:01  19    issues in a case involving patent infringement may be whether

15:15:05  20    or not the patent is valid.  And I think that may happen in

15:15:10  21    this case with regard to one of the patents in this case, the

15:15:13  22    '557 case.

18:00:00  23             Now, do any of you think it's unfair that a jury

18:00:00  24    might be called upon to look at evidence and to consider

18:00:00  25    evidence and decide whether or not a patent is valid?  Do any

18:00:00   1    of you think that's unfair and we shouldn't operate that way?
18:00:00   2    Anybody?
18:00:00   3        (No response)
15:15:36   4            MR. JONES:  The film also said that -- that there
15:15:40   5    were numerous reasons why that was the case.  But one of the
15:15:45   6    reasons the film said was because jurors like yourselves, if
15:15:49   7    you were chosen and selected to look at the evidence in this
15:15:52   8    case, might consider evidence that the patent office did not
15:15:57   9    consider; that jurors may see things, for example, prior art or
15:16:03  10    prior inventions, that had not been seen by the patent office.
15:16:07  11            Does anybody think that's unfair?
18:00:00  12        (No response)
15:16:11  13            MR. JONES:  Anybody?  Thank you.  I assume by your
15:16:14  14    silence you do not.
15:16:26  15            If we could go to Juror Number 4, Mr. Ziaja.  And I
15:16:33  16    just said your name wrong again.  Tell me one more.
15:16:36  17            JUROR ZIAJA:  Ziaja.
15:16:39  18            MR. JONES:  Ziaja.  I apologize.  I really do.
15:16:41  19            I noticed in reviewing your questionnaires that you
15:16:43  20    were part of developing a startup company in the 1990s.
15:16:50  21            JUROR ZIAJA:  Yes.
15:16:51  22            MR. JONES:  Right, sir?
15:16:52  23            JUROR ZIAJA:  Yes, sir.
15:16:54  24            MR. JONES:  Could you describe that experience to me
15:16:56  25    a little bit.

| | | |
|---|---|---|
| 15:16:57 | 1 | JUROR ZIAJA:  It was a telecommunications support |
| 15:16:59 | 2 | company that did work -- we had contracts with La Quinta |
| 15:17:04 | 3 | Hotels, with Arizona Public Service, and then we got venture |
| 15:17:08 | 4 | funding from Austin Ventures and we sold it off to a company |
| 15:17:11 | 5 | out of Atlanta. |
| 15:17:13 | 6 | MR. JONES:  Thank you, sir.  Is there anything about |
| 15:17:16 | 7 | those experiences that would cause you to lean one way or the |
| 15:17:19 | 8 | other as we start this case? |
| 15:17:20 | 9 | JUROR ZIAJA:  No. |
| 15:17:21 | 10 | MR. JONES:  Thank you.  I appreciate it. |
| 15:17:23 | 11 | And if we could, Ms. Rudolphi? |
| 15:17:32 | 12 | JUROR RUDOLPHI:  Rudolphi. |
| 15:17:34 | 13 | MR. JONES:  I'm sorry.  I'm not winning today. |
| 15:17:40 | 14 | And besides apologizing for mispronouncing your name, |
| 15:17:43 | 15 | with regard to the class action suit you were involved in, were |
| 15:17:46 | 16 | you the class representative? |
| 15:17:48 | 17 | JUROR RUDOLPHI:  Oh, no. |
| 15:17:50 | 18 | MR. JONES:  Okay.  Thank you, ma'am. |
| 15:18:01 | 19 | And, if we could, I'd like to ask Ms. Powell a |
| 15:18:05 | 20 | question, Juror 18. |
| 15:18:10 | 21 | JUROR POWELL:  Hello. |
| 15:18:11 | 22 | MR. JONES:  How are you today? |
| 15:18:14 | 23 | JUROR POWELL:  Good. |
| 15:18:15 | 24 | MR. JONES:  Good.  I noted that you were a service |
| 15:18:17 | 25 | delivery manager for Cisco for 16 years, if I got it right. |

15:18:21   1          Could you describe that job for us, please, ma'am.

15:18:23   2          JUROR POWELL:  I interfaced with customers and with

15:18:26   3   our network operations center with a product that we sold.  And

15:18:32   4   I basically made sure that we delivered the service that we --

15:18:36   5   that they contracted for.

15:18:37   6          MR. JONES:  Thank you, ma'am.  I appreciate it.

15:18:51   7          Could we go to Mr. Smith, Juror 19.  You told me a

15:18:57   8   little bit about your involvement in patent applications and

15:19:01   9   obtaining patents, right, sir?

15:19:02   10          JUROR POWELL:  Yes, sir.

15:19:03   11          MR. JONES:  Jones I also noticed, I've gone back

15:19:06   12   looking at my notes on your questionnaire, and it said that

15:19:08   13   while you were at PGS, my team and I supported multiple

15:19:12   14   application cases, prior art claims, and other technical

15:19:15   15   support.  Can you tell me what that means?

15:19:17   16          JUROR SMITH:  Sure.  So I led an engineering division

15:19:19   17   that was responsible for all the technical support for our

15:19:22   18   legal team for patent applications, defenses, prior art

15:19:26   19   research, et cetera.

15:19:27   20          MR. JONES:  Thank you, sir.  I appreciate it.

15:19:37   21          And if we could go to Juror 22, Ms. Rodriguez?

15:19:45   22          JUROR RODRIGUEZ:  Yes.

15:19:46   23          MR. JONES:  I note that you were a science teacher at

15:19:49   24   one time, right?

15:19:50   25          JUROR RODRIGUEZ:  Correct.

15:19:53  1              MR. JONES:  Could you tell me what subjects you

15:19:55  2  taught and what levels?

15:19:57  3              JUROR RODRIGUEZ:  I taught six through eighth grade.

15:20:00  4  I taught Earth science, physical science, and some biology.

15:20:04  5              MR. JONES:  Thank you, ma'am.

15:20:05  6              And then my next question would be for Ms. Lewis,

15:20:09  7  Juror Number 12, please.

15:20:13  8              JUROR LEWIS:  Yes, sir?

15:20:16  9              MR. JONES:  Ms. Lewis, and I want to thank you.  Voir

15:20:19  10  dire means, I think, speak the truth, and I think you certainly

15:20:22  11  did that on your questionnaire.  And you stated on your

15:20:24  12  questionnaire that, due to your feelings about social media,

15:20:28  13  you could not be fair and impartial in a case involving social

15:20:32  14  media companies, right?

15:20:33  15              JUROR LEWIS:  I think that is correct, yes.

15:20:35  16              MR. JONES:  Thank you so much.  I really appreciate

15:20:38  17  your candor on that, and I'd like to kind of build on that.

15:20:41  18              Thank you, ma'am.  You can sit down.

15:20:42  19              I'd like to kind build on that with regard to the

15:20:45  20  rest of the jury panel.  And there are a lot of feelings about

15:20:49  21  social media companies.  I know that.  And there's distrust of

15:20:53  22  them, and there's dislike of them.

15:20:58  23              My question to you is this:  Does anybody feel that

15:21:01  24  social media companies like Facebook invade people's privacy

15:21:06  25  and do bad things because of that?

```
15:21:11    1              Yes.  Thank you.  And if I could, I'll take you-all
15:21:13    2    one at a time.  And I'll start out on the front row with
15:21:18    3    Ms. Moore-Cation, please.
15:21:24    4              Now, obviously, you have that feeling, and there's
15:21:28    5    nothing wrong with having that feeling.  We all have feelings.
15:21:32    6    The questions we've got to decide here is, because of that
15:21:36    7    feeling, does Facebook in this case start out a little bit
15:21:38    8    behind?
15:21:39    9              JUROR MOORE-CATION:  No, they do not.
15:21:43   10              MR. JONES:  Okay.  We're on an even playing field,
15:21:45   11    right?
15:21:46   12              JUROR MOORE-CATION:  Absolutely.
15:21:48   13              MR. JONES:  And as we go forward, we're going to
15:21:49   14    decide the case based upon the evidence, not based upon any
15:21:51   15    feelings you might have?
15:21:53   16              JUROR MOORE-CATION:  Correct.
15:21:54   17              MR. JONES:  Thank you.  I appreciate it.
15:21:55   18              Okay.  Could we go down.  Who else raised their hand
15:21:58   19    on the front row that said that?  I think we're down at the
15:22:02   20    very end, Mr. Chang.
15:22:06   21              JUROR RUDOLPHI:  That would be me also.
15:22:07   22              MR. JONES:  Okay.  I'm sorry.  I didn't see you, did
15:22:10   23    I.
15:22:11   24              JUROR RUDOLPHI:  My sentiment is the same as her.
15:22:15   25              MR. JONES:  Excuse me?
```

```
15:22:16   1              JUROR RUDOLPHI:  My sentiment is the same.  They
15:22:19   2   won't start on the back end.
15:22:20   3              Okay.  Thank you, Ms. Rudolphi.
15:22:25   4              MR. JONES:  Mr. Chang, again, you have feelings,
15:22:28   5   obviously, about social media companies.  My question to you is
15:22:31   6   pretty simple:  Does everybody start out here on an even
15:22:35   7   playing field?  Do we start out the same?  Or is that something
15:22:38   8   that causes you to feel one side is ahead of the other?
15:22:42   9              JUROR CHANG:  Well, I can think it starts even-keel.
15:22:46  10   I think if you were to push me and ask me that question again,
15:22:50  11   I probably would see you in a negative deficit in terms of not
15:22:55  12   even-keel.  I get this case is not about merits of social media
15:23:03  13   companies, but it is in my mind.
15:23:06  14              MR. JONES:  Certainly.  Well, let me -- let me ask
15:23:09  15   you just a couple of more questions about that.  You know,
15:23:13  16   before you've seen any evidence in this case, before you've
15:23:17  17   seen anything, is that something -- your feelings about social
15:23:22  18   media companies and Facebook, is that something that Facebook
15:23:25  19   would have to overcome as it proceeds in this case?
15:23:29  20              JUROR CHANG:  Possibly.  Like if it's a scale one to
15:23:35  21   five, it would be close to four.
15:23:37  22              MR. JONES:  I got you.  And is that something that,
15:23:40  23   you know, you might hold Facebook to a little higher standard
15:23:45  24   than the other party because of that, right?
15:23:48  25              JUROR CHANG:  Correct.
```

