

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

VOXER, INC. AND VOXER IP LLC,    §
                 PLAINTIFFS,    §
    §
V.    §    CAUSE NO. 1:20-CV-00655-LY
    §
META PLATFORMS, INC. F/K/A    §
FACEBOOK, INC. AND    §
INSTAGRAM LLC,    §
                DEFENDANTS.    §

## ORDER ON POST-TRIAL MOTIONS

Before the court are (1) Defendants' Renewed Motion for Judgment as a Matter of Law Under Federal Rule of Civil Procedure 50(b), filed October 25, 2022 (Doc. #349); (2) Voxer's Opposition to Defendants' Renewed Motion for Judgment as a Matter of Law Under Federal Rule of Civil Procedure 50(b), filed November 21, 2022 (Doc. #357); (3) Defendants' Reply in Support of Their Renewed Motion for Judgment as a Matter of Law Under Federal Rule of Civil Procedure 50(b), filed December 5, 2022 (Doc. #366); (4) Defendants' Rule 59 Motion for a New Trial, filed October 25, 2022 (Doc. #350); (5) Voxer's Opposition to Defendants' Rule 59 Motion for a New Trial, filed November 21, 2022 (Doc. #359); (6) Defendants' Reply in Support of Their Rule 59 Motion for a New Trial, filed December 5, 2022 (Doc. #367); (7) Defendants' Motion for Judgment of Invalidity of the '270 Patent Under Federal Rule of Civil Procedure 52(c), filed October 25, 2022 (Doc. #351); (8) Voxer's Opposition to Defendants' Motion for Judgment of Invalidity of the '270 Patent Under Federal Rule of Civil Procedure 52(c), filed November 21, 2022 (Doc. #358); and (9) Defendants' Reply in Support of Motion for Invalidity of the '270 Patent Under Federal Rule of Civil Procedure 52(c), filed December 5, 2022 (Doc. #365).

This court conducted a hearing on the motions on January 18, 2023. Having considered the

motions, responses, replies, the evidence produced at trial and at the hearing by all parties, arguments of counsel, and the applicable law, the court will deny Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram LLC's motions[1] and will, by separate order, render final judgment in favor of Voxer, Inc. and Voxer IP LLC (collectively, "Voxer").

## *Background*

The court empaneled a jury and called this case for trial on September 12, 2022. At trial, Voxer asserted six claims from two patents: independent claim 34 and dependent claims 47, 48, and 51 of U.S. Patent No. 10,142,270 (the "'270 Patent"); and independent claim 1 and dependant claim 9 of U.S. Patent No. 10,511,557 (the "'557 Patent"). The case was submitted to the jury for deliberation on September 20, 2022, and on September 21, 2022, the jury returned a verdict. By its verdict, the jury found that Voxer proved by a preponderance of the evidence that Facebook infringed one or more claims of the '270 Patent and the '557 Patent (collectively, the "Asserted Patents") through both Facebook Live and Instagram Live (collectively, the "Accused Products"). The jury also found that Facebook did not prove by clear-and-convincing evidence that any claim of the '557 Patent is invalid. The jury awarded $174,530,785 as a running royalty in damages to Voxer.

By its motions, Facebook contends that the court should disregard the jury's verdict and render judgment as a matter of law in Facebook's favor or order a new trial. *See* FED. R. CIV. P. 50(b), 59. Alternatively, Facebook asserts that it should be granted a new trial on the issue of damages or remittitur of the damages awarded by the jury. Facebook also asks the court to conclude

---

[1] Because the interests of the Defendants do not diverge, the court will refer to them collectively as "Facebook."

that asserted claims of the '270 Patent are invalid. *See* 35 U.S.C. § 101. The court will discuss each post-trial motion separately below.

### *Judgment as a Matter of Law*

#### *Legal Standard*

In an action tried by a jury, a motion for judgment as a matter of law is a challenge to the legal sufficiency of the evidence supporting the jury's verdict. *Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997). "On motions for JMOL or a new trial, [the Federal Circuit] applies the law of the regional circuit, in this case the United States Court of Appeals for the Fifth Circuit." *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1328 (Fed. Cir. 2008). Judgment as a matter of law is appropriate against a party if that party "has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1); *Rivera v. Union Pac. R. Co.*, 378 F.3d 502, 505 (5th Cir. 2004) ("A court may enter judgment as a matter of law under Rule 50 only where there exists "no legally sufficient evidentiary basis" for the jury's verdict." (citing FED. R. CIV. P. 50(a)(1); *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 372 (5th Cir. 2000)). There is sufficient evidentiary basis supporting a verdict if "the evidence [is of] such quality that reasonable and fair-minded persons would reach the same conclusion." *Polcano v. City of Austin*, 78 F.3d 968, 974 (5th Cir. 1996); *see also Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000). A court is to be "especially deferential" to a jury's verdict. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012) (quoting *SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008)); *see also Hiltgen v. Sumrall*, 47 F.3d 695, 700 (5th Cir. 1995), *reh'g and suggestion for reh'g en banc denied*, 49 F.3d 730 (5th Cir. 1995) ("This court has consistently applied this standard to show

