IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| VOXER, INC. and VOXER IP LLC, | § | NO. 1:20-CV-655-DAE |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| META PLATFORMS, INC., f/k/a | § | |
| FACEBOOK, INC. and INSTAGRAM | § | |
| LLC, | § | |
| | § | |
| Defendants. | § | |

<u>ORDER GRANTING IN PART AND DENYING IN PART VOXER'S MOTION
TO AMEND THE JUDGMENT AND FACEBOOK'S MOTION TO AMEND
THE JUDGMENT</u>

Before the Court are competing motions related to the damages awarded in this case on February 21, 2023.  (Dkt. # 381.)  On March 21, 2023, Defendants Meta Platforms, Inc. f/k/a Facebook, Inc. and Instagram LLC (collectively, "Facebook") moved under Rule 59(e) and Rule 60 to amend the judgment to decrease the amount of prejudgment interest awarded.  (Dkt. # 385.) Plaintiffs Voxer, Inc. and Voxer IP LLC (collectively, "Voxer") filed a Response on April 4, 2023, and Facebook filed a Reply on May 9, 2023.  (Dkts. ## 399, 409.)  On March 21, 2023, Voxer moved under Rule 59(e) to amend the judgment

1

to impose an ongoing royalty pursuant to 35 U.S.C. § 283.  (Dkts. ## 386, 388.)

Facebook filed a Response on April 28, 2023, and Voxer filed a Reply on May 10,

2023.  (Dkts. ## 407, 412.)  A hearing was held on the instant motions in Austin,

Texas, on June 8, 2023.  (Dkt. # 421.)  The parties were ordered to file

supplemental briefing and did so on June 12, 2023.  (Dkts. ## 417, 418.)

      For the reasons that follow, the Court **GRANTS IN PART AND**

**DENIES IN PART** Voxer's Motion to Amend the Judgment (Dkt. # 388)

**GRANTS IN PART AND DENIES IN PART** Facebook's Motion to Amend the

Judgment.  (Dkt. # 385.)  The Amended Judgment will be issued by separate

Order.

<u>BACKGROUND</u>

      The Court held a jury trial from September 12-21, 2022, directed to

Voxer's allegation that Facebook's accused services infringed the asserted claims

of Voxer's U.S. Patents Nos. 10,142,270 (the '270 patent) and 10,511,557 (the

'557 patent).[1]  On September 21, 2022, the jury found that both the accused

"Facebook Live" and "Instagram Live" services infringed the asserted claims of

---

[1] The trial and all prior proceedings were before the Honorable Lee Yeakel, who
has since retired from federal judicial service.  The entire case was then reassigned
to the undersigned on April 5, 2023.

2

the '270 patent and the '557 patent.  (Dkt. # 332 at 2-3.)  The jury also awarded

$174,530,785 in damages "for Facebook and Instagram's infringement up through

the date of this verdict," not including interest.  (Id. at 5.)  On the jury form, the

jury indicated that "this number represent[s] a running royalty" and not a "lump

sum."  (Id.)

      The Court denied Facebook's Motion for Judgment as a Matter of

Law or New Trial in the Alternative on February 21, 2023.  (Dkt. # 380.)  The

Court entered a Final Judgment the same day, memorializing the jury's running

royalty damages award for $174,530,785.  (Dkt. # 381.)  The Court further

ordered:

> [Voxer] shall recover from [Facebook] pre-judgment interest from
> November 27, 2018, the date of the parties' hypothetical negotiation, to
> February 20, 2023, the day before rendition of the final judgment, on
> the amount of $174,530,785, at a rate of 3.91% calculated as simple
> interest for a total amount of $28,904,497.56.  The applicable rate is the
> rate equal to the weekly average one-year constant maturity Treasury
> yield, as published by the Board of Governors of the Federal Reserve
> System, for the calendar week preceding the date of the judgment.

      (Id.)  The instant motions followed.  Judge Yeakel held a telephonic

hearing on the instant motions on April 3, 2023, at which he notified the parties

that the case would be transferred to another Judge for hearings and disposition of

this motion.  (Dkt. # 397.)  As noted, Judge Yeakel transferred the case to the

undersigned on April 5, 2023.  (Dkt. # 401.)

<u>LEGAL STANDARD</u>

I.   <u>Motion to Amend or Alter Judgment — Rule 59(e)</u>

      "A Rule 59(e) motion calls into question the correctness of a

judgment."  <u>Templet v. Hydrochem, Inc.</u>, 367 F.3d 473, 478 (5th Cir. 2004).