| | | |
|---|---|---|
| 15:23:49 | 1 | MR. JONES:  And is it something, your feelings, |
| 15:23:52 | 2 | something that you would -- you know, whether you wanted it to |
| 15:23:56 | 3 | or not, if a Facebook employee gets up there, you might, you |
| 15:24:00 | 4 | know, test their evidence a little harder just because of who |
| 15:24:04 | 5 | they work for?  Is that fair? |
| 15:24:06 | 6 | JUROR CHANG:  That's fair. |
| 15:24:07 | 7 | MR. JONES:  Thank you, sir.  I appreciate it.  Thank |
| 15:24:09 | 8 | you so much for your candor.  I really do appreciate it.  Did I |
| 15:24:13 | 9 | miss anybody else on the front row with that question? |
| 15:24:16 | 10 | (No response) |
| 15:24:16 | 11 | MR. JONES:  Okay.  Let's go to the second row if we |
| 15:24:18 | 12 | could.  Who has those feelings on the second row?  Yes.  Thank |
| 15:24:23 | 13 | you.  Mr. Champlin, right, sir? |
| 15:24:31 | 14 | JUROR CHAMPLIN:  Yes, sir. |
| 15:24:34 | 15 | MR. JONES:  Okay.  You've heard my questions before. |
| 15:24:35 | 16 | What I'm going to ask you is this:  Obviously, you have strong |
| 15:24:38 | 17 | feelings about social media companies; is that right, sir? |
| 15:24:41 | 18 | JUROR CHAMPLIN:  Yes, sir. |
| 15:24:42 | 19 | MR. JONES:  And, obviously, we all know Facebook is a |
| 15:24:44 | 20 | social media company.  So do they start out a little bit behind |
| 15:24:48 | 21 | in this case before we ever get going? |
| 15:24:51 | 22 | JUROR CHAMPLIN:  I wouldn't think so in this case. |
| 15:24:53 | 23 | MR. JONES:  Okay.  Everybody is on even footing. |
| 15:24:56 | 24 | JUROR CHAMPLIN:  Yes. |
| 15:24:58 | 25 | MR. JONES:  Thank you, sir.  I appreciate it.  Thank |

| | | |
|---|---|---|
| 15:24:59 | 1 | you for your candor. |
| 15:25:02 | 2 | JUROR ESTES: Ms. Estes. |
| 15:25:03 | 3 | MR. JONES: Ms. Estes. I appreciate you helping me |
| 15:25:06 | 4 | out. |
| 15:25:07 | 5 | JUROR ESTES: No worries. |
| 15:25:08 | 6 | MR. JONES: Very kind of you. And my question to you |
| 15:25:10 | 7 | is you're telling me I have strong feelings about social media |
| 15:25:12 | 8 | companies. |
| 15:25:12 | 9 | JUROR ESTES: From a personal standpoint, absolutely. |
| 15:25:15 | 10 | I don't use, won't use it. Big waste of time. Now, on the |
| 15:25:19 | 11 | business side of things, obviously, the company uses it, you |
| 15:25:22 | 12 | know, from an advertising standpoint. So ... |
| 15:25:25 | 13 | MR. JONES: Great. And, as we start this case, do |
| 15:25:27 | 14 | those feelings play any part in the way you feel about the |
| 15:25:31 | 15 | parties and the evidence that's about to come in? Do we all |
| 15:25:34 | 16 | start in the same place. |
| 15:25:35 | 17 | JUROR ESTES: Probably not. |
| 15:25:37 | 18 | MR. JONES: Okay. So before you hear any evidence in |
| 15:25:40 | 19 | this case -- and, again, I totally appreciate your candor. |
| 15:25:43 | 20 | Before you hear any evidence in this case, what you're telling |
| 15:25:46 | 21 | me is, Mr. Jones, you know, your client is starting out a bit |
| 15:25:49 | 22 | behind, sir. |
| 15:25:49 | 23 | JUROR ESTES: A very small part behind. |
| 15:25:52 | 24 | MR. JONES: But we are behind. Fair enough. |
| 15:25:54 | 25 | JUROR ESTES: Uh-huh. |

15:25:56    1            MR. JONES:  Again the same question, just as I asked

15:25:59    2    Mr. Chang, is it just due to the fact that we're Facebook and

15:26:00    3    we're a social media company, you're going to hold us to a

15:26:03    4    little higher standard than maybe you would another party?

15:26:06    5            JUROR ESTES:  Yes, sir.

15:26:07    6            MR. JONES:  And, again, when you hear testimony from,

15:26:09    7    say, a Facebook employee, is that also going to say, you know,

15:26:13    8    I'm going to listen a little harder to what he has to say just

15:26:15    9    because who he works for?

15:26:16   10            JUROR ESTES:  Not necessarily.

15:26:18   11            MR. JONES:  Not necessarily.  Thank you.  I

15:26:20   12    appreciate it.  Thank you so much.

15:26:26   13            Yes.  Mr. Ilango, you have strong feelings about

15:26:31   14    social media companies, right, sir?

15:26:32   15            JUROR ILANGO:  Yes, I do.

15:26:33   16            MR. JONES:  Is there anything about those feelings

15:26:36   17    that means that my client, Facebook, before you hear any

15:26:39   18    evidence in this case starts out just a little bit behind or

15:26:42   19    behind?

15:26:43   20            JUROR ILANGO:  Yes, they do.

15:26:44   21            MR. JONES:  Okay.  And, again, you know, with regard

15:26:47   22    to my client, is it such that, you know, you're just going to

15:26:50   23    hold my client to a higher standard than you might some other

15:26:53   24    party just because of your strong feelings against social media

15:26:57   25    companies and Facebook, right, sir?

| | | |
|---|---|---|
| 15:26:59 | 1 | JUROR ILANGO:  Yes. |
| 15:27:01 | 2 | MR. JONES:  And, again, if you hear testimony from a |
| 15:27:05 | 3 | Facebook employee, you're going to -- just because of your |
| 15:27:10 | 4 | feelings, you're going to judge it little more harshly due to |
| 15:27:14 | 5 | who they work for, right, sir? |
| 15:27:15 | 6 | JUROR ILANGO:  Not the employee, no. |
| 15:27:17 | 7 | MR. JONES:  Not the employees? |
| 15:27:19 | 8 | JUROR ILANGO:  Just the company. |
| 15:27:21 | 9 | MR. JONES:  Thank you so much.  I appreciate your |
| 15:27:23 | 10 | candor.  And I think, yes, I've already talked to you.  Thank |
| 15:27:29 | 11 | you so much, Ms. Lewis.  I appreciate it. |
| 15:27:31 | 12 | And I think we're to Ms. Stone, right?  And can you |
| 15:27:36 | 13 | tell me about your feelings with regard to social media |
| 15:27:40 | 14 | companies. |
| 15:27:40 | 15 | JUROR STONE:  Yeah.  So I think Facebook would be a |
| 15:27:43 | 16 | little bit behind. |
| 15:27:44 | 17 | MR. JONES:  Thank you.  So due to the fact the way |
| 15:27:47 | 18 | you feel about social media companies, Facebook in |
| 15:27:50 | 19 | particular -- and I appreciate your candor -- you're just |
| 15:27:52 | 20 | telling me Facebook starts behind in this case before any |
| 15:27:55 | 21 | evidence has been presented, right, ma'am? |
| 15:27:57 | 22 | JUROR STONE:  Yes. |
| 15:27:59 | 23 | MR. JONES:  And, again, similar questions.  I'd just |
| 15:28:01 | 24 | like to ask you this:  In this case would you hold Facebook, |
| 15:28:04 | 25 | due to your feelings in this regard, to a higher standard than |

15:28:08    1    you might some other party?

15:28:10    2                JUROR STONE:  Yes.

15:28:11    3                MR. JONES:  Okay.  And when Facebook employees -- and

15:28:13    4    they're going to.  They're going to get up and testify.  Would

15:28:15    5    you judge their testimony a little more harshly than others

15:28:19    6    based upon your feelings; is that right?

15:28:21    7                JUROR STONE:  Yes.

15:28:22    8                MR. JONES:  Thank you, ma'am.  I certainly appreciate

15:28:24    9    your candor.

15:28:30   10                And on the third row, have I missed anybody?  Yes,

15:28:32   11    ma'am.  Ms. Rodriguez?

15:28:33   12                JUROR RODRIGUEZ:  I raised my hand in response to

15:28:36   13    what you were saying about social media using data from its

15:28:41   14    users.

15:28:41   15                MR. JONES:  Right.

15:28:42   16                JUROR RODRIGUEZ:  And I responded to that.

15:28:45   17                MR. JONES:  I understand.  And I would then kind of

15:28:47   18    drill down as I've done with your other panel members, and I

15:28:50   19    certainly appreciate the answers they've given me.  Is there

15:28:54   20    anything about that, that before we ever have any evidence from

15:28:57   21    that witness stand in this case, that causes you to feel that

15:29:01   22    Facebook's a little behind in this case already?

15:29:04   23                JUROR RODRIGUEZ:  No.