appropriate deference for the jury's determination.").

In reviewing the evidence, the court draws "all reasonable inferences in favor of the nonmoving party" and "may not make credibility determinations or weigh the evidence." *Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1007, 1112 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 101 (2021) (quoting *Industrias Magromer Cueros y Pieles S.A. v. Louisiana Bayou Furs Inc.*, 293 F.3d 912, 918 (5th Cir. 2002), *decision clarified on denial of reh'g*, 310 F.3d 786 (5th Cir. 2002)). Therefore, judgment as a matter of law should only be granted if "'the facts and inferences point "so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion."'" *One Beacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 675 (5th Cir. 2016) (quoting *Baisden*, 693 F.3d at 498).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Wellogix, Inc v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013) (citation omitted). "Attributing weight to conflicting evidence, and drawing inferences from such evidence, are within the province of the jury and its decision should be given deference if the record contains any competent evidence to support its findings." *Industrias*, 293 F.3d at 918 (citing *Gibraltar Sav. v. LDBrinkman Corp.*, 860 F.2d 1275, 1297 (5th Cir. 1988)).

"A party challenging a jury damages verdict 'must show that the award is, in view of all the evidence, either so outrageously high or so outrageously low as to be unsupportable as an estimation of a reasonable royalty.'" *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1345 (Fed. Cir. 2011) (citation omitted). "[O]n post-trial JMOL motions, district court judges must scrutinize the evidence carefully to ensure that the 'substantial evidence' standard is satisfied, while keeping in mind that

a reasonable royalty analysis 'necessarily involves an element of approximation and uncertainty.'" *Lucent Techs. Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) (quoting *Unisplay, S.A. v. American Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995)).

*Analysis*

At the close of evidence, Facebook moved for judgment as a matter of law under Rule 50(a) on all claims brought by Voxer, urging that no reasonable jury could find either (1) that Facebook infringed the asserted claims, (2) that the asserted claims are not invalid, or (3) that Voxer was entitled to its requested damages. *See* FED. R. CIV. P. 50(a). The court denied the motion and submitted the cause to the jury. The jury found that (1) both Accused Products infringed the asserted claims of the '270 Patent; (2) both Accused Products infringed the asserted claims of the '557 Patent; (3) Facebook did not prove by clear-and-convincing evidence that the asserted claims of the '557 Patent are invalid; (4) Voxer proved it is entitled to $174,530,785 for Facebook's infringement up through the date of the verdict; and (5) the damages figure represents a running royalty.

Facebook renews its motion for judgment as a matter of law and argues that the court should grant judgment as a matter of law because there is no legally sufficient basis for a reasonable jury to find that Facebook infringed the asserted claims, that the asserted claims of the '557 Patent are not invalid, and that Voxer is not entitled to its requested damages. *See One Beacon*, 841 F.3d at 676 ("Any argument made in a renewed motion for judgment as a matter of law under Rule 50(b) must have been previously made in a motion for judgment as a matter of law under Rule 50(a)." (citations omitted)). Facebook is entitled to renew its motion.

## Infringement of the Asserted Patents

### The '270 Patent

The jury found that both Accused Products infringe asserted claims 34, 47, 48, and 51 of the '270 Patent. Facebook argues that it established no infringement of the '270 Patent for the following reasons: (1) the Accused Products do not receive an "identifier identifying a recipient of a video communication," as described in claim 34(a); (2) the Accused Products do not ascertain a location used to deliver the video communication in response to receipt of the identifier, as described in claim 34(b); and (3) Voxer failed to offer sufficient evidence that Facebook infringes the '270 Patent under the doctrine of equivalents.