"Under Rule 59(e), amending a judgment is appropriate (1) where there has been

an intervening change in the controlling law; (2) where the movant presents newly

discovered evidence that was previously unavailable; or (3) to correct a manifest

error of law or fact."  <u>Demahy v. Schwarz Pharma, Inc.</u>, 702 F.3d 177, 182 (5th

Cir. 2012).  Rule 59(e), however, is "not the proper vehicle for rehashing evidence,

legal theories, or arguments that could have been offered or raised before entry of

judgment," <u>Templet</u>, 367 F.3d at 478, and it "should not be used to . . . re-urge

matters that have already been advanced by a party."  <u>Nationalist Movement v.

Town of Jena</u>, 321 F. App'x 359, 364 (5th Cir. 2009).  Reconsideration of a

previous order is "an extraordinary remedy that should be used sparingly."  <u>Id.</u>

II.   <u>Motion for Relief from Final Judgment — Rule 60(b)</u>

Federal Rule of Civil Procedure 60(b) allows a court to grant relief from a final judgment in certain circumstances:

> mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  "The purpose of Rule 60(b) is to balance the principle of finality of a judgment with the interest of the court in seeing that justice is done in light of all the facts."  Hesling v. CSX Transp., Inc., 396 F.3d 632, 638 (5th Cir. 2005).  This relief "is considered an extraordinary remedy," and "the desire for a judicial process that is predictable mandates caution in reopening judgments."  In re Pettle, 410 F.3d 189, 191 (5th Cir. 2005) (quoting Carter v. Fenner, 136 F.3d 1000, 1007 (5th Cir. 1998)).

## DISCUSSION

At present, three primary disagreements exist between the parties: (1) supplemental damages; (2) an ongoing royalty; and (3) the pre-judgment interest rate.  Each is discussed in term.

## I.   Voxer's Motion — Supplemental Damages

5

Upon a finding of infringement, a prevailing "patentee is entitled to damages for the entire period of infringement and should therefore be awarded supplemental damages for any periods of infringement not covered by the jury verdict."  35 U.S.C. § 284.  Accordingly, "[d]istrict courts have discretion to award damages for periods of infringement not considered by the jury."  Whitserve, LLC v. Computer Packages, Inc., 694 F.3d 10, 38 (Fed. Cir. 2012); see also Finjan, Inc. v. Secure Computing Corp., 626 F.3d 1197, 1212-13 (explaining that the trial court erred by not awarding damages for time between entry of judgment and injunction because otherwise the patentee would not be fully compensated).  Voxer moves for supplemental damages for the period of the verdict through final judgment: September 17, 2022, to February 21, 2023.  (Dkt. # 388 at 10.)  Given that the damages calculation that the jury accepted ended on September 16, 2022, the Court finds that supplemental damages are necessary and appropriate to fully compensate Voxer for Facebook's infringement.  See Jiaxing Super Lighting Elec. Appliance Co., Ltd. V. CH Lighting Tech. Co., Ltd., No. 6:20-CV-18-ADA, 2023 WL 2415281, at *20-21 (W.D. Tex. Mar. 8, 2023) (awarding supplemental damages for the period between the jury verdict and final judgment); (see Dkt. # 388 at 21

(explaining that the jury awarded the exact amount of reasonable royalty damages that Ratliff testified to at trial, computed thorough September 16, 2022).)

Accordingly, the Court grants supplemental damages for the period between the jury verdict and the entry of final judgment; based on the daily rate of $169,012[2] and the 158 days[3] at issue, this comes out to $26,703,896.  (See Dkt. # 388 at 24.)  Prejudgment interest on this amount must have an interest rate tracking the average weekly one-year constant maturity treasury yield rate during the period when the interest accrued.[4]  As explained in depth in Section V, the

---

[2] Voxer suggests the Court award damages using "the same daily average royalty of $169,012 [that its expert] used in [his] computation of damages at trial for estimating damages from the last date of actual data produced by Facebook (May/June of 2021) though September 16, 2022."  (Dkt. # 388 at 21-22.) Facebook argues that the supplemental damages award should be calculated based on the Court's ongoing royalty rate.  (Dkts. ## 421 at 18:1-7 ("[I]t should be the rate that the Court selects for the ongoing royalty post verdict. That's what should determine the supplemental damages."); 407 at 23.)  But Facebook's failure to produce "Is Live" watch time since May/June of 2021 precludes using the ongoing royalty rate of $0.003 per "Is Live" watch hour for the supplemental damage period.  Without the "Is Live" watch time, the Court has no way to impose a $0.0003 award per "Is Live" watch time.  At the hearing, Facebook conceded that it did not see the purpose in producing historical "Is Live" watch hour data.  (See Dkt. # 421 at 54-55.)