15:29:05   24                MR. JONES:  Okay.  Thank you, ma'am.  I appreciate

15:29:07   25    your candor.  Thanks so much.

| 15:29:25 | 1 | Now, Facebook and other social media companies have |
| 15:29:28 | 2 | been in the news lately with regard to a number of items, but |
| 15:29:36 | 3 | particularly with regard to politics.  And I'm not going to ask |
| 15:29:40 | 4 | anybody about any questions about their political beliefs.  I'm |
| 15:29:42 | 5 | just going to ask you this:  Does anybody hold a political |
| 15:29:47 | 6 | belief of any kind such that your political belief causes you |
| 15:29:53 | 7 | to think that Facebook is not a good corporate entity? |
| 15:29:56 | 8 | Do any of you hold political beliefs that cause you |
| 15:30:02 | 9 | to feel that way? |
| 15:30:03 | 10 | Yes, sir, Mr. Chang.  Thank you, sir.  I appreciate |
| 15:30:06 | 11 | that. |
| 15:30:09 | 12 | One final thing.  Did somebody else raise your hand |
| 15:30:13 | 13 | and I missed?  Okay.  Sorry.  One final thing about Facebook |
| 15:30:16 | 14 | inquiries.  Recently Facebook was involved in a class action |
| 15:30:19 | 15 | suit totally unrelated to the issues in this case, and notices |
| 15:30:23 | 16 | recently went out about this class action.  Has anybody |
| 15:30:26 | 17 | received a notice like that? |
| 15:30:29 | 18 | (No response) |
| 15:30:31 | 19 | MR. JONES:  Thank you.  Now, excluding Mr. Kalish, |
| 15:30:37 | 20 | because he was kind enough to give us a lot of information |
| 15:30:40 | 21 | about his special knowledge, after hearing Judge Yeakel's |
| 15:30:46 | 22 | summary of this case, does anyone think, you know, after |
| 15:30:52 | 23 | hearing him talk about this case, I have some special knowledge |
| 15:30:56 | 24 | that applies to this case?  Anybody feel like that as they sit |
| 15:31:01 | 25 | here? |

```
15:31:03   1        (No response)
15:31:03   2            MR. JONES:  Thank you.  Now, a number of you have
15:31:10   3   started businesses.  I noted that.  And many of you own and
15:31:16   4   operate businesses.  And I would like to ask this question to
15:31:22   5   the group as a whole because there's so many of you that do
15:31:26   6   that.  And that is this:
15:31:27   7            Does anyone feel, from having started up a business
15:31:33   8   or owned and operated a business, that their competitors in the
15:31:38   9   marketplace are unfair to them?  Does anybody feel like that?
15:31:46  10   Does anybody feel like I've been in business for a long time
15:31:50  11   and my competitors treat me very unfairly?
15:31:53  12        (No response)
15:31:53  13            MR. JONES:  Does anybody feel like, as a general
15:31:56  14   rule -- this is just a general rule -- that large corporations
15:31:59  15   take advantage of smaller businesses?  Anybody feel like that.
15:32:06  16            Mr. Chang.  Thank you, sir.
15:32:09  17            Now, if we could, could I ask you one more question,
15:32:13  18   Mr. Chang.  Excuse me?  Thank you.  I've got a few more.  Okay.
15:32:16  19            Mr. Chang, if I could ask you a question, is your
15:32:29  20   feeling in that regard, larger corporations taking advantage of
15:32:33  21   smaller corporations, is that something that might affect your
15:32:36  22   deliberations?
15:32:37  23            JUROR CHANG:  Possibly.  Again, just because it's
15:32:42  24   hard to ignore as far as the concept goes.
15:32:46  25            MR. JONES:  Thank you, sir.  Let me ask it to you
```

| | | |
|---|---|---|
| 15:32:49 | 1 | this way:  You know, in this case there is no doubt that Voxer |
| 15:32:54 | 2 | is not as large as Facebook is.  Would that fact mean that you |
| 15:33:00 | 3 | would feel the need to kind of protect them in the case as a |
| 15:33:06 | 4 | juror?  You would feel that way going into the case? |
| 15:33:09 | 5 | JUROR CHANG:  Not necessarily, no. |
| 15:33:13 | 6 | MR. JONES:  Thank you, sir.  I appreciate it. |
| 15:33:15 | 7 | And I missed somebody else on the second row, I |
| 15:33:19 | 8 | think.  Yes.  Mr. Ilango. |
| 15:33:28 | 9 | And I'd ask you just the same question I asked him. |
| 15:33:31 | 10 | You know, in this case, like I just said, Voxer is no doubt |
| 15:33:35 | 11 | going to be smaller than Facebook.  And my question to you:  Do |
| 15:33:38 | 12 | you feel like you might need to take care of the smaller |
| 15:33:42 | 13 | business in a lawsuit with a larger business? |
| 15:33:44 | 14 | JUROR ILANGO:  No. |
| 15:33:46 | 15 | MR. JONES:  Thank you, sir.  So they both -- size |
| 15:33:48 | 16 | would play no role whatsoever in your decision in this case? |
| 15:33:51 | 17 | JUROR ILANGO:  No. |
| 15:33:52 | 18 | MR. JONES:  Thank you, sir. |
| 15:33:53 | 19 | THE COURT:  And I believe, finally, somebody on the |
| 15:33:56 | 20 | back row.  Ms. Rodriguez?  Yes, ma'am. |
| 15:33:59 | 21 | JUROR RODRIGUEZ:  So you had asked if we think that |
| 15:34:05 | 22 | big companies take advantage of smaller ones? |
| 15:34:07 | 23 | MR. JONES:  Yes, ma'am. |
| 15:34:09 | 24 | JUROR RODRIGUEZ:  And I do believe that. |
| 15:34:13 | 25 | MR. JONES:  And my question to you would be this: |

| | | |
|---|---|---|
| 15:34:13 | 1 | Would that play any role in your deliberations in this case? |
| 15:34:16 | 2 | JUROR RODRIGUEZ:  No. |
| 15:34:17 | 3 | MR. JONES:  Thank you.  I appreciate it. |
| 15:34:25 | 4 | Yes, sir.  Mr. Kalish.  I'm sorry. |
| 15:34:28 | 5 | JUROR KALISH:  I have some issues with Facebook, and |
| 15:34:31 | 6 | I think it's the natural order of things, for larger companies |
| 15:34:35 | 7 | to take advantage of smaller companies when they can.  I work |
| 15:34:38 | 8 | for a company that was definitely taken advantage of by one of |
| 15:34:41 | 9 | the largest companies in the world until recently.  We turned |
| 15:34:44 | 10 | the tables on them.  But I think that I might be somewhat more |
| 15:34:49 | 11 | skeptical of Facebook and perhaps not -- maybe put a little bit |
| 15:34:55 | 12 | more weight on the Voxer evidence and witnesses. |
| 15:35:04 | 13 | MR. JONES:  Okay.  And I appreciate your candor, |
| 15:35:06 | 14 | Mr. Kalish.  It's very kind of you to tell me that. |
| 15:35:09 | 15 | So, if I get it right, what you're telling me is |
| 15:35:13 | 16 | that, look, Mr. Jones, as we start out this case, I want you to |
| 15:35:18 | 17 | know I'm going to have skepticism toward whatever evidence is |
| 15:35:23 | 18 | presented by Facebook.  Fair enough? |
| 15:35:25 | 19 | JUROR KALISH:  I would like to say no, but I think |
| 15:35:28 | 20 | that I would probably have that in the back of my mind, yes. |
| 15:35:31 | 21 | MR. JONES:  Yeah.  And that's something that -- that |
| 15:35:34 | 22 | you feel before we begin the evidence, right, sir?  Before any |
| 15:35:39 | 23 | evidence comes in place? |
| 15:35:40 | 24 | JUROR KALISH:  Right. |
| 15:35:40 | 25 | MR. JONES:  Right, sir.  And that's something that |

15:35:43   1   will affect the way you deliberate and view the evidence, or

15:35:46   2   you're at least afraid it would?  Fair enough, sir.

15:35:48   3            JUROR KALISH:  I think that it's possible that I

15:35:50   4   would try not to.  But I think I -- like I said, I think I

15:35:54   5   would be more skeptical, and I think it's a David-Goliath type

15:36:02   6   situation.

15:36:03   7            MR. JONES:  Thank you, sir.  I appreciate it.  Thank

15:36:05   8   you so much.

15:36:06   9            Well, we're nearing the end of my time here.  I'll

15:36:09  10   tell you what.  I'll try to jump in and just ask just two more

15:36:12  11   questions or two more subject matters.

15:36:14  12            You've heard Judge Yeakel summarize this case.  Is

15:36:21  13   there anybody that, when they heard about it, kind of had a

15:36:28  14   déjà vu kind of reaction to it?  Kind of like, you know, hey,

15:36:31  15   I've seen that movie before, I have some similar experience, or

15:36:35  16   I know about certain circumstances that are just like that or

15:36:40  17   very similar to that?

15:36:41  18            Did anybody get that feeling or have that opinion

15:36:44  19   when they heard Judge Yeakel summarize the case?

15:36:47  20       (No response)

15:36:47  21            MR. JONES:  Anybody?  Thank you.

15:36:51  22            My final question to you is this, but before I ask

15:36:55  23   it, I just want again thank you for your time.  The good news I

15:36:59  24   can tell you is I'm the last lawyer you're going to talk to

15:37:02  25   today, so I know you're glad about that.  So thank you so much

15:37:06  1   for your time.  You've been very patient with me.

15:37:08  2           My question to you is this:  I take representing my

15:37:11  3   clients Meta, Facebook, Instagram very, very seriously and my

15:37:18  4   obligations to Mr. Poffenberger.  As a result of that, I know I

15:37:22  5   may not have asked the right question just because I'm not

15:37:26  6   smart enough to.  And my question to you is finally this:  Is

15:37:30  7   there something that we haven't talked about that you say, you

15:37:33  8   know, in the back of your mind you're thinking, Mr. Jones, you

15:37:37  9   really need to know this about whether or not I can be a fair

15:37:40  10  juror to your clients.  You really need to know this, but you

15:37:43  11  haven't asked the right question.

15:37:45  12          Is there anything like that in anybody's mind they

15:37:49  13  could tell me about?  Anybody?  Yes, ma'am.

15:37:55  14          JUROR MOORE-CATION:  I would certainly hope this does

15:37:58  15  not come into play, but I think it's important for me to say

15:38:01  16  that I am very pro-small startup companies.

15:38:04  17          MR. JONES:  Yes, ma'am.

15:38:07  18          JUROR MOORE-CATION:  I don't think in this particular

15:38:08  19  case that it would be an obstacle, but I do have a stake in

15:38:16  20  several, and I just tend to really support entrepreneurs and

15:38:23  21  innovators.  And you should probably know that.  That could be

15:38:28  22  my bias.

15:38:30  23          MR. JONES:  Thank you so much.

15:38:32  24          JUROR MOORE-CATION:  I hope not.