Claim 34(a) of the '270 Patent requires the step of "receiving an identifier associated with a video communication ..., the identifier identifying a recipient of the video communication." Dr. Michael Mitzenmacher, Voxer's technical expert, testified that both Accused Products use identifiers of recipients as set forth in the claims. Voxer offered evidence to show that the claimed "identifiers" are the Facebook Live and Instagram Live privacy settings and addresses of Instagram Direct messages, and that there is no limitation in the claim or in the meaning of "recipient" that recipients must be guaranteed to receive videos. Voxer also offered evidence to show that Instagram Live's default settings were "associated with a video communication."

Credibility determinations and the drawing of inferences are jury functions. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court may not make any inferences and credibility determinations favoring the movant when considering a motion for judgment as a matter of law. *Id.*; *see also Rideau v. Parkem Indus. Servs., Inc.*, 917 F.2d 892, 897 (5th Cir. 1990) ("A jury may draw reasonable inferences from the evidence, and those inferences may constitute

sufficient proof to support a verdict." (citations omitted)).  The court finds that there was substantial evidence for a reasonable jury to find infringement of the '270 Patent.

Under the doctrine of equivalents, an accused device infringes "if it performs substantially the same function in substantially the same way to obtain the same result." *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42 (1929).  Mitzenmacher testified that although the Accused Products literally infringe the claims, the Accused Products also infringe under the doctrine of equivalents. Mitzenmacher stated that, with respect to claim 34(a), identifiers had the same "function [which] is to control which users can receive a video communication" and "[o]nly the appropriate subset of users can receive the communication."  Mitzenmacher further testified as to the presence of each claim limitation or its equivalent in the Accused Products.  The court finds that there was substantial evidence for a reasonable jury to find infringement both literally and under the doctrine of equivalents.  *See, e.g.*, *Energy Transp. Grp., Inc. v. Williams Demant Holding A/S*, 697 F.3d 1342, 1353 (Fed. Cir. 2012) (upholding infringement verdict finding either literally or under the doctrine of equivalents).

The jury was free to accept Mitzenmacher's testimony.  *See, e.g.*, *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 609 (5th Cir. 2007).  The court concludes that there is sufficient evidence to support the jury's verdict of infringement of the '270 Patent.

The '557 Patent

The '557 Patent claim 1 requires in part "[a] method for operating a video message service infrastructure on a network, the method comprising ... selecting one of the degraded versions of the video media."  At trial, it was contested whether the "selecting one of the degraded versions" occurs on the server or by the client device.  Facebook asserts that it established no infringement of the '557

Patent because the undisputed evidence at trial established that selection of a degraded version of a video media happens at the client device–which is outside the alleged "video message service infrastructure." Voxer contends that the claim is not limited to just server selection but that even if it is, Voxer offered evidence at trial to show that this claim limitation is still satisfied because once the client makes its selection, the Facebook servers then retrieve the requested file from storage at the Facebook servers.

The '557 Patent claim language further requires "selecting one of the degraded versions of the video media based on an ascertained bandwidth of the network." Facebook argues that "ascertaining" must happen on the servers, and that there was not sufficient evidence in front of the jury to show this requirement. Voxer asserts that there is no language in the claim requiring the servers to do the ascertaining and, in any event, Mitzenmacher explained how the server does that "ascertaining."

The jury is free to choose among reasonable constructions of the evidence. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 848 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). The court concludes that there is sufficient evidence to support the jury's verdict of infringement of the '557 Patent. *See id.* at 849-50 (upholding infringement finding where "there was sufficient evidence to support *either*" of the plaintiff's infringement theories) (emphasis in the original).

### Invalidity of the '557 Patent

Facebook asserts that, given the evidence presented at trial, a reasonable jury could only conclude that claims 1 and 9 of the '557 Patent are either anticipated by the Seckin patent application or made obvious by Seckin. Voxer, however, offered evidence at trial to show that Seckin discloses only one-way communication–as opposed to back-and-forth communication–and therefore did not

disclose "video messages" or a "video message service infrastructure." Mitzenmacher also testified that Seckin does not disclose or render obvious different real-time streaming protocols because Seckin only disclosed one real-time streaming protocol. The court concludes that there was sufficient evidence presented to the jury for the jury to find that Seckin did not teach the "video message service infrastructure" in claim 1 of the '557 Patent that allow a user to send a "message" to another user.

The jury was free to agree with Mitzenmacher's explanation. *See i4i*, 598 F.3d at 848. The court finds that Facebook failed to offer clear-and-convincing evidence that claim 1 of the '557 Patent is invalid as anticipated by Seckin. The court also finds that Facebook failed to offer clear-and-convincing evidence that claim 9 of the '557 Patent is invalid as obvious in light of Seckin.