[3] September 17, 2022, to February 21, 2023.

[4] Though the 2023 royalty has not accrued interest (meaning the daily royalty from January 1, 2023 to February 21, 2023 will not start incurring interest until January 1, 2024), the royalty from September 17, 2022, to December 31, 2022 has accrued

parties are to meet and confer within fourteen (14) days of this order to present a joint proposal calculating prejudgment interest on supplemental damages based on this methodology.

II.   Voxer's Motion — Ongoing Royalty Award

Voxer asks the Court to award an ongoing royalty consistent with the jury's award of a $174,530,785 running royalty.  Voxer provides two methods of calculating the ongoing royalty: a royalty of $0.003 per "Is Live Watch Hour," or a royalty of 4.4% on the royalty base calculated as (a) Facebook and Instagram "Is Live Watch Hours" multiplied by (c) total worldwide Facebook app ad revenues, divided by (b) total worldwide Facebook app watch time.  (Dkt. # 388 at 6-7.)

Facebook argues against the award of an ongoing royalty.  (Dkt. # 407.)  First, Facebook contends that Voxer's motion is procedurally deficient under Rule 59(e) because the issue of ongoing royalties could have been raised before the entry of judgment.  Next, Facebook argues that the Court should decline to award ongoing royalties because doing so would result in a windfall to Voxer.

---

interest as described in detail in Section V. Thus, 105 days * $169,012 per day equals a principal of $17,746,260 that has incurred simple interest at a rate equal to the average of the weekly one-year constant maturity rate from December 30, 2022 (the last week in the year in which the royalty occurred) through the week of February 21, 2023 (when judgment was entered).

If the Court awards ongoing royalties, Facebook argues for two changes in the calculation: the royalty base should be actual revenues from the Live products, rather than the base as calculated by Voxer's expert Alan Ratliff ("Ratliff") at trial. Second, Facebook argues that the royalty rate itself should be lower, because of decreased profitability and ability to monetize video products.

      A.    <u>Is Rule 59(e) a procedurally proper mechanism for Voxer's request for an ongoing royalty?</u>

"Under Rule 59(e), amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." <u>Demahy</u>, 702 F.3d at 182.  Facebook contends that a "Rule 59(e) motion 'is not the proper vehicle for rehashing evidence, legal theories, or arguments ***that could have been offered or raised before the entry of judgment***.'"  (Dkt. # 407 at 11 (emphasis original) (quoting <u>Templet</u>, 367 F.3d at 478-79).)

      To begin with—contrary to Facebook's arguments—Voxer's Rule 59(e) motion was timely.  The entry of Rule 58 judgment triggers the start of a 28-day period for filing post-trial motions, including a motion to amend the judgment. FED. R. CIV. P. 50, 59.  The Court entered judgment in this case on February 21,

2023, and one month later, on March 21, 2023, Voxer moved to alter or amend the judgment.  (Dkts. ## 381, 386.)  Moreover, Facebook filed its Rule 59(e) Motion the *same day* as Voxer.  (See Dkt. # 385.)

Next, Facebook challenges the procedural pertinence of raising this issue in a Rule 59(e) motion.[5]  In Opti Inc. v. VIA Tech., Inc., the court addressed the "threshold question . . . [of] whether Rule 59(e) is the proper procedural mechanism for granting ongoing royalties in a patent infringement action where they have not previously been raised."  2015 WL 417193, at *2 (E.D. Tex. 2015).  While the court could find no case law in which a plaintiff had moved for ongoing royalties under Rule 59(e), the court noted two cases in which the plaintiff moved for ongoing royalties after the jury verdict was entered but before final judgment was entered.  Id.  These cases provided evidence that "the issue of ongoing royalties is a 'legal theor[y] or argument[] that could have been offered or raised before the entry of judgment,'" and thus inapt under Rule 59(e).  Id. (quoting Templet, 367 F.3d at 478-79).  The court observed that even though a motion for ongoing royalties seeks prospective relief, it does not warrant the "extraordinary remedy" of altering the judgment.  Id. at *3.

---

[5] This procedural question is determined under Fifth Circuit law.  See Whitserve, 694 F.3d at 26.