15:38:34  25          MR. JONES:  Thank you so much.  You're so kind to

```
15:38:36   1  tell me that.  You know where I'm going to go next, and that's
15:38:38   2  simply this:  Is that something that you fear or you think may
15:38:41   3  affect your deliberations, or do you think you can put that
15:38:43   4  aside?
15:38:43   5             JUROR MOORE-CATION:  I hope not.  I believe that it
15:38:47   6  would not affect it.  I hope it does not affect it.  But I am
15:38:51   7  aware that I might carry that bias.
15:38:55   8             MR. JONES:  Thank you, ma'am.  I appreciate your
15:38:57   9  answer.  I thank each and every one of you.  I thank you very
15:39:01  10  much.
15:39:05  11             THE COURT:  Pardon me for a minute.  I have to keep
15:39:16  12  notes up here, too.
15:39:17  13             Ladies and gentlemen, the last couple of questions I
15:39:20  14  have for you I think the lawyers have covered, but I'm going do
15:39:24  15  ask them in my way.  Other than what you have already stated,
15:39:29  16  either in response to my questions or in response to any of the
15:39:32  17  lawyers' questions, do you know of any reason why you might be
15:39:36  18  prejudice for or against any of the parties because of the
15:39:41  19  nature of this lawsuit or any other reason?
15:39:46  20      (No response)
15:39:46  21             THE COURT:  If you were one of the parties in this
15:39:49  22  case, do you know of any reason that you haven't previously
15:39:53  23  stated why you would not be content to have the case tried by
15:39:57  24  someone in your frame of mind?
18:00:00  25      (No response)
```

15:40:02  1          THE COURT:  And at the risk of being overly

15:40:04  2  redundant, but that's what I do to try to get a fair and

15:40:08  3  impartial jury, can you think of any other matter not yet

15:40:11  4  touched upon which you should call to the court's attention

15:40:15  5  which may have some bearing on your qualifications as a juror

15:40:19  6  or which might prevent you from rendering a fair and impartial

15:40:23  7  verdict in this case?

18:00:00  8       (No response)

15:40:26  9          THE COURT:  Thank you.  Let me see the lawyers at the

15:40:29  10  bench up here on this side for a moment, please.

15:40:32  11       (At the bench)

15:40:43  12          THE COURT:  Okay.  Two to a side.  That's better than

15:40:46  13  clearing out all the tables.

15:40:48  14          It is my practice right now where I would release the

15:40:53  15  panel and we would take up your challenges for cause and the

15:40:55  16  other things that I've previously mentioned.  Are there any

15:40:59  17  jurors that you want held back for a moment to have a bench

15:41:05  18  conference with regarding matters that you might want to

15:41:10  19  challenge them for cause on, or are you satisfied you have all

15:41:14  20  the information you need to make your challenges for cause?

15:41:20  21          MR. THOMPSON:  None from Plaintiff, Your Honor.

15:41:23  22          THE COURT:  You good too?

15:41:24  23          MR. JONES:  Yes.

15:41:25  24          THE COURT:  Then I'm going to release them for I

15:41:27  25  think about 30 minutes, and that should give us time to take up

| | | |
|---|---|---|
| 15:41:30 | 1 | the challenges for cause and the other things and for you to |
| 15:41:32 | 2 | mark your lists, and then we'll get them back in here.  That |
| 15:41:35 | 3 | work for everybody? |
| 15:41:36 | 4 | MR. THOMPSON:  Yes, Your Honor. |
| 15:41:38 | 5 | MR. JONES:  Yes, Your Honor. |
| 15:41:40 | 6 | (In open court) |
| 15:41:40 | 7 | THE COURT:  Ladies and gentlemen of the jury panel, |
| 15:41:41 | 8 | at this time I'm going to give you a break.  We're not through, |
| 15:41:45 | 9 | but we're going to finish up.  There's some matters I need to |
| 15:41:49 | 10 | take up with the lawyers, so I'm going to give you a break |
| 15:41:54 | 11 | until 4:15.  Don't go far.  Don't come back in the courtroom, |
| 15:42:00 | 12 | but by a little before 4:15, be out there in the area to where |
| 15:42:05 | 13 | the staff can bring you back in to seat you when we let you |
| 15:42:09 | 14 | know that I'm through with my discussion with the lawyers. |
| 15:42:12 | 15 | Now, I know we've got at least one schoolteacher on |
| 15:42:17 | 16 | this panel, so this is just like school.  Look to your right, |
| 15:42:20 | 17 | look to your left, know who your neighbor is, because you need |
| 15:42:23 | 18 | to be seated in the same seats that you're in now when you come |
| 15:42:27 | 19 | back in the courtroom.  So be sure you do that. |
| 15:42:30 | 20 | So at this time you'll be in recess until 4:15. |
| 18:00:00 | 21 | (Jury panel recessed) |
| 15:43:28 | 22 | THE COURT:  Let the record reflect that the jury |
| 15:43:29 | 23 | panel has been recessed from the courtroom.  There are no |
| 15:43:33 | 24 | prospective jurors remaining in the courtroom. |
| 15:43:42 | 25 | I indicated to you earlier today that I would be |

15:43:44  1    keeping track of people that I thought would be people that

15:43:47  2    would be problem jurors and urged you to do the same.  I didn't

15:43:56  3    find any that I thought would be problem jurors or that would

15:43:58  4    have a problem hearing this case.  I'm sure you-all heard some

15:44:03  5    comments from jurors that might lead to your challenges for

15:44:06  6    cause.

15:44:06  7              But did anyone come up with anybody they would like

15:44:09  8    to discuss that we should determine whether just to exclude on

15:44:13  9    general principles or not?

15:44:15  10             I'll start with the plaintiff, not because I favor

15:44:19  11   the plaintiff, but I read from top to bottom, and in every case

15:44:22  12   I've ever tried the plaintiff has been above the "v."

15:44:26  13             So, Mr. Thompson, did you I have anybody listed?

15:44:30  14             MR. THOMPSON:  None from our side, Your Honor?

15:44:32  15             THE COURT:  And how about you, Mr. Jones?

15:44:35  16             MR. JONES:  Your Honor, I have some challenges for

15:44:36  17   cause, but I have none that I think follow in the category you

15:44:37  18   just mentioned.

15:44:38  19             THE COURT:  All right.  Then I'm going to start with

15:44:40  20   the plaintiff again because that's my default.  Mr. Thompson,

15:44:45  21   challenges for cause?

15:44:47  22             MR. THOMPSON:  Your Honor, I would -- we would

15:44:53  23   challenge Number 17.  I think it was pretty obvious that

15:44:59  24   Mr. Champlin, he has issues with how the patent office works.

15:45:05  25   He has issues with the patent process.  It seems to me he's not

15:45:08  1  going to be able to be a fair and impartial juror on this

15:45:12  2  particular case.

15:45:14  3       THE COURT:  All right.  Let me hear a response from

15:45:17  4  Mr. Jones.

15:45:18  5       MR. JONES:  Your Honor, I didn't hear anything from

15:45:21  6  Mr. Champlin that would result in rising to the level of cause.

15:45:25  7  He does have certain feelings, but he didn't say any of those

15:45:29  8  feelings were going to affect his deliberations.  And, as such,

15:45:32  9  I don't think he met the appropriate standard to state a

15:45:35  10  challenge for cause.

15:45:36  11       THE COURT:  I listened to him very carefully, and I

15:45:42  12  believe the last statement he made to whoever he spoke to first

15:45:46  13  said he could be fair.  I take him at his word, so the

15:45:49  14  challenge for cause to Juror Number 17 is overruled.

15:45:58  15       Mr. Thompson, others?

15:45:59  16       MR. THOMPSON:  No, Your Honor.  No more challenges

15:46:01  17  for cause from Plaintiff.

15:46:02  18       THE COURT:  All right.  From the defendant?

15:46:04  19       MR. JONES:  Yes, Your Honor.

15:46:06  20       THE COURT:  Mr. Jones?

15:46:07  21       MR. JONES:  We would challenge for cause Juror

15:46:10  22  Number 10 Mr. Chang.  He said due to his feelings about social

15:46:15  23  media companies, Facebook, and other matters, that he had

15:46:18  24  preexisting feelings and opinions that would affect his

15:46:22  25  deliberations.  And he could not assure us that he could put

15:46:26  1   those aside and they wouldn't affect his deliberations.  In

15:46:29  2   fact, he said my client started out behind.  That is our

15:46:33  3   challenge for cause, Your Honor.

15:46:34  4           THE COURT:  All right.  Mr. Thompson?

15:46:35  5           MR. THOMPSON:  I'll let Mr. Chang's statements speak

15:46:38  6   for themselves, Your Honor.

15:46:39  7           THE COURT:  Well, I'm going to tell you how I heard

15:46:42  8   him, and I agree with the defendant.  So Juror Number 10, the

15:46:47  9   challenge for cause is sustained, and Juror Number 10 is off.

15:46:53  10          MR. THOMPSON:  That's the best I could come up with,

15:46:55  11  Your Honor.

15:46:58  12          THE COURT:  I appreciate your candor, but we all sit

15:47:00  13  here and hear the same things.  And we've tried cases and we

15:47:03  14  just understand how it's going to work, so I appreciate that.

15:47:08  15          MR. JONES:  We would next challenge for cause

15:47:10  16  Ms. Lewis, who on the form said she could not be a fair and

15:47:14  17  impartial juror in any case involving a social media company.

15:47:18  18  She has confirmed now on the record, Your Honor, and I think

15:47:22  19  she meets every requirement that's needed to be stricken for

15:47:26  20  cause.

15:47:28  21          MR. THOMPSON:  Same response, Your Honor.

15:47:30  22          THE COURT:  Yep.  That's exactly the way I heard it,

15:47:32  23  so the challenge for cause is sustained, and Juror Number 12 is

15:47:41  24  stricken.

15:47:43  25          MR. JONES:  Your Honor, our next challenge for cause

15:47:45  1   would be Mr. Ilango, who said he had strong feelings against my

15:47:49  2   client, Facebook.  He said that he had strong feelings about

15:47:53  3   large corporations and the way they operated and that it would

15:47:56  4   affect the way he deliberated and viewed the evidence.  And he

15:48:00  5   did not know that he could put it behind him, so I would

15:48:02  6   challenge him for cause also.

15:48:05  7          MR. THOMPSON:  Your Honor, I thought that Mr. Ilango

15:48:08  8   at some point said that he could put those things aside.  I may

15:48:10  9   be wrong, but that he had strong feelings but he could put

15:48:13  10  those aside for this particular case.