**Damages**

The jury awarded Voxer $174,530,785 as a running royalty for Facebook's infringement of the '270 Patent and the '557 Patent.

Running Royalty

Facebook argues that there was no basis for the jury to select a running royalty versus a lump sum. Voxer, however, offered expert testimony regarding Facebook's business model, tying the royalty to marketplace success and avoiding over- or under-valuing the licensed technology. Additionally, Facebook argues that a lack of forward-looking analyses for Facebook Live or Instagram Live precludes a running royalty. Voxer argues that the availability of such analyses during the hypothetical negotiation in November 2018 does not dictate a lump sum, and no precedent supports Facebook's assertion. Alan Ratliff, Voxer's damages expert, testified that he considered all of the information–including information dated after the hypothetical negotiation–under the

"book of wisdom" doctrine.

The jury was free to credit this evidence and award a running royalty to Voxer. *See Gaylord v. United States*, 777 F.3d 1363, 1369 (Fed. Cir. 2015) (affirming award of per-unit royalty); *see also Spectralytics*, 649 F.3d at 1347 ("The jury was entitled to choose a damages award within the amounts advocated by the opposing parties." (citing *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1378 (Fed. Cir. 2005)).

Apportionment

Facebook asserts that it is entitled to a judgment of no damages due to the lack of sufficient apportionment. Facebook contends that Mitzenmacher failed to separate the infringing and non-infringing features of his apportionment analysis, which renders Ratliff's damages estimate invalid. Voxer asserts that Mitzenmacher explained in detail his technical-apportionment analysis, and that he testified about the nine key components of Facebook Live and Instagram Live, and apportioned appropriately. The jury was free to credit this expert testimony. *See i4i*, 598 F.3d at 848.

Facebook also contends that Ratliff's apportionment analysis cannot property support the jury's damages award because he improperly relied on Mitzenmacher's economic apportionment. Voxer argues that Ratliff testified that he performed a further economic apportionment after considering Mitzenmacher's technical apportionment. The court concludes that the jury could properly rely on this damages-apportionment testimony. *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296-97 (Fed. Cir. 2015).

Reasonable-Royalty Analysis

Facebook asserts that Ratliff's damages model failed to distinguish among Voxer's theories of infringement, and therefore invited the jury to award damages for conduct that does not constitute

infringement. The jury, however, could have agreed with one or all of the theories of infringement, and there would be sufficient evidence to support the damages. *See Integrated Tech. Corp. v. Rudolph Techs., Inc.*, 734 F.3d 1352, 1360 (Fed. Cir. 2013). The verdict does not differentiate patent by patent or theory by theory with respect to damages, and thus any supported theory of infringement supports the damages verdict.

### "Was Live" Monetization

Further, Facebook contends that Ratliff's inclusion of "was live" monetization as derivative damages is improper as a matter of law. Derivative sales, however, are appropriately considered in determining a reasonable royalty—whether as a factor influencing the royalty rate or the royalty base. *See, e.g., Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1373 (Fed. Cir. 2010). The jury properly credited this evidence. *See i4i*, 598 F.3d at 848.

### Hypothetical-Negotiation Date

Finally, Facebook contends that Ratliff's only properly disclosed damages opinion used an incorrect hypothetical-negotiation date and that because Ratliff presented a damages opinion based on a hypothetical-negotiation date of November 2018, he presented an *undisclosed* damages opinion. The court agrees with Voxer that the time for a Rule 26 objection has passed. The issue is whether sufficient evidence supports the jury's verdict.

Here, the court finds that substantial evidence supports the jury's award, as the jury received the evidence, Facebook cross-examined, and the jury rendered its verdict. Crediting one party's witnesses while ignoring contrary evidence is not the standard applied on a Rule 50(b) motion. *See Summit 6*, 802 F.3d at 1297-1300 (denying judgment as matter of law and rejecting argument that apportionment methodology was unreliable.)

### Conclusion

On a Rule 50(b) motion, "[a] jury's damages award must be upheld unless the amounts is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 984 (Fed. Cir. 2021) (citation omitted). Facebook's criticisms about the jury's award of damages are more appropriate for cross-examination of Voxer's experts. And, indeed, Facebook did cross-examine Ratliff about his methodology and presented testimony of its own damages expert, Catharine Lawton, in rebuttal. The court concludes that sufficient evidence supports the jury's findings and the jury's award of damages. *See, e.g.*, *American Home Assur. Co. v. United Space All., LLC*, 378 F.3d 482, 487 (5th Cir. 2004) ("A jury verdict must stand unless there is a lack of substantial evidence, in the light most favorable to the successful party, to support the verdict." (citing *Liberty Mut. Ins. Co. v. Falgoust*, 386 F.2d 248, 253 (5th Cir. 1967))).