Critically, the court in <u>Opti Inc.</u> lacked the insight provided two years later by the Federal Circuit in <u>Arctic Cat Inc. v. Bombardier Recreational Products Inc.</u>, 876 F.3d 1350, 1370 (Fed. Cir. 2017).  In <u>Arctic Cat</u>, the Federal Circuit affirmed the district court's award of ongoing royalties raised in a Rule 59(e) motion.[6]  The Federal Circuit affirmed the district court's award of an ongoing royalty in the amended judgment.  This procedure has also been followed in the Western District of Texas.  <u>See</u> <u>Jiaxing</u>, 2023 WL 2415281, at *18-21 (granting post-judgment motion for ongoing royalty and supplemental damages to "fully compensate" the patentee for the infringer's ongoing infringement).

Voxer argues that unlike the plaintiff in <u>Opti Inc.</u>, who asked the court to impose ongoing royalties "for the first time" in its motion to amend, Voxer repeatedly told this Court it was seeking ongoing royalties.  Indeed, Facebook's analogy to <u>Opti Inc.</u> strips Voxer's request for ongoing royalties of its relevant context.  In addition to Voxer's pretrial submissions in November 2021 setting

---

[6] The district court had (1) entered a "Final Judgment" (Dkt. 157) following a jury verdict, after which (2) the plaintiff moved for an ongoing royalty (Dkt. 160), which (3) the court then granted.  No. 14-cv-62369, 2016 WL 4267375, at *7 (S.D. Fl.).  The court granted the motion as to the award of an ongoing royalty, but required the parties to mediate the amount of that royalty, before entering its own order dictating the royalty when the parties did not settle.  <u>See</u> <u>id.</u> at Dkt. ## 257, 259.

forth its equitable request, including an ongoing royalty (Dkt. # 169-1, ¶ 21),

Voxer told the jury at trial that the verdict form requested a running royalty only

through the date of the trial "[a]nd if Facebook and Instagram go on to continue

using these infringing features, they can continue to pay a royalty."  (Dkt. # 339 at

27:12-13.)  The parties' conduct at the post-trial hearing on December 8, 2022,

also provides helpful background: Voxer informed the Court it was "going to be

filing a motion for an ongoing royalty" as a post-judgment motion, and asked the

Court to enter Rule 58 judgment to trigger the deadline for that motion.  (Dkt.

# 411-2 at 14:08:31-34.)  Facebook even asked the Court to decide its already filed

Motion for Judgment as a Matter of Law *before* the parties conducted discovery or

"brief[ed] a motion on an ongoing royalty," believing that such efforts would be

unnecessary in the event that it prevailed on its motion.  (Id. at 14:11:04-56.)

Voxer discussed its intention to pursue an ongoing royalty before,

during, and after trial.  The Court turns to whether it should exercise its discretion

to award ongoing royalties.

B.     Should the Court exercise its discretion to award an ongoing royalty?

A court may grant an injunction "to prevent the violation of any right

secured by patent, on such terms as the court deems reasonable."  35 U.S.C. § 283.

The Federal Circuit "ha[s] interpreted that provision to permit a court to award 'an ongoing royalty for patent infringement in lieu of an injunction' barring the infringing conduct." Prism Techs. LLC v. Sprint Spectrum L.P., 849 F.3d 1360, 1377 (Fed. Cir. 2017) (quoting Paice LLC v. Toyota Motor Corp., 504 F.3d 1293, 1314 (Fed. Cir. 2007)); see also Whitserve, 694 F.3d at 38 (explaining the district court's power to fashion equitable relief for ongoing infringement: "(1) [I]t can grant an injunction; (2) it can order the parties to attempt to negotiate terms for future use of the invention; (3) it can grant an ongoing royalty; or (4) it can exercise its discretion to conclude that no forward-looking relief is appropriate in the circumstances."). Voxer has opted to seek an ongoing royalty in lieu of an injunction. See SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC, 807 F.3d 1311, 1332–33 (Fed. Cir. 2015), vacated on other grounds, 580 U.S. 328, 137 S. Ct. 954, 197 L. Ed. 2d 292 (2017) ("[A]bsent egregious circumstances, when injunctive relief is inappropriate, the patentee remains entitled to an ongoing royalty."). While an ongoing royalty is not automatic, "the Federal Circuit has indicated that a prevailing patentee should receive compensation for any continuing infringement." Jiaxing, 2023 WL 2415281, at *18. Accordingly, "[a]n award of an ongoing royalty is appropriate [if] the record supports the district

court's finding that [the patentee] has not been compensated for [the infringer's] continuing infringement." Telcordia Tech., inc. v. Cisco Systems, Inc., 612 F.3d 1365, 1379 (Fed. Cir. 2010).