15:48:15  11         THE COURT:  I didn't hear him say he could put them

15:48:18  12  aside.  I did her him say pretty strongly that Facebook started

15:48:25  13  behind, and I thought he said that strongly enough to where he

15:48:30  14  would have a problem rehabilitating himself.  So I will sustain

15:48:34  15  the challenge for cause to Juror 14.

15:48:41  16         MR. JONES:  Your Honor, my next challenge for cause

15:48:44  17  would be Juror Number 15, Ms. Estes, who, again, testified

15:48:47  18  that -- or who stated that, due to her feelings about larger

15:48:54  19  companies over smaller companies and the way they take

15:48:57  20  advantage of them, as well as about my client, Facebook, that

15:49:01  21  she had preexisting feelings that would cause my client to

15:49:04  22  start out behind.  And there was some impression that she

15:49:07  23  wouldn't put aside or couldn't guarantee if she could put aside

15:49:11  24  as she looked at the evidence, so we would challenge her for

15:49:13  25  cause also.

| | | |
|---|---|---|
| 15:49:15 | 1 | MR. THOMPSON:  Your Honor, I thought that I heard |
| 15:49:18 | 2 | Mrs. Estes -- I know she had some strong opinions, but I |
| 15:49:20 | 3 | thought she had said that she would do her best to set those |
| 15:49:23 | 4 | aside to be a juror on this case.  But I may have misunderstood |
| 15:49:27 | 5 | her. |
| 15:49:28 | 6 | THE COURT:  Well, I also think that she said she |
| 15:49:33 | 7 | could set those aside, so I'm going to overrule the challenge |
| 15:49:40 | 8 | for cause to Juror Number 15. |
| 15:49:45 | 9 | MR. JONES:  Thank you.  And then my final challenge |
| 15:49:47 | 10 | for cause, I believe, unless my colleagues tell me I've missed |
| 15:49:50 | 11 | somebody -- and I may have -- but, anyway, would be Juror |
| 15:49:55 | 12 | Number 21, Mr. Kalish who said that, due to his experiences in |
| 15:50:01 | 13 | the workplace, that he could not be fair to Facebook. |
| 15:50:04 | 14 | MR. THOMPSON:  I'll defer to the Court on that one. |
| 15:50:07 | 15 | THE COURT:  Well, I'm going to take the easy way out. |
| 15:50:10 | 16 | Unless Mr. Jones is given a note that he's missed somebody in |
| 15:50:15 | 17 | between, we're not going to get to 21 anyway, so I won't rule |
| 15:50:18 | 18 | on that one. |
| 15:50:21 | 19 | MR. VAN NEST:  We did miss someone, Your Honor. |
| 15:50:24 | 20 | THE COURT:  So now tell me which one you missed. |
| 15:50:27 | 21 | MR. JONES:  It would be Juror Number 11, Ms. Stone, |
| 15:50:30 | 22 | who said that -- my memory of this is that she said that, due |
| 15:50:35 | 23 | to her feelings about social media companies, that Facebook |
| 15:50:39 | 24 | would be starting out behind and that she did not guarantee us |
| 15:50:45 | 25 | and say for certain that she could put those feelings aside in |

| | | |
|---|---|---|
| 15:50:49 | 1 | considering the evidence. |
| 15:50:54 | 2 | MR. VAN NEST:  Your Honor, may I mention one thing? |
| 15:50:55 | 3 | I apologize.  May I mention one thing about her as well? |
| 15:50:59 | 4 | THE COURT:  Yes. |
| 15:51:00 | 5 | MR. VAN NEST:  She actually did say that she would be |
| 15:51:02 | 6 | holding our employees to a much higher standard in listening to |
| 15:51:06 | 7 | their testimony.  That was in addition to saying that the |
| 15:51:09 | 8 | company would start out behind.  That is Ms. stone. |
| 15:51:16 | 9 | THE COURT:  And you don't think that would be |
| 15:51:18 | 10 | deserving of that, Mr. Jones? |
| 15:51:20 | 11 | (Laughter) |
| 15:51:20 | 12 | MR. JONES:  I hope not. |
| 15:51:21 | 13 | MR. THOMPSON:  Your Honor, I didn't hear her confirm |
| 15:51:27 | 14 | with that level of, I guess, power that she was going to -- she |
| 15:51:30 | 15 | couldn't set things aside.  I did understand that she didn't |
| 15:51:33 | 16 | like social media companies and didn't use it. |
| 15:51:38 | 17 | THE COURT:  My notes indicate concern about being |
| 15:51:41 | 18 | able to set those aside, so I'm going to sustain the challenge |
| 15:51:43 | 19 | for cause to Juror 11.  So is that it on challenges for cause. |
| 15:51:51 | 20 | MR. JONES:  Yes, sir, Your Honor. |
| 15:52:10 | 21 | THE COURT:  So Juror Number 18 is the last juror in |
| 15:52:12 | 22 | your strike range; is that correct?  Does everybody agree with |
| 15:52:15 | 23 | that. |
| 15:52:15 | 24 | MR. THOMPSON:  I agree with that, Your Honor. |
| 15:52:23 | 25 | MR. VAN NEST:  Juror 18 is the last one? |

| | | |
|---|---|---|
| 15:52:25 | 1 | THE COURT:  Yes.  As long as you agree with that. |
| 15:52:28 | 2 | MR. VAN NEST:  We do. |
| 15:52:28 | 3 | THE COURT:  Because I don't want anybody, unless you |
| 15:52:31 | 4 | just get carried away, to strike outside your strike range.  I |
| 15:52:35 | 5 | don't want you to do it because you over ... |
| 15:52:37 | 6 | All right.  Then that's what we'll do.  I'll give |
| 15:52:41 | 7 | you -- what do you need?  15 minutes maybe? |
| 15:52:44 | 8 | MR. THOMPSON:  That would be great. |
| 15:52:45 | 9 | THE COURT:  All right.  We've got the jury coming |
| 15:52:47 | 10 | back at 4:15.  I'll be back at 4:10 or so.  Actually, when you |
| 15:52:52 | 11 | get through with your strikes, if you'll gave them to |
| 15:52:54 | 12 | Ms. Oakes, she'll bring them to me and I'll look at it and come |
| 15:52:57 | 13 | back, and it will be about 410. |
| 15:52:59 | 14 | Do you-all want to take a quick recess after you've |
| 15:53:02 | 15 | stricken your lists? |
| 15:53:04 | 16 | MR. VAN NEST:  Sure.  That would be great, Your |
| 15:53:05 | 17 | Honor. |
| 15:53:05 | 18 | THE COURT:  Why don't you strike your lists, give |
| 15:53:07 | 19 | them to Ms. Oakes, and then take whatever break you want to. |
| 15:53:10 | 20 | And when you're back in the courtroom, then we'll get the jury |
| 15:53:12 | 21 | back in. |
| 15:53:18 | 22 | (Recess) |
| 16:14:39 | 23 | (Open court, no jury) |
| 16:14:39 | 24 | THE COURT:  You've had an opportunity to see one |
| 16:14:40 | 25 | another's strikes. |

| | | |
|---|---|---|
| 16:14:42 | 1 | MR. THOMPSON:  Yes we have, Your Honor. |
| 16:14:43 | 2 | MR. JONES:  Yes, Your Honor. |
| 16:14:44 | 3 | THE COURT:  Is there any other thing we need to take |
| 16:14:46 | 4 | up before we seat the jury?  You're satisfied that is the jury, |
| 16:14:49 | 5 | whether you're satisfied with each of them individually or not? |
| 16:14:52 | 6 | MR. VAN NEST:  That's right, Your Honor. |
| 16:14:53 | 7 | THE COURT:  We good? |
| 16:14:54 | 8 | Well, I will tell you, having been on your side of |
| 16:14:56 | 9 | the bench for a long time, I'm sure you-all, like I am |
| 16:15:02 | 10 | superstitious, because lawyers are always superstitious, but it |
| 16:15:07 | 11 | always used to worry me -- you didn't have any double-strikes. |
| 16:15:10 | 12 | It always used to worry me when I had a double-strike because I |
| 16:15:13 | 13 | wanted to know what I missed.  You know, if they wanted to |
| 16:15:17 | 14 | strike that juror, why did I strike the juror? |
| 16:15:20 | 15 | So if we're ready, we'll go ahead and bring the jury |
| 16:15:24 | 16 | in.  And you can be seated until they get seated. |
| 16:17:02 | 17 | (Open court, prospective jurors present) |
| 16:17:02 | 18 | THE COURT:  All right.  Let the record reflect the |
| 16:17:05 | 19 | jury panel is back in the room.  The lawyers have struck their |
| 16:17:09 | 20 | lists.  I have reviewed the lists. |
| 16:17:12 | 21 | Ms. Oakes, would you please read the names of the |
| 16:17:14 | 22 | jurors to be impaneled.  And, as your name is called, if you'll |
| 16:17:18 | 23 | come forward to the court security officer here, he will direct |
| 16:17:22 | 24 | you to where you're going to sit. |
| 16:17:24 | 25 | THE CLERK:  Juror Number 2, Roxann Marie Welch; |

| | | |
|---|---|---|
| 16:17:28 | 1 | Juror Number 3, Amelia Grace Nelson; |
| 16:17:32 | 2 | Juror Number 4, James Joseph Ziaja; |
| 16:17:36 | 3 | Juror Number 5, Jackie Lura Albright; |
| 16:17:38 | 4 | Juror Number 7, Laura Storrs Meyer. |
| 16:17:43 | 5 | THE COURT:  Now, you-all smile as you come forward. |
| 16:17:49 | 6 | THE CLERK:  Juror Number 13, Roger Dale Rylie; |
| 16:17:56 | 7 | Juror Number 15, Laura Lee Estes; and |
| 16:18:02 | 8 | Juror Number 16, Deborah Dee Lancaster. |
| 16:18:16 | 9 | THE COURT:  Let me direct my remarks to those of you |
| 16:18:19 | 10 | that are not seated as jurors.  I want to thank you again for |
| 16:18:23 | 11 | doing your civic duty and being present today.  We could not |
| 16:18:28 | 12 | get a jury that is acceptable to the lawyers and the court |
| 16:18:33 | 13 | without deliberately summoning more people than we know we're |
| 16:18:37 | 14 | going to use on the jury in order that we get a cross-section |
| 16:18:42 | 15 | and take care of it the way we have done here today. |
| 16:18:45 | 16 | I know that I speak for the parties and the lawyers |
| 16:18:49 | 17 | when I thank you for your time and patience here today.  But at |
| 16:18:53 | 18 | this time I'm going to excuse you, and you may check with the |
| 16:18:57 | 19 | clerk's office for any letters you might need for employers or |
| 16:19:02 | 20 | anything, and the clerk's office will contact you if you're |
| 16:19:05 | 21 | needed again. |
| 16:19:06 | 22 | So at this time, with the thanks of the court, you |
| 16:19:10 | 23 | are excused. |
| 16:19:40 | 24 | (Remaining prospective jurors excused) |
| 16:19:40 | 25 | THE CLERK:  Will the jury please stand.  The lawyers |

16:19:44  1  may be seated.  And if you'll raise your right hands,

16:19:47  2  Ms. Oakes, will you please administer the oath to the jurors.