The court will deny the renewed motion for judgment as a matter of law (Doc. #349).

## New Trial

### Legal Standard

The court "has discretion to grant a new trial under Rule 59(a) of the Federal Rules of Civil Procedure when it is necessary to do so 'to prevent an injustice.'" *Government Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 774 (5th Cir. 1995) (quoting *United States v. Flores*, 981 F.2d 231, 237 (5th Cir. 1993)). New trials can be granted under Rule 59 "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). The Federal Circuit reviews the question of a new trial under the law of the regional circuit. *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1347 (Fed. Cir. 2007).

To be entitled to a new trial, Facebook must show that the verdict was against the great weight of the evidence–not merely against the preponderance of the evidence. *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838-39 (5th Cir. 2004). A motion for new trial "must clearly establish either a manifest error of law or fact or must present newly disclosed evidence." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (quoting *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)). A jury verdict is entitled to great deference, and the court may not substitute its own judgment for that of the jury merely because the court would have reached a different conclusion. *See Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992). The court must view the evidence in the light most favorable to the jury's verdict, affirming the verdict unless the evidence points so strongly and overwhelmingly in favor of the other party that the court believes that reasonable persons could not arrive at a contrary conclusion. *See id.*; *see also Gibraltar*, 860 F.2d at 1297 ("Weighing the conflicting evidence and the inferences to be drawn from that evidence, and determining the relative credibility of the witnesses, are the province of the jury, and its decision must be accepted if the record contains any competent and substantial evidence tending fairly to support the verdict." (citation omitted)). The decision to grant or deny a new trial is committed to the sound discretion of the trial court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980).

*Analysis*

Facebook argues that: (1) a reimittitur or new trial is required because Ratliff's only properly disclosed opinion was based on the wrong hypothetical-negotiation date; (2) a new trial on damages is required because Ratliff's opinion fails *Daubert* and should have been excluded; and (3) the court should order a new trial because Facebook was prejudiced by the inappropriate comments made by

**13**

Voxer's lawyer.

### **Damages**

Facebook asserts that Voxer's damages case was legally improper and should not have been presented to the jury. Facebook asserts that Ratliff's opinions were inadmissible on multiple grounds (including that he needed to–but did not–analyze the entire record from the perspective of November 2018), fail *Daubert*, and should have been excluded. Facebook contends that the only admissible evidence setting a royalty range was the Houlihan Lokey valuation that Voxer commissioned in 2017, which valued a portfolio-wide royalty for Facebook as a lump-sum between $5 million and $22.91 million. Facebook asks the court to remit damages to a single lump-sum at the high-end of the Houlihan Lokey range ($22.91 million) or order a new trial on damages.

There is no dispute that Ratliff applied the appropriate hypothetical-negotiation date of November 2018 at trial, and this court finds no evidence that he testified inconsistently regarding the appropriate hypothetical-negotiation date. When Ratliff updated his analysis due to the change in the hypothetical-negotiation date he elected to keep the royalty analysis the same; Ratliff testified that this change in the hypothetical-negotiation date did not necessitate a change to his royalty analysis. Facebook had the opportunity to fully cross-examine Ratliff about the effect of a change in the hypothetical-negotiation date on his royalty analysis, and the time for any objection regarding the scope of his expert reports under Federal Rules of Civil Procedure 26 and 37 has passed. Cases cited by Facebook to support its argument that Ratliff's analysis must change in material ways if the hypothetical-negotiation date changes are inapposite; Ratliff applied the correct (agreed-upon) date. *See RSA Protective Techs., LLC v. Delta Sci. Corp.*, No. LA CV19-06024 JAK (PLAx), 2021 WL 4978462, at *4 (C.D. Cal. Oct. 20, 2021) (defendant's damages expert misstated hypothetical-

**14**

negotiation date); *Cassidian Comm'cns, Inc. v. Microdata GIS, Inc.*, No. 2:12-CV-00162-JRG, 2013 WL 11322510, at *2 (E.D. Tex. Dec. 3, 2013) (defendants "conceded that [their expert] used the wrong hypothetical negotiation date"). Any challenge by Facebook regarding the substance of the hypothetical-negotiation opinion goes to weight–not admissibility. *See, e.g., Vectura Ltd. v. GlaxoSmithKline LLC*, No. 16-638-RGA, 2019 WL 1352767, at *4 (D. Del. Mar. 26, 2019) (holding that the challenge "based on a failure to account for certain changes in circumstances goes to the weight and credibility of [the expert's] opinions, not their admissibility").