The infringing party, Facebook, "does not contest" that it is continuing to infringe the patents the jury found infringed in this case. See Arctic Cat, 2016 WL 4267375, at *6. To account for this possibility, Voxer set forth a prayer for ongoing injunctive relief in its Complaint. (Dkt. # 1 at 41.) The jury verdict cannot be properly determined to compensate Voxer for all future infringement, as "[t]he jury was instructed to cover 'damages,' which by definition covers only past harm." Whitserve, 694 F.3d at 35. Furthermore, the jury selected "reasonable royalty" rather than "lump sum," after Voxer told the jury at trial that the verdict form requested a running royalty only through the date of the trial "[a]nd if Facebook and Instagram go on to continue using these infringing features, they can continue to pay a royalty." (Dkt. # 339 at 27:12-13.) Given that the trial court has discretion to interpret verdict forms, the Court determines that the jury's award did not compensate for all future infringement. See Paice, 504 F.3d at 36; see also Telcordia, 612 F.3d at 1377-79 (explaining district court did not err in exercising discretion to find verdict form did not compensate for infringer's future

14

infringement).  Accordingly, failure to award ongoing royalties here would "leave [Voxer] uncompensated for future acts of infringement by [Facebook] except via resort to serial litigation."  Whitserve, 694 F.3d at 35.  Thus, the Court finds an award of ongoing royalties for the duration of Facebook's use of the two infringed patents an appropriate prospective remedy to compensate Voxer for Facebook's ongoing infringement.

      C.     What should the ongoing royalty rate be?

Setting an appropriate ongoing royalty rate, "of course, is a matter committed to the sound discretion of the district court."  Amado v. Microsoft Corp., 517 F.3d 1353, 1364 n.2 (Fed. Cir. 2008); see Paice, 504 F.3d at 1315. When awarding an ongoing royalty, "the district court should consider the 'change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability.'"  XY, LLC v. Trans Ova Genetics, 890 F.3d 1282, 1297 (Fed. Cir. 2018) (quoting Amado, 517 F.3d at 1362).  Courts should also consider "changed economic circumstances, such as changes related to the market for the patented products."  Id. (citing Paice, 504 F.3d at 1315 n.15).  The Federal Circuit's emphasis on changed circumstances "is particularly important when, as in this case, an ongoing royalty effectively serves

as a replacement for whatever reasonable royalty a later jury would have calculated in a suit to compensate the patentee for future infringement."  Id.  The inquiry is "what a hypothetical negotiation would look like *after* the prior infringement verdict."  Id. (emphasis original).  "Ongoing royalties may be based on a post-judgment hypothetical negotiation using the Georgia-Pacific factors."  Arctic Cat, 876 F.3d at 1370.

Voxer provides two methods of calculating the ongoing royalty: a royalty of $0.003 per "Is Live Watch Hour," or a royalty of 4.4% on the royalty base.[7]  (Dkt. # 388 at 6-7.)  Voxer contends that because of Facebook's rising profit margins, these numbers could be adjusted up to $0.0046 per "Is Live Watch Hours," or 6.7% on the royalty base.  (Id. at 23.)  Facebook argues that the royalty rate itself should be lower—3%, rather than 4.4%—because of decreased profitability and ability to monetize video products.  (Dkt. # 407 at 6.)  Second, Facebook argues that the royalty base should be actual revenues from the Live products, rather than as calculated by Ratliff at trial.  (Id.)

---

[7] Calculated as (a) Facebook and Instagram "Is Live Watch Hours" multiplied by (c) total worldwide Facebook app ad revenues, divided by (b) total worldwide Facebook app watch time.

"Generally, the jury's damages award is a starting point for evaluating ongoing royalties." Jiaxing, 2023 WL 2415281, at *18 (quoting Apple, Inc. v. Samsung Elecs. Co., No. 12-CV-630-LHK, 2014 WL 6687122, at *14 (N.D. Cal. Nov. 25, 2014)). When the infringer seeks a lower rate, it bears the burden of proving "economic factors have changed in the infringer's favor post-verdict." Trans Ova, 890 F.3d at 1298. The Court does not find Facebook's contentions in favor of a lower rate sufficient to counteract the "change in the parties' legal relationship." Paice, 504 F.3d at 1317 (Rader, J. concurring). Facebook argues that its profitability declined in Q4'2022 to 14.47%, making its average profitability post-verdict 15.11%.[8] (Dkt. # 408 at 12-13.) But Facebook has not provided updated information about watch time, and the two factors that it attributes to its decrease in profitability were present before the verdict. (See Dkt. # 9-10 (citing record where Facebook acknowledged the impact of Apple privacy settings on the second half of 2021 and the 2019-2020 rise of TikTok).) Furthermore, the Court looks to "what a hypothetical negotiation would look like *after* the prior infringement verdict." Trans Ova at 1297 (emphasis original).