16:19:54  3      (Jury sworn)

16:20:16  4          THE COURT:  You may be seated.

16:20:18  5          I'm not going to -- I'm going to try not to keep you

16:20:22  6  here very long with what we're going to do today because I know

16:20:25  7  you've been here a while.  I'm going to give you some

16:20:28  8  preliminary instructions with which you need to abide, and I'm

16:20:32  9  going to tell you a little bit about what our work schedule is

16:20:36  10 going to be.  And then I will recess you for the evening, and

16:20:38  11 we'll start tomorrow fresh with the opening statements by the

16:20:42  12 lawyers and begin with the evidence then.

16:20:44  13         So now that you've been sworn, as I said, I'm going

16:20:48  14 to give you some preliminary instructions to guide your

16:20:51  15 participation in the trial.

16:20:53  16         It will be your duty to find from the evidence what

16:20:56  17 the facts are.  You and you alone are the judges of the facts.

16:21:02  18 You will then have to apply to those facts to the law as the

16:21:06  19 court will give it to you, and you must follow that law whether

16:21:10  20 you agree with it or not.

16:21:15  21         Nothing the court may say or do during the course of

16:21:18  22 the trial is intended to indicate, nor should it be taken by

16:21:21  23 you as indicating, what your verdict should be.  The evidence

16:21:25  24 from which you will find the facts will consist of, one, the

16:21:29  25 testimony of witnesses; two, written documents and other things

16:21:34  1  that are received into the record as exhibits; three, any facts

16:21:40  2  the lawyers agree or stipulate to or that the court may

16:21:44  3  instruct you to find; and, four, any applicable presumption.

16:21:48  4       Certain things are not evidence and must not be

16:21:53  5  considered by you, and I will list them for you now.

16:21:57  6       Statements, arguments, and questions by lawyers are

16:22:00  7  not evidence.

16:22:03  8       Objections to questions are not evidence.  Lawyers

16:22:06  9  have an obligation to their client to make an objection when

16:22:10  10  they believe the evidence being offered is improper under the

16:22:13  11  rules of evidence.  You should not be influenced by the

16:22:17  12  objection or by the court's ruling on it.  If the objection is

16:22:24  13  sustained, ignore the question.  If the objection is overruled,

16:22:29  14  treat the answer like any other.  If you are instructed that

16:22:32  15  some item of evidence is received for a limited purpose only,

16:22:36  16  you must follow that instruction, whatever it may be.

16:22:39  17       Testimony that the court has excluded or told you to

16:22:44  18  disregard is not evidence and must not be considered.  Anything

16:22:50  19  that you have seen or heard outside the courtroom is not

16:22:54  20  evidence and must be disregarded.  You are to decide the case

16:22:59  21  solely on the evidence presented here in the courtroom.

16:23:04  22       Now, there are two kinds of evidence, direct and

16:23:09  23  circumstantial.  "Direct evidence" is direct proof of a fact,

16:23:14  24  such as the testimony of an eyewitness.  "Circumstantial

16:23:18  25  evidence" is proof of facts from which you may infer or

16:23:21  1  conclude that other facts exist.  I will give you further

16:23:26  2  instructions on these as well as other matters at the end of

16:23:29  3  the case, but have in mind that you may consider both kinds of

16:23:33  4  evidence, that is, both direct and circumstantial.

16:23:37  5       It will be up to you to decide which witnesses to

16:23:41  6  believe, which witnesses not to believe, and how much of any

16:23:45  7  witness's testimony to accept or reject.  I will give you some

16:23:50  8  guidelines for determining the credibility of witnesses at the

16:23:53  9  end of the case.

16:23:54  10       Now, a few words about your conduct as jurors.  You

16:24:00  11  should give careful testimony -- pardon me.  You should give

16:24:04  12  careful attention to testimony and evidence presented for your

16:24:07  13  consideration during the trial, but you should not form or

16:24:11  14  express any opinion about the case one way or the other until

16:24:15  15  you have heard all of the evidence and have had the benefit of

16:24:19  16  the closing arguments of the lawyers and my instructions on the

16:24:24  17  applicable law.

16:24:25  18       If you would like to take notes during the trial, you

16:24:28  19  may do so.  If you do take notes, be careful not to get so

16:24:33  20  involved in note-taking that you become distracted and miss

16:24:37  21  part of the testimony.  Your notes are to be used only as aids

16:24:42  22  to your memory, and if your memory should later be different

16:24:46  23  from your notes, you should rely on your memory, not on your

16:24:51  24  notes.

16:24:52  25       If you do not take notes, rely only on your own

16:24:56   1   independent memory of testimony.  Do not be unduly influenced
16:25:01   2   by the notes of other jurors.  A juror's notes are not entitled
16:25:06   3   to any greater weight than the recollection of each juror
16:25:10   4   concerning the testimony.  And we will provide you with books
16:25:14   5   tomorrow when you come back to keep your notes in.
16:25:16   6           Although exhibits which I admit into evidence during
16:25:20   7   the course of the trial will be available to you for your
16:25:23   8   inspection and review during your deliberation on a verdict,
16:25:27   9   under normal circumstances, no written transcript of the
16:25:30   10  testimony of witnesses can be made available to you for your
16:25:34   11  review during your deliberations.  Nor under normal
16:25:38   12  circumstances can all or any significant portion of a witness's
16:25:43   13  testimony be read to you once you commence your deliberations.
16:25:47   14  It is therefore very important that you pay strict attention to
16:25:50   15  the testimony given by each witness during the trial of this
16:25:54   16  case.
16:25:56   17          During the course of the trial, do not speak with any
16:26:00   18  witness or with the defendants or the plaintiffs or with any of
16:26:04   19  the lawyers in this case.  Please do not talk with them about
16:26:08   20  any subject at all.  Until you retire to deliberate, you may
16:26:13   21  not discuss this case with anyone, even your fellow jurors, and
16:26:17   22  you must not permit anyone to attempt to discuss it with you or
16:26:22   23  in your presence.
16:26:23   24          And, insofar as the lawyers are concerned as well as
16:26:27   25  others whom you may come to recognize as having some connection

16:26:31  1  with the case, you are instructed that in order to avoid even

16:26:36  2  the appearance of impropriety, you should have no conversation

16:26:40  3  whatever with those persons while you are serving on the jury.

16:26:44  4          The Sixth Amendment to our constitution guarantees a

16:26:50  5  trial by an impartial jury.  This means that, as jurors, you

16:26:54  6  must decide this case based solely on the evidence and law

16:26:57  7  presented to you here in the courtroom.  Until all of the

16:27:01  8  evidence and arguments have been presented and you begin to

16:27:04  9  deliberate, you may not discuss this case with anyone, even

16:27:09 10  your fellow jurors.

16:27:10 11          After you start to deliberate, you may discuss the

16:27:13 12  case, the evidence, and the law as it has been presented, but

16:27:17 13  only with your fellow jurors and only when you are all present

16:27:21 14  at the same time in your jury room?  You cannot discuss it with

16:27:26 15  anyone else until you have returned the verdict and the case

16:27:29 16  has come to an end.

16:27:30 17          Now I will walk you through a few specific examples.

16:27:35 18  First, this means that during the trial you must not conduct

16:27:39 19  any independent research about this case or the matters, legal

16:27:45 20  issues, individuals, or other entities involved in this case.

16:27:50 21  Just as you must not search or review any traditional sources

16:27:54 22  of information about this case, such as dictionaries, reference

16:27:58 23  materials, or television, news, or entertainment programs, you

16:28:02 24  must not search the Internet or any other electronic resources

16:28:06 25  for information about this case or the witnesses or the parties

16:28:10  1    involved in it.  The bottom line for the important work you

16:28:14  2    will be doing is that you must base your verdict solely on the

16:28:18  3    evidence presented in the courtroom and my instructions on the

16:28:22  4    law.

16:28:24  5         Second, this means that you must not communicate

16:28:27  6    about the case with anyone, including your family and friends,

16:28:31  7    until deliberations when you will discuss the case only with

16:28:35  8    other jurors.  During deliberations you must not communicate

16:28:40  9    about the case with anyone else.

16:28:43  10        Most of us use smart phones, tablets, or computers in

16:28:47  11   our daily lives to access the Internet for information and to

16:28:52  12   participate in social media platforms.  To remain impartial

16:28:56  13   jurors, however, you must not communicate with anyone about

16:28:59  14   this case, whether in person, in writing, or through e-mail,

16:29:04  15   text messaging, blogs, or social media websites and apps like

16:29:09  16   Twitter, Facebook, Instagram, LinkedIn, Youtube, WhatsApp,

16:29:15  17   GroupMe, Snapchat, TikTok and the like.

16:29:18  18        Please note that these restrictions are about all

16:29:22  19   kinds of communication about the case, even those which are not

16:29:26  20   directed at any particular person or group.  Communication like

16:29:32  21   blog posts or Tweets can be shared to an ever-expanding circle

16:29:36  22   of people and can have an unexpected impact on the trial.  For

16:29:43  23   example, a post you might make to your social media account

16:29:46  24   might be viewable by a witness who is not supposed to know what

16:29:50  25   has happened in the courtroom before he or she has testified.