Both parties presented evidence at trial to support their respective positions. The jury was entitled to believe or disbelieve Ratliff's testimony. *See Caboni v. General Motors Corp.*, 398 F.3d 357, 361 (5th Cir. 2005) ("The trier of fact, however, is not bound by expert testimony and is entitled to weigh the credibility of all witnesses, expert or lay." (citation omitted)). Facebook's disagreement with Ratliff's analysis or the existence of conflicting evidence are insufficient bases for a new trial.

Facebook also argues that Lawton could not present a *Georgia-Pacific* analysis because of the change in the hypothetical negotiation date. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1119-20 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971). A party need not present expert testimony on damages or on every aspect of damages. A party runs the risk, however, of loss to its expert's credibility on cross-examination, if the expert does not. Voxer's cross-examination of Lawton's opinions in rebuttal to Ratliff's testimony is not a proper bases for a new trial. *See Simon*, 891 F.2d at 1159.

### Lawyer Commentary

Facebook contends that Voxer's lawyer made repeated improper comments designed to inflame jurors' prejudice against Facebook and encourage the jury to decide the case on improper

grounds.

The burden is on Facebook here to show a new trial is warranted. *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999). The court resolved many objections in Facebook's favor, and juries are presumed to follow the court's instructions. *See, e.g.*, *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009). Facebook does not present a reason for the court to conclude that the verdict resulted from passion or prejudice, and the court does not find that substantial injustice results from any of the challenged comments. *See Learmonth v. Sears, Roebuck & Co.*, 631 F.3d 724, 731 (5th Cir. 2011); *Dixon v. International Harvester Co.*, 754 F.2d 573, 585 (5th Cir. 1985).

### Conclusion

Facebook had a full and fair opportunity to defend itself. The court concludes the evidence at trial is sufficient to support the jury's verdict, and that remittitur is not warranted in this case. Consequently, the court concludes the verdict is not against the weight of the evidence and is not inadequate as a matter of law.

The court will deny the motion for a new trial (Doc. #350).

## Invalidity

### Legal Standard

In a bench trial, "[i]f a party has been fully heard on an issue ... and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." FED. R. CIV. P. 52(c). "A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a)." *Id.* Such findings are made pursuant to Rule 52(a), under which "the court must find the facts specifically and state its conclusions of law separately."

FED. R. CIV. P. 52(a). The purpose of these findings is to "afford[] ... a clear understanding of the ground or basis of the decision of the trial court." *S. S. Silberblatt, Inc. v. United States ex rel. Lambert Corp.*, 353 F.2d 545, 549 (5th Cir. 1965) (internal quotation marks omitted); *see also Schlesinger v. Herzog*, 2 F.3d 135, 139 (5th Cir. 1993) (explaining that trial courts need not "recite every piece of evidence" or "sort through the testimony of ... dozen[s] [of] witnesses"). "Rule 52(a) only requires weighing the evidence to determine whether the plaintiff has proven his case." *Thanedar v. Time Warner, Inc.*, 352 F. App'x 891, 897 n.1 (5th Cir. 2009) (citing FED. R. CIV. P. 52(a)).

"Rule 52(a) does not require that the district court set out findings on all factual questions that arise in a case." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1054 (5th Cir. 1997) (citing *Golf City, Inc. v. Wilson Sporting Goods, Co.*, 555 F.2d 426, 433 (5th Cir. 1977)). Rather, the district court is expected to provide a clear understanding of the analytical process by which ultimate findings and conclusions were reached. *See Valley*, 118 F.3d at 1053-54. In making a particular finding, the district court "does not ... draw any inferences in favor of the non-moving party and ... [instead] make[s] a determination in accordance with its own view of the evidence." *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 964 n.1 (5th Cir. 2016) (internal quotation marks omitted). However, a district court still must arrive at each of its factual determinations based on the applicable burden of proof. *See In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992). Here, the relevant burden of proof is clear-and-convincing evidence. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." (citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011))).