---

[8] The rate used to calculate a 4.4% royalty was 21.6%. (Dkt. # 412 at 20.)

Voxer has a stronger bargaining position after the jury's verdict of infringement, given Facebook's continued use of the infringing technology.  See id. at 1297-98.

   In Trans Ova, the Federal Circuit disagreed with the district court's imposition of a lower royalty rate for ongoing royalties than the reasonable royalty rate for past infringement awarded by the jury.  890 F.3d at 1297.  The district court's "focus should have been on [the patent owner's] improved bargaining position and any other changed economic facts (as articulated in Amado, ActiveVideo, and Paice) rather than XY's past acts." Id. at 1298.  As in Trans Ova, imposing Facebook's proposed lower royalty rate for ongoing infringement would create the "absurd practical result . . . that [Voxer] would have been better off forgoing [Facebook's proposed 3%] ongoing royalty and suing [Facebook] repeatedly for future infringement at the jury's [4.4%] reasonable royalty rate." Id.  Accordingly, the Court rejects Facebook's proposed royalty rate of 3%.  Facebook argues that if the Court rejects its lower royalty rate, the Court should order $0.003 per "Is Live Watch Hour," rather than a percentage royalty, "as it would involve less administrate burden than the alternative."  (Dkt. # 407 at 20, fn. 11.)  The Court agrees.[9]  Accordingly, Voxer is entitled to a $0.003 royalty rate per watch

---

[9] Facebook's argument for the royalty base being reduced—to Facebook's specifically tracked revenues for "Is Live" as opposed to overall advertising

hour until the expiration of the asserted patents or Facebook's discontinued use of the patented technology at issue in this litigation.

III.    Voxer's Motion — Willfulness

Solely "to preserve the issue for appeal," Voxer also argues for a new trial on willfulness.  (Dkt. # 388 at 15.)  "A new trial may be granted if the trial court finds that 'the verdict is against the weight of evidence . . . the trial was unfair, or prejudicial error was committed.'"  Seidman v. Am. Airlines, Inc., 923 F.2d 1134, 1140 (5th Cir. 1991) (quoting Smith v. Transworld Drilling Co., 773 F.2d 610, 613 (5th Cir. 1985)).  The decision to grant or deny a motion for a new trial, including the determination of whether a verdict is against the great weight of the evidence, is a question committed to the court's sound discretion.  Six Dimensions, Inc. v. Perficient, Inc., 969 F.3d 219, 230 (5th Cir. 2020).  A motion for a new trial "must clearly establish either a manifest error of law or fact or must present newly disclosed evidence."  Simon v. United States, 891 F.2d 1154, 1159

---

revenues—was argued and rejected at trial.  (See Dkt. # 343 at 156:13-22.)  The Court need not address these arguments further here, given the selected methodology does not require a royalty base calculation going forward, but notes only that Facebook has failed to provide sufficient evidence that its monetization of "Is Live" is complete, or new evidence showing that Facebook fails to derive revenue merely based on the watch time that a feature like "Is Live" attracts to the app.

(5th Cir. 1990) (quoting <u>Fed. Deposit Ins. Corp. v. Meyer</u>, 781 F.2d 1260, 1268 (7th Cir. 1986)).