16:29:55  1          For these reasons you must inform me immediately if

16:29:57  2   you learn about or share any information about the case outside

16:30:02  3   the courtroom, even by accident, or if you discover that

16:30:07  4   another juror has done so.

16:30:08  5          Finally a word about an even newer challenge for

16:30:13  6   trials such as this one.  Persons, entities, and even foreign

16:30:18  7   governments may seek to manipulate your opinions or your

16:30:21  8   impartiality during deliberations using the communications I

16:30:25  9   have already discussed or using fake social media accounts, but

16:30:33  10  these misinformation efforts might also be undertaken through

16:30:36  11  targeted advertising online or on social media.

16:30:41  12         Many of the tools you use to access e-mail, social

16:30:44  13  media, and the Internet display third-party notifications

16:30:49  14  pop-ups, or ads while you're using them.  These communications

16:30:52  15  may be intended to persuade you or your community on an issue

16:30:57  16  that can influence you in your service as juror on this case.

16:31:01  17         For example, while accessing your e-mail, social

16:31:05  18  media, or the Internet, through no fault of your own you might

16:31:09  19  see pop-ups containing information about this case or the

16:31:12  20  matters, legal principles, individuals, or other entities in

16:31:17  21  this case.  Please be aware of this possibility, ignore any

16:31:23  22  pop-ups or ads that might be relevant to what we are doing

16:31:26  23  here, and certainly do not click through to learn more about

16:31:29  24  these notifications if this happens -- pardon me -- about these

16:31:37  25  notifications or ads if they appear.  If this happens, please

16:31:40   1   let me know.

16:31:41   2          This is a recurring problem in courts.  We have been

16:31:44   3   very fortunate in Austin that we have not had a problem with

16:31:48   4   it.  What happens is, if you attempt to investigate anything

16:31:52   5   about this case or anything electronically and it comes to the

16:31:58   6   attention of the parties or the court, that means we will have

16:32:01   7   wasted all our time in the trial up to that point, as I will

16:32:05   8   have to dismiss you and we will have to start the case totally

16:32:08   9   over again and select a new jury.

16:32:11   10         So please take me at my word, while you're serving on

16:32:14   11  this jury, it is really important, and it is important to these

16:32:18   12  parties' rights, that you decide this case based solely on the

16:32:23   13  evidence and my instructions on the law.  And at the beginning

16:32:27   14  of each day I may ask you whether you have learned or shared

16:32:31   15  any information outside this courtroom.  I like to let the jury

16:32:34   16  know in advance that I may be doing that so you're prepared for

16:32:38   17  the question.  But it is just better if you just have

16:32:43   18  everything shut down with regard to this case while you're

16:32:46   19  involved in it.

16:32:47   20         I hope that for all of you this case is interesting

16:32:50   21  and noteworthy.  From time to time during the trial, I may be

16:32:55   22  called upon to make rulings on law -- rulings of law on motions

16:33:00   23  or objections made by the lawyers.  You should not infer or

16:33:04   24  conclude from any ruling I may make that I have any opinions on

16:33:08   25  the merits of the case favoring one side or the other.

```
16:33:12   1        And if I sustain an objection to a question that goes
16:33:15   2   unanswered by the witness, you should not speculate on what
16:33:19   3   answer might have been given, nor should you draw any
16:33:22   4   inferences or conclusions from the question itself.
16:33:27   5        During the trial it may be necessary for me to confer
16:33:31   6   with the lawyers from time to time out of your hearing
16:33:34   7   concerning questions of law or procedure that require
16:33:39   8   consideration by the court alone.  On some occasions you may be
16:33:42   9   excused from the courtroom as a convenience to you and to us
16:33:47  10   while I discuss such matters with the lawyers.
16:33:50  11        We will try to limit such interruptions as much as
16:33:53  12   possible, but you should remember at all times the importance
16:33:57  13   of the matter you are here to determine and should be patient
16:34:01  14   even though the case may seem to go slowly.
16:34:05  15        As I indicated earlier, the trial will begin tomorrow
16:34:08  16   morning at nine o'clock.  The lawyers for each side will be
16:34:12  17   given an opportunity to make opening statements in which they
16:34:16  18   may explain the issues in the case and summarize the facts they
16:34:20  19   expect the evidence will show.
16:34:23  20        First the lawyer for Voxer, Inc. and Voxer IP, LLC
16:34:27  21   will make an opening statement, which, again, is simply an
16:34:32  22   outline to help you understand the evidence that the Voxer
16:34:36  23   lawyers expect to introduce.
16:34:38  24        Next the attorneys for Facebook, or Meta Platforms,
16:34:42  25   and Instagram will make an opening statement.
```

16:34:46   1          Voxer will then present witnesses, and the lawyer for

16:34:49   2   Meta Platforms and Instagram may cross-examine them.

16:34:52   3          Following Voxer's case, Meta may present witnesses,

16:34:57   4   and counsel for Voxer will have the opportunity to

16:35:01   5   cross-examine them.

16:35:02   6          Subsequently, rebuttal witnesses may be presented.

16:35:06   7          After all of the testimony and evidence has been

16:35:09   8   presented, the lawyers will then be given another opportunity

16:35:12   9   to address you and to make their summations or final arguments

16:35:17   10  in this case.

16:35:18   11         The statements that the lawyers make at the beginning

16:35:21   12  of the case, as well as the arguments they present at the end

16:35:25   13  of trial, are not to be considered by you either as evidence,

16:35:29   14  which comes only from the witnesses and exhibits, or as your

16:35:34   15  instruction on the law, which will come only from me.

16:35:38   16  Nevertheless, these statements and arguments are intended to

16:35:42   17  help you understand the issues and the evidence as it comes in,

16:35:45   18  as well as the positions taken by both sides.

16:35:52   19         Now, a little bit about what our order of work will

16:35:55   20  be.  We will commence every morning at nine o'clock, so I ask

16:35:59   21  you to be in your jury room a little before nine o'clock so we

16:36:04   22  can start at 9:00.  The court security officer will show you

16:36:07   23  where your jury room is and explain to you how to get there.

16:36:11   24         We will go until noon or as close to noon as there is

16:36:16   25  a convenient stopping point in the evidence each day.  It may

16:36:19  1    be a little before, a little later.  We will endeavor to get

16:36:24  2    back by 1:30 and commence our afternoon sessions at 1:30, and

16:36:28  3    we will go until 5:00 or as close to 5:00 as there is a

16:36:33  4    convenient stopping point in the evidence.  It may be a little

16:36:37  5    earlier, it maybe a little later.

16:36:38  6          We will take a midmorning break about 10:30 and a

16:36:44  7    midafternoon break about 3:15 or 3:30.  I will not keep you

16:36:49  8    seated in the jury box any longer than two hours at a stretch,

16:36:55  9    so plan on that so we don't have undue interruptions.  So

16:36:59  10   that's the way we will do it.

16:37:03  11         There will be things that come up which will affect

16:37:06  12   that schedule.  Austin has grown a lot as you've noticed in the

16:37:12  13   last years.  The last time we got a new judicial position in

16:37:16  14   Austin was 1991.  That's 31 years ago.  We do not have enough

16:37:21  15   federal judges in Austin.  We only have two.  Our docket is

16:37:25  16   extremely large.  The rest of it doesn't stop while I'm trying

16:37:29  17   a case, so there may be times that it will seem a little

16:37:33  18   disjointed because there will be something that I absolutely

16:37:36  19   have to take up.

16:37:36  20         I try to do that over the noon hour or in the evening

16:37:41  21   or afternoon recesses so I don't inconvenience you too much,

16:37:45  22   but bear in mind it's an inconvenience on the lawyers and

16:37:49  23   everybody, but the rest of the business of the court doesn't

16:37:52  24   stop because I'm trying a case.

16:37:54  25         I can tell you on Wednesday we're going to have a

16:37:58  1    longer noon hour just so you can plan accordingly.  We're

16:38:03  2    probably going to recess about 11:15 and probably be back about

16:38:06  3    two o'clock because of a matter of long standing that I've

16:38:11  4    previously committed to.

16:38:12  5           But I will generally always be able to let you know

16:38:16  6    what we're doing ahead of time.  Again, we will try to be back

16:38:22  7    on every other day by 1:30 so we can make this move along

16:38:26  8    pretty quickly.  But keep in mind there will be some

16:38:31  9    interruptions, and you will get a longer noon hour on Wednesday

16:38:34  10   because I already know that.

16:38:35  11          Now, you will be given notebooks, the contents of

16:38:43  12   which I have worked out with the lawyers, that will contain

16:38:48  13   some things such as the patents you're going to hear a lot

16:38:52  14   about, such as the claims that are asserted in the patents.  So

16:38:57  15   you'll have those to look at and follow along.  And a list of

16:39:01  16   the questions that you're going to be asked to answer at the

16:39:04  17   end of the trial so you'll have some idea of where you're going

16:39:08  18   with this.  Don't get consumed by the notebooks.  It's just

16:39:11  19   there to help you, but listen to the evidence and then listen

16:39:17  20   to my charge.  But it just goes a little more smoothly if you

16:39:23  21   have some idea of where we're headed.

16:39:25  22          The lawyers are going to assist you with that first

16:39:28  23   with their opening statements and then as we proceed during

16:39:31  24   trial.  But bear that in mind.

16:39:34  25          Now, we're about to take our first break during the

16:39:37   1   trial, and I want to remind you of the instructions that I've

16:39:40   2   just given you.  I'll give them to you in abbreviated form.

16:39:45   3           Until the trial is over, you are not to discuss this

16:39:47   4   case with anyone, including your fellow jurors, members of your

16:39:51   5   family, or people involved in the trial or anyone else.  If

16:39:58   6   anyone approaches you and tries to talk to you about the case,

16:40:01   7   do not tell your fellow jurors but advise me about it

16:40:04   8   immediately.

16:40:05   9           Do not read or listen to any news reports of the

16:40:08  10   trial.  Finally, remember to keep an open mind until all of the

16:40:11  11   evidence has been received and you have heard the views of your

16:40:14  12   fellow jurors.  And do not attempt to find out anything about

16:40:22  13   this case or any of the issues in it through the use of any

16:40:24  14   electronic device, and do not transmit any information about

16:40:28  15   this case through any electronic device.