Facebook moves under Federal Rule of Civil Procedure 52 for a judgment that all asserted claims of the '270 Patent are directed to subject matter that is not patentable under the Patent Act and are therefore invalid. *See* 25 U.S.C. § 101 ("Section 101"). Facebook contends that the '270 Patent is directed to an abstract idea rooted in a long-standing and commonplace activity: routing messages to recipients identified by the sender without first requiring a connection between the sender and recipient. This activity, Facebook asserts, takes place in corporate mailrooms, telephone switchboards, and myriad other message-delivery systems. Facebook argues that these are the types of "well-understood, routine, conventional activities previously known to the industry" that are ineligible for patent protection under *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014).

Voxer replies that the claimed server architecture overcomes the technical challenges inherent in transmitting real-time video communication "without having to first establish an end-to-end connection," and directs the court to Mitzenmacher's testimony of the technical benefits of Voxer's claimed invention, such as improved scalability.

The court, having considered the motion, the response, the reply, and the argument of counsel, now makes the following findings of fact and conclusions of law[2] relating to Facebook's defense of invalidity for the '270 Patent.

### *Findings of Fact*

The Federal Circuit has repeatedly acknowledged that the inquiry under Section 101 is a legal question that "'may contain underlying factual issues.'" *Mortgage Grader, Inc. v. First Choice Loan*

---

[2] All findings of fact contained herein that are more appropriately considered conclusions of law are to be so deemed. Likewise, any conclusion of law more appropriately considered a finding of fact shall be so deemed.

*Servs. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016) (quotation and citation omitted). While neither

the Federal Circuit nor the Supreme Court have defined exactly which aspects of the Section 101

inquiry are legal or factual in nature, the Federal Circuit has explained that "whether a claim element

or combination of elements is well-understood, routine and conventional to a skilled artisan in the

relevant field is a question of fact." *Berkheimer*, 881 F.3d at 1368. Accordingly, the court makes

specific factual findings under the clear-and-convincing-evidence standard with respect to factual

questions that underpin the court's Section 101 analysis:

1. The issue of invalidity of the '270 Patent was not presented to the jury during trial.

2. Facebook's motion for judgment of invalidity only challenges the patent eligibility of the

'270 Patent.

3. The '270 Patent, also titled "Telecommunication and multimedia management method

and apparatus," issued on November 27, 2018.

4. Claim 34 is the only independent claim asserted by Voxer against Facebook. It recites:

> A video communication method, comprising:
>
> receiving an identifier associated with a video communication transmitted by a
> sending communication device over a network, the identifier identifying a recipient
> of the video communication;
>
> ascertaining, in response to receipt of the identifier, a location on the network for a
> second communication device associated with the recipient and connected to the
> network;
>
> receiving the video communication from the sending communication device
> independently of the location for the second communication device being
> ascertained;
>
> storing the video communication; and
>
> delivering portions of the video communication over the network to the second

**19**

communication device using the location, the delivery enabling the video communication to be at least partially rendered at the second communication device while the video communication is transmitted by the sending communication device,

wherein receiving the video communication from the sending communication device occurs without having to first establish an end-to-end connection over the network between the sending and the second communication device.

'270 Patent, cl. 34.

5.  The '270 Patent addresses a specific improvement to the way computers operate, including by progressively transmitting streaming media over a network as the streaming media is created and persistently stored, therefore enabling hybrid digital communications that can be real-time and time-shifted; and by delivering video communication without first establishing an end-to-end connection over the network between the sender and receiver.

6.  The improvement in existing communication systems is described as "delivering video communication without first establishing an end-to-end connection over the network between the sender and receiver."

7.  This "enabl[es] users to participate in conversations without waiting for a connection to be established with another participant or the network" and "even when there is no network available, when the network is of poor quality, or other participants are unavailable."

*Conclusions of Law*

1.  Patent eligibility is an issue of law suitable for resolution under Rule 52(c).  *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1311 (Fed. Cir. 2016).

2.  Under Section 101, a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101; *see Diamond v. Chakrabarty*, 447 U.S. 303, 305 (1980) ("In choosing such expansive terms as

'manufacture' and 'composition of matter,' modified by the comprehensive 'any,' Congress contemplated that the patent laws should be given wide scope[.]'").

3. "[T]he language of [Section] 101 is extremely broad." *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 130 (2001).

4. Even so, Section 101 excludes abstract ideas from patentable subject matter. *See Alice*, 573 U.S. at 216 ("We have long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." (quoting *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013))).

5. "At the same time, [the court] tread[s] carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice*, 573 U.S. at 217 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)).

6. "At some level, 'all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.' Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Alice*, 573 U.S. at 217 (citations omitted).