Voxer argues that "there was sufficient evidence in the record from which a reasonable jury could have found Facebook willfully infringed." (Dkt. # 388 at 15.) As the Court explained in granting judgment as a matter of law on willfulness, while there were "discussions" and "knowledge on the part of the defendants that there was a patent portfolio out there," the patents had not been applied for in 2012 or 2016, and the "provisional applications . . . don't reflect the claims." (Dkt. # 344 at 15.) The Court properly rejected Voxer's arguments on willfulness the first time, and Voxer points to no "newly disclosed evidence" or "manifest error of law or fact" that supports a new trial on willfulness. <u>Simon</u>, 891 F.2d at 1159. The Court also disagrees that its decision to exclude certain evidence warrants a new trial on willfulness. (Dkt. # 388 at 16-17.) The Court excluded discussions from 2012 about Chinese companies copying technology and Facebook removing Voxer's access to its data. (Dkts. ## 341 at 14-15; 302-2:6.) The Court's explanation for this decision remains appropriate in hindsight:

> I think it is iffy that the evidence is relevant under Rule 401. But presuming for the sake of argument that it is, I find that Rule 403 applies and the probative value is substantially outweighed by primarily unfair prejudice, confusion of the issues, [and] misleading the jury. We are

trying this case, and it's what I'm going to try it on, whether or not the defendants infringed on the patents.  And that's the case I'm going to try.  I think it is a stretch for this evidence that you purport to offer to even get to willful conduct . . .

(Dkt. # 341 at 15-16.)   Accordingly, a new trial is not warranted on willfulness.

IV.   Facebook's Motion — Characterizing the Jury Award as a Lump Sum

The jury's selection of "running royalty" rather than "lump sum" on the verdict form forecloses Facebook's contention that the jury's award "should be deemed a one-time, lump sum payment representing the full amount of damages awarded for the full life of the payments."  (Dkt. # 385 at 3-4.)  Moreover, Facebook's attempt to rehash this argument undermines the Court's February 21, 2023 Order rejecting this argument.  (Dkt. # 380.)  The Court found that the jury had a sufficient basis for selecting a running royalty, given that Voxer "offered expert testimony regarding Facebook's business model, tying the royalty to marketplace success and avoiding over- or under-valuing the licensed technology." (Id. at 9-10.)  Additionally, the amount of damages awarded by the jury matches exactly the testimony of Ratliff that the damages as a reasonable royalty for past infringement should be a running royalty amounting to $174,530,785.  (Dkt. # 341 at 53:18-54:3.)

V.      Facebook's Motion — Adjustment in Prejudgment Interest

        A damages award should provide "complete compensation," Gen.

Motors Corp. v. Devex Corp., 461 U.S. 648, 655 (1983), including "a reasonable

royalty for the use made of the invention by the infringer, together with interest

and costs." 35 U.S.C. § 284.  "The purpose of prejudgment interest is to place the

patentee in as good a position as he would have been had the infringer paid a

reasonable royalty rather than infringe."  SSL Servs., LLC v. Citrix Sys., Inc., 769

F.3d 1073, 1094 (Fed. Cir. 2014).  While the Court has discretion to choose an

interest rate, prejudgment interest is intended to place the patent owner "in as good

a position as he would have been in had the infringer entered into a reasonable

royalty agreement," and thus the interest should be awarded "from the time that the

royalty payments would have been received."  Gyromat Corp. v. Champion Spark

Plug Co., 735 F.2d 549, 556 (Fed. Cir. 1984).  "An award of interest from the time

that the royalty payments would have been received merely serves to make the

patent owner whole, since his damages consist not only of the value of the royalty

payments but also of the forgone use of the money between the time of

infringement and the date of the judgment."  Gen. Motors, 461 U.S. at 655–56.

The Court previously awarded $28,904,497.56 in prejudgment interest, which was calculated based on the amount of the jury verdict—$174,530,785—from the hypothetical negotiation date of November 27, 2018, to February 20, 2023, the day before rendition of the final judgment, at a rate of 3.91%.[10]  (Dkt. # 381.)  Facebook argues that this prejudgment interest is too high, because the "interest award should reflect [an] ongoing royalty model, and a staggered start of interest accrual based on when periodic royalty payments 'would have been received.'"  (Dkt. # 409 at 1 (citing Gyromat, 735 F.2d at 556).)  Facebook argues that failure to calculate interest based on the yearly royalty payments the jury accepted via Ratliff's model and the interest rates from those years of accrual contradicts the Court's award of ongoing royalty damages.  Voxer disagrees, citing the Court's discretion in awarding prejudgment interest.

The Court agrees with Facebook: to honor the Supreme Court's edict that prejudgment interest should compensate for the "forgone use of the money between the time of infringement and the date of the judgment," the Court should adjust the interest rate to reflect the period in which the hypothetical payments to Voxer would have occurred.  Gen. Motors, 461 U.S. at 655–56.  Failing to adjust

---

[10] The rate equal to the weekly average one-year constant maturity Treasury yield for the calendar week preceding the date of the judgment.

damages to reflect a hypothetical, historical yearly royalty would contradict the

jury's decision to award damages as a running royalty.  Accordingly, the Court

chooses to exercise its discretion to bring the prejudgment interest in line with the

interest rates and accrual periods that correspond to these hypothetical, historical

royalties, rather than treat the jury award as a lump sum payment that occurred in

November of 2018.

The parties disagree as to the prejudgment interest rate to be used, and

whether to compound the interest.[11]  But as the parties concede, the Court has

"substantial discretion to determine the interest rate in patent infringement cases."

Gryomat, 735 F.2d at 556.  The Court's discretion extends to both "the

determination whether to award simple or compound interest" and whether to set

the interest rate at a Treasury bill rate, the prime rate, or another rate.  See id.

Though Voxer now argues for the Court to apply a prime rate, it failed to raise this

request in its opposition papers to Facebook's Motion to Amend the Judgment on

Prejudgment Interest.  (See Dkt. # 399 at 11 (stating that "the Court could have

---

[11] After the hearing, the Court allowed the parties to file short briefing related solely
to the pre-judgment interest rate.  (Dkts. ## 417, 418.)

used a higher rate, such as the prime rate" but that "substantial support in the law"

supports the 3.91% rate that the Court chose to use).

Bearing in mind the fact that interest rates dipped to as low as 0.04%

during the period from 2018 to 2023, and are now at a high of 5.16%,[12] the Courts

finds it appropriate to calculate prejudgment interest as the average of the Federal

Reserve Board's weekly market yield on U.S. Treasury securities at a 1-year

constant maturity from the last week of the year the hypothetical royalty would

have been paid through the week of February 21, 2023.  As Judge Yeakel did in his

original judgment, the Court awards this prejudgment interest as simple rather than

compound interest.

Accordingly, the Court awards prejudgment interest on the basis of

(1) the principal amount as presented by Voxer's expert as a royalty for each year,

beginning November 18, 2018, and ending September 17, 2022 (Dkt. # 353-1, at

6-10); and (2) simple interest incurred at the rate of the average of the Federal

Reserve Board's weekly market yield on U.S. Treasury securities at 1-year

constant maturity from the last week of the year the hypothetical royalty occurred

---

[12] The Federal Reserve Board's weekly market yield on U.S. Treasury securities at
1-year constant maturity.

through the week of February 21, 2023.[13]  Facebook requests the Court order the parties to meet and confer within fourteen (14) days of the Court's Order to present a joint proposal calculating prejudgment interest on the jury award based on this methodology.  The Court agrees, and orders the parties to do so with respect to the prejudgment interest on the supplemental damages and the jury's damage award.

<u>CONCLUSION</u>

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Voxer's Motion to Amend the Judgment.  (Dkt. # 388.)  Voxer's motion is granted as to the award of an ongoing royalty and granted in part as to supplemental damages: Voxer is entitled to a $0.003 royalty rate per "Is Live Watch Hour" from February 21, 2023, through the expiration of the patents or Facebook's discontinued use of the patented technology at issue in this litigation, as well as supplemental damages in the amount of $26,703,896 plus prejudgment interest to be calculated as set forth above and submitted to the Court within fourteen (14) days of this Order.  Voxer's request for a new trial on willfulness is denied.

---

[13] For instance, the interest rate for the 2018 royalty ($1,849,016) would be 1.450%, calculated as the average weekly rate from the week of December 28, 2018, to the week of February 21, 2023.

The Court **GRANTS IN PART AND DENIES IN PART**
Facebook's Motion to Amend the Judgment.  (Dkt. # 385.)  Facebook's motion is
denied as to finding the jury's verdict a lump sum payment intended to compensate
Voxer for past *and* future infringement.  Facebook's request to amend prejudgment
interest is granted.  The Court adjusts the prejudgment interest calculation to reflect
periodic royalty payments and the average of the Federal Reserve Board's weekly
market yield on U.S. Treasury securities at 1-year constant maturity from the last
week of the year the royalty payment would have occurred through the week of
February 21, 2023.[14]  The parties are to **meet and confer within fourteen (14)
days** of this Order to present a joint proposal calculating prejudgment interest on
supplemental damages and on the jury award based on this methodology.  An
Amended Judgment will be issued following the parties' joint proposal.

      **IT IS SO ORDERED.**

      **DATED**: Austin, Texas, June 27, 2023.

_____
David Alan Ezra
Senior United States District Judge

---

[14] The Court's earlier award of prejudgment interest totaling $28,904,497.56 is
therefore vacated.  (Dkt. # 381.)