16:40:30  16           Now, the gentleman over here to your left, my right,

16:40:35  17   is your court security officer.  You will get to know him

16:40:38  18   throughout the trial.  As I said, he will assist you with how

16:40:42  19   to get in and out of the jury room.  He looks like a really

16:40:46  20   nice man.  Believe me, he is not.  I have instructed him that

16:40:49  21   if he sees any of you using any electronic device, he is to

16:40:53  22   take it from you, throw it to the floor, and smash it into

16:40:56  23   little bits while you watch.  So this will just go much more

16:41:00  24   smoothly if you take me at my word and don't try to find out

16:41:03  25   anything about this case.  But if you need to speak with me

16:41:11   1    about anything, simply give a signed note to him to give to me,

16:41:15   2    and then we will take that up from there.

16:41:17   3             Now, I may not repeat these things to you before

16:41:20   4    every break we take, but keep them in mind throughout the

16:41:23   5    trial.

16:41:23   6             So at this time you will be in recess until

16:41:26   7    nine o'clock in the morning.  Please remember all of these

16:41:30   8    instructions that I have given you.  Please be back in your

16:41:33   9    jury room a little bit before nine o'clock so we can start.  So

16:41:37   10   at this time you are recessed.

16:41:38   11            (Jury recessed)

16:42:25   12            THE COURT:  You may be seated.  Couple of things for

16:42:28   13   tomorrow.  I have looked over what you have provided to go in

16:42:33   14   the juror notebooks.  I don't have a problem with it other than

16:42:37   15   the fact I think I'm not going to submit them the instructions

16:42:42   16   in the notebooks because they look a little daunting, and I

16:42:45   17   have -- and I don't think I have a problem with giving them to

16:42:49   18   the jury at the end.  But I'm afraid they'll become consumed

16:42:53   19   with them and spend more time on the notebooks than they will

16:42:56   20   be listening to your case.  So I'm going to include everything

16:42:59   21   else, including the verdict form we've discussed, unless

16:43:03   22   someone has a major objection to my scaling it down that way?

16:43:06   23            MR. POWELL:  Your Honor, I have just one question.

16:43:08   24   Would I be able -- would we be able to refer to the jury

16:43:11   25   instructions since we've agreed to them during the trial

| | | |
|---|---|---|
| 16:43:14 | 1 | proceedings? |
| 16:43:14 | 2 | THE COURT:  Any problem over here? |
| 16:43:17 | 3 | MR. VAN NEST:  No.  Of course not. |
| 16:43:17 | 4 | THE COURT:  Then you may.  As long as they're agreed |
| 16:43:19 | 5 | to, I don't have any problem with any of that. |
| 16:43:21 | 6 | MR. POWELL:  Thank you, Your Honor. |
| 16:43:22 | 7 | THE COURT:  All right.  Any questions you-all may |
| 16:43:24 | 8 | have about anything we need to take up before we come back in |
| 16:43:27 | 9 | the morning? |
| 16:43:27 | 10 | MR. POWELL:  The plaintiff does have one matter, |
| 16:43:29 | 11 | Your Honor. |
| 16:43:29 | 12 | THE COURT:  All right. |
| 16:43:30 | 13 | MR. POWELL:  And I'm sorry.  I'd hoped we'd make it |
| 16:43:32 | 14 | to tomorrow before we had to do this, but the plaintiff does |
| 16:43:35 | 15 | believe the door has been opened, although this time it was the |
| 16:43:38 | 16 | back door, by baiting the jury with the issues we addressed on |
| 16:43:42 | 17 | the MIL 3.  You heard them talk about Facebook not a good |
| 16:43:46 | 18 | corporate citizen.  You heard them talk about competitor |
| 16:43:49 | 19 | treated unfairly.  Those are the issues that the evidence |
| 16:43:53 | 20 | that's being excluded addresses. |
| 16:43:55 | 21 | We would like leave to file a brief, Your Honor.  I |
| 16:43:57 | 22 | have it with me today.  I can provide a copy to the other side. |
| 16:44:00 | 23 | We'd ask the Court to reconsider its motion -- its ruling so |
| 16:44:04 | 24 | that we can actually address this in openings.  We understand |
| 16:44:08 | 25 | if it does not happen in openings, we would like the |

16:44:10  1   opportunity to present the evidence during Mr. Katis's direct

16:44:13  2   examination tomorrow.  He lived it.  He should be able to

16:44:17  3   testify about it.

16:44:18  4          THE COURT:  Let me hear from the defendant.

16:44:21  5          MR. VAN NEST:  Your Honor, I didn't hear anything in

16:44:23  6   the voir dire that was out of the ordinary.  We had the

16:44:26  7   obligation to examine jurors as to their biases and so on and

16:44:31  8   so forth.  No one was arguing.  No one was presenting any

16:44:33  9   evidence.  So I don't think the ruling should change.  There's

16:44:35  10  no basis for that.  There hasn't been any evidence, hasn't even

16:44:38  11  been one word of opening statement.

16:44:41  12         MR. POWELL:  Your Honor, our position would be that

16:44:43  13  the jurors are now looking for that evidence.  And if we don't

16:44:45  14  give it to them, we suffer.

16:44:47  15         THE COURT:  Well, I don't think they're looking for

16:44:49  16  it.  We're not going to take it up in opening statements.  If

16:44:53  17  you want to file a short brief with the copy to the other side,

16:44:57  18  I'm going to allow them to respond to it.  I will look at this

16:45:01  19  again.

16:45:03  20         MR. POWELL:  Thank you, Your Honor.  I appreciate it.

16:45:04  21  I'll hand up a copy.  I would like to note for the record there

16:45:07  22  is Facebook confidential material.  This is not a redacted

16:45:11  23  version.  It is unredacted.  We will file electronically,

16:45:15  24  appropriately, a redacted version this evening.

16:45:17  25         THE COURT:  All right.  That doesn't look very short

| | | |
|---|---|---|
| 16:45:23 | 1 | to me. |
| 16:45:24 | 2 | MR. POWELL:  It's actually exhibits so you can see |
| 16:45:25 | 3 | all of the evidence, Your Honor. |
| 16:45:26 | 4 | THE COURT:  Yeah.  But I'm supposed to read the |
| 16:45:27 | 5 | exhibits.  That factors into my definition of shortness. |
| 16:45:32 | 6 | MR. POWELL:  The brief I think is 10 pages. |
| 16:45:34 | 7 | THE COURT:  Well, that's not very short either. |
| 16:45:37 | 8 | MR. POWELL:  Maybe you and I have different |
| 16:45:39 | 9 | definition of short, Your Honor.  I apologize. |
| 16:45:41 | 10 | THE COURT:  I have changed my perspective of short |
| 16:45:43 | 11 | since I moved around to this side of the bench.  I will admit |
| 16:45:46 | 12 | that to you.  And how long does the defendant need to respond? |
| 16:45:52 | 13 | MR. VAN NEST:  He just handed this tonight, |
| 16:45:55 | 14 | Your Honor.  I'm sure we can respond in two days. |
| 16:45:56 | 15 | THE COURT:  Well, we'll take that back up in the |
| 16:45:58 | 16 | morning and, I mean, how long you really need.  We'll talk |
| 16:46:02 | 17 | about that.  Read this over. |
| 16:46:04 | 18 | MR. VAN NEST:  Fine.  Thank you. |
| 16:46:05 | 19 | THE COURT:  Then we'll see where we are, and we'll do |
| 16:46:06 | 20 | that in the morning. |
| 16:46:07 | 21 | But it's out for opening statement, and if I need to |
| 16:46:10 | 22 | adjust witnesses if I change my previous ruling, we'll adjust |
| 16:46:13 | 23 | the witnesses and make it work. |
| 16:46:16 | 24 | MR. POWELL:  Thank you, Your Honor. |
| 16:46:16 | 25 | THE COURT:  Anything else we need to take up while I |

16:46:18  1  have you-all?

16:46:19  2          MR. VAN NEST:  Not for Defendants, Your Honor.

16:46:21  3          MR. POWELL:  Nothing else for the plaintiffs,

16:46:22  4  Your Honor.

16:46:22  5          THE COURT:  All right.  Well, I appreciate the way

16:46:24  6  this afternoon went.  I thought it went smoothly.  I'm looking

16:46:27  7  forward to trying this case with you.  So we are in recess

16:46:32  8  until nine o'clock in the morning.

16:46:34  9          If you need to get with me, you need to let my court

16:46:40  10  staff know, either Ms. Oakes or Ms. Baffes --

16:46:43  11          I think you have their e-mail addresses.

16:46:45  12          MR. VAN NEST:  We do, Your Honor.

16:46:46  13          THE COURT:  -- in time for me to be here.  Try not to

16:46:48  14  wait until 7:30 to tell me you have something you want to take

16:46:52  15  up before nine o'clock.

16:46:54  16          MR. POWELL:  Understood, Your Honor.

16:46:55  17          THE COURT:  But I think we can go through this pretty

16:46:58  18  smoothly without any problems.

16:47:01  19          So, with that having been said, I look forward to

16:47:05  20  working with you, and we'll be in recess until nine o'clock in

16:47:08  21  the morning.

16:47:09  22          (End of transcript)

          23

          24

          25

1    **UNITED STATES DISTRICT COURT      )**

2    **WESTERN DISTRICT OF TEXAS          )**

3         I, Arlinda Rodriguez, Official Court Reporter, United

4    States District Court, Western District of Texas, do certify

5    that the foregoing is a correct transcript from the record of

6    proceedings in the above-entitled matter.

7         I certify that the transcript fees and format comply with

8    those prescribed by the Court and Judicial Conference of the

9    United States.

10        WITNESS MY OFFICIAL HAND this the 17th day of

11   September 2022.

12

13                              /S/ Arlinda Rodriguez
                                Arlinda Rodriguez, Texas CSR 7753
14                              Expiration Date:  10/31/2023
                                Official Court Reporter
15                              United States District Court
                                Austin Division
16                              501 West 5th Street, Suite 4152
                                Austin, Texas 78701
17                              (512) 391-8791

18

19

20

21

22

23

24

25