7. "Accordingly, in applying the [Section] 101 exception, [courts] must distinguish between patents that claim the '"buildin[g] block[s]"' of human ingenuity and those that integrate the building blocks into something more, thereby 'transform[ing]' them into a patent-eligible invention." *Id.* (citations omitted).

8. "To distinguish between eligible and ineligible patent claims, the Supreme Court has fashioned a two-step test." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1314 (Fed. Cir. 2019) (citing *Alice*, 573 U.S. at 218).

9. At step one, the court determines whether a claim "is 'directed to ... [a] patent-ineligible

concept[ ]," such as an abstract idea." *Cellspin*, 927 F.3d at 1315 (quoting *Alice*, 573 U.S. at 217).

10.   This includes examining "'the focus of the claimed advance over the prior art' to determine if the character of the claim as a whole, considered in the light of the specification, is directed to excluded subject matter." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019) (quoting *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017)); *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (Courts "look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." (citing *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016))).

11.   Under the second step of the *Alice* inquiry, even if a patent attempts to claim an otherwise abstract idea, the claim can be transformed into something patentable if it incorporates an inventive concept, defined by the Supreme Court as "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18 (quoting *Mayo*, 566 U.S. at 73).

12.   Thus, step two of the analysis is a "search for an 'inventive concept'–i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 221 (internal quotations and citations omitted).

13.   "These additional features cannot simply be "'well-understood, routine, conventional activit[ies] previously known to the industry." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 221); *see also Berkheimer*, 881 F.3d at 1367-68;

*Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1328 (Fed. Cir. 2017).

14. Patents are presumed valid, and "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282(a).

15. In the context of other invalidity challenges, a party asserting invalidity must prove its defense by clear-and-convincing evidence to overcome presumptive invalidity. *See, e.g., Microsoft*, 564 U.S. at 96.

16. The Federal Circuit has noted that Section 101 "is independent of–and on an equal footing with–any other statutory provision." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1347 (Fed. Cir. 2016) (citations omitted).

17. The first step of the *Alice* inquiry is "a meaningful one," such that "a substantial class of claims are *not* directed to a patent-ineligible concept." *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016).

18. This step requires "determin[ing] whether the claim at issue is 'directed to' a judicial exception, such as an abstract idea." *McRO*, 837 F.3d at 1312 (quoting *Alice*, 573 U.S. 217-18).

19. "'[T]he claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter.'" *McRO*, 837 F.3d at 1312 (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). The court must also consider that "[a]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom*, 827 F.3d at 1350.

20. The *Alice* inquiry ends if the claims, as a whole, are not "directed to" an abstract idea. *McRO*, 837 F.3d at 1312.

21. Every issued patent is presumed to have been issued properly, absent clear-and-

convincing evidence to the contrary. *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338-39 (Fed. Cir. 2013), *vacated sub nom.*, *on other grounds*, *WildTangent, Inc. v. Ultramercial, LLC*, 573 U.S. 942 (2014).

22. Ultimately, based on the facts of this case, the claims themselves, and the claims as read in the context of the specification, the court concludes that Facebook has failed to show by clear-and-convincing evidence that the '270 Patent addresses only an abstract idea and presents no inventive concept. *See Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020).

23. At *Alice* Step One, the court concludes that the '270 Patent is directed to improvements to communications systems rather than an unpatentable abstract idea. *See Cellspin*, 927 F.3d 1306 at 1319.

24. Because the court finds that the asserted claims of '270 Patent are not directed to an abstract idea under *Alice* Step One, the court need not and does not reach *Alice* Step Two.

25. For the reasons set forth above, the court concludes that Facebook has failed to show by clear-and-convincing evidence that the asserted claims of the '270 Patent are ineligible under Section 101.

The court will deny the motion for judgment of invalidity (Doc. #351).

**Conclusion**

**IT IS ORDERED** that Defendants' Renewed Motion for Judgment as a Matter of Law Under Federal Rule of Civil Procedure 50(b), filed October 25, 2022 (Doc. #349), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Rule 59 Motion for a New Trial, filed October 25, 2022 (Doc. #350), is **DENIED**.

**IT IS FINALLY ORDERED** that Defendants' Motion for Judgment of Invalidity of the

'270 Patent Under Federal Rule of Civil Procedure 52(c), filed October 25, 2022 (Doc. #351), is

**DENIED**.

The court will render a Final Judgment separately.


SIGNED this _21st_ day of February, 2023.